IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REMY, INC., UNIT PARTS COMPANY, and WORLDWIDE AUTOMOTIVE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-785-*** |
| v. | ) ) | |
| CIF LICENSING, LLC, D/B/A GE LICENSING, WELLS MANUFACTURING CORP., TADITEL US, INC., and WETHERILL ASSOCIATES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |
| WELLS MANUFACTURING CORP., | ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| REMY, INC., | ) ) | |
| Counterdefendant. | ) | |
| WELLS MANUFACTURING CORP., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| STMICROELECTRONICS, INC., | ) ) | |
| Third-Party Defendant. | ) | |

**THIRD-PARTY DEFENDANT STMICROELECTRONICS, INC.'S
OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS OR STAY**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com
msquire@ycst.com

*Attorneys for Third-Party Defendant.*
*STMicroelectronics, Inc.*

Dated:  June 20, 2007

2

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

PRELIMINARY STATEMENT ........................................................................ 1

NATURE AND STAGE OF PROCEEDINGS .................................................. 3

SUMMARY OF ARGUMENT ......................................................................... 5

BACKGROUND ............................................................................................... 7

    I.     The Parties ...................................................................................... 7

    II.    The Texas Federal Action ............................................................... 7

    III.   The Texas State Action .................................................................. 8

    IV.   The Present Action .......................................................................... 9

ARGUMENT

I.     MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) ....................... 12

    A.    The Court May Consider Materials Referenced
          Or Relied Upon In The Complaint In Evaluating
          STMicroelectronics' Motion ...................................................... 12

    B.    Wells' Indemnification Claims Should Be
          Dismissed Pursuant To Rule 12(b)(6) ........................................ 12

    C.    Wells' Breach Of Contract Claims Should
          Be Dismissed Pursuant To Rule 12(b)(6) ................................... 16

II.    EVEN IF WELLS' CLAIMS WERE VIABLE UNDER
     RULE 12(b)(6), THE COURT SHOULD ABSTAIN
     FROM HEARING THEM PURSUANT TO THE
     *COLORADO RIVER* DOCTRINE .......................................................... 19

    A.    All Six Factors Weigh In Favor Of Abstention ............................ 21

          1.    The Texas State Court First Assumed Jurisdiction ............ 21

    2.    The Texas State Forum Is Less Inconvenient As A Whole ............... 22

    3.    Conflicting Results May Come From A Decision Not To Abstain ... 24

    4.    The Texas State Court Obtained Jurisdiction Before This Court ...... 25

    5.    State Law Controls This Dispute ........................................................ 25

    6.    The Texas State Court Can More Than Adequately Protect The Interests Of The Parties .................................................. 25

  B.    Dismissal Is The More Appropriate Remedy ................................................ 26

CONCLUSION ................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acierno v. Haggerty,*
No. 04-1376 (KAJ), 2005 U.S. Dist. LEXIS 30353
(D. Del. Nov. 23, 2005) ................................................................................................ 21

*Aetna Casualty & Surety Co. v. Sterner,*
700 F. Supp. 252 (E.D. Pa. 1988) ................................................................................ 26

*Benninghoff v. Tolson,*
No. 94-CV-2903, 1994 U.S. Dist. LEXIS 13428
(E.D. Pa. Sept. 22, 1994) .................................................................................... 20, 21, 22

*C.R. Bard, Inc. v. Guidant Corp.,*
997 F. Supp. 556 (D. Del. 1998) .................................................................................. 23

*Centex Corp. v. Dalton,*
840 S.W.2d 952 (Tex. 1992) ........................................................................................ 17

*Chemtron, Inc. v. Aqua Products, Inc.,*
830 F. Supp. 314 (E.D. Va. 1993) ............................................................................... 13

*Colorado River Water Conservation District v. United States,*
424 U.S. 800 (1976) ..................................................................................................... 19

*Eames v. Nationwide Mutual Ins. Co.,*
412 F. Supp. 2d 431 (D. Del. 2006) ............................................................................ 12

*Enex Resources Corp. v. Texas Crude, Inc.,*
No. 05-94-00641-CV, 1994 Tex. App. LEXIS 4112
(Tex. App. Dec. 30, 1994) ............................................................................................ 13

*Fidelity Federal Bank v. Larken Motel Co.,*
764 F. Supp. 1014 (E.D. Pa. 1991) ....................................................................... 21, 22

*Green v. Burlington Northern Santa Fe Railway Company,*
Civil Action No. 3:05-CV-1596-L, 2006 U.S. Dist. LEXIS 2143
(N.D. Tex. Jan. 19, 2006) ............................................................................................. 23

*Home Repair, Inc. v. Universal Restoration Servs.,*
90 Fed. Appx. 142 (7th Cir. 2003) ............................................................................... 16

*Impax Labs., Inc. v. Aventis Pharm., Inc.,*
333 F. Supp 2d 265 (D. Del. 2004) ............................................................................. 16

*In re Rockefeller Ctr. Properties, Inc.,*
184 F.3d 280 (3d Cir. 1999) ......................................................................................... 12

*In re: Peregrine Sys., Inc.,*
C.A. No. 03-815-KAJ, 2004 U.S. Dist. LEXIS 13467
(D. Del. July 12, 2004) ................................................................................................. 16

*Ingersoll-Rand Fin. Corp. v. Callison,*
   844 F.2d 133 (3d Cir. 1988) .................................................................. 24, 26

*LaDuke v. Burlington N. R. Co.,*
   879 F.2d 1556 (7th Cir. 1989) .................................................................. 20

*Landis v. North American Corp.,*
   299 U.S. 248 (1936) .................................................................. 20

*Lony v. E.I. DuPont de Nemours & Co.,*
   886 F.2d 628 (3d Cir. 1989) .................................................................. 23

*Malhan v. Anthony Robbins Cos.,*
   No. 05-CV-05951 (WJM), 2006 U.S. Dist. LEXIS 20558
   (D.N.J. Mar. 24, 2006) .................................................................. 16

*Manna v. Greenburgh No. 11 School Dist.,*
   2 F. Supp. 2d 461 (S.D.N.Y. 1998) .................................................................. 20

*Moore v. John S. Tilley Ladders Co.,*
   No. 92-5902, 1993 U.S. Dist. LEXIS 2300
   (E.D. Pa. Feb. 23, 1993) .................................................................. 21, 24

*Moses H. Cone Memorial Hospital*
   *v. Mercury Construction Corp.,*
   460 U.S. 1 (1983) .................................................................. 19, 21

*Multimedia Publishing Co. of South Carolina, Inc.*
   *v. Greenville-Spartanburg Airport District,*
   774 F. Supp. 977 (D.S.C. 1991) .................................................................. 23

*Nascone v. Spudnuts, Inc.,*
   735 F.2d 763 (3d Cir. 1984) .................................................................. 23

*Oatway v. Am. Int'l Group, Inc.,*
   C.A. No. 01-033-GMS, 2002 U.S. Dist. LEXIS 1771
   (D. Del. Feb. 5, 2002) .................................................................. 12

*Pension Benefit Guar. Corp. v. White Cons. Inds. Inc.,*
   998 F.2d 1192 (3d Cir. 1993) .................................................................. 12

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.,*
   C.A. No. 96-40 MMS, 1996 U.S. Dist. LEXIS 8158
   (D. Del. June 7, 1996) .................................................................. 15

*Robinson v. Ruiz,*
   772 F. Supp. 212 (D. Del. 1991) .................................................................. 19

*Shutte v. Armco Steel Corp.,*
   431 F.2d 22 (3d Cir. 1970) .................................................................. 23

*Southmark Prime Plus, L.P. v. Falzone,*
   776 F. Supp. 888 (D. Del. 1991) .................................................................. 16

*Spring City Corp. v. American Bldgs. Co.,*
   193 F.3d 165 (3d Cir. 1999) .................................................................. 21

iv

*St. Clair Intellectual Property Consultants, Inc.*
 *v. Mirage System, Inc.*,
 419 F. Supp. 2d 620 (D. Del. 2006) ........................................................................ 26

*Summa Four, Inc. v. AT&T Wireless*,
 994 F. Supp. 575 (D. Del. 1998) ............................................................................ 19

*Teacher Retirement Sys. v. Badger XVI Ltd. Pshp.*,
 556 N.W.2d 415 (Wis. Ct. App. 1996) .................................................................. 13

*THQ Venture v. SW, Inc.*,
 444 N.E.2d 335 (Ind. Ct. App. 1983) .................................................................... 17

*TLB Plastics Corp. v. Procter & Gamble Paper Co.*,
 542 N.E.2d 1373 (Ind. Ct. App. 1989) .................................................................. 13

*Trent v. Dial Medical of Florida, Inc.*,
 33 F.3d 217 (3d Cir. 1994) .................................................................................... 26

**Rules**

Federal Rule of Evidence 201 ............................................................................ 15, 23

DB02:5959311.1

065770.1001

## PRELIMINARY STATEMENT

Third-party defendant STMicroelectronics, Inc. ("STMicroelectronics") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss third-party plaintiff Wells Manufacturing Corp.'s ("Wells") indemnity claims (including duty to defend claims) on the ground that the contractually-stated conditions precedent for Wells' indemnification rights – *i.e.*, the assertion of a patent infringement claim against Wells based on a specific STMicroelectronics product – do not exist as a matter of law. There is no patent infringement claim pending against Wells. The only claims against Wells are indemnity claims brought by Remy International, Inc. ("Remy"). Because an infringement claim against Wells based on a specific STMicroelectronics' product is necessary for STMicroelectronics to be liable under the terms of the indemnification provision of the Wells' Terms and Conditions Governing Purchase Orders (the "Wells Purchase Order"), which, according to Wells' third-party complaint, governs sales between the parties, and because no such claim exists, STMicroelectronics respectfully submits that this Court should dismiss Wells' indemnity claims against STMicroelectronics.

STMicroelectronics also moves pursuant to Rule 12(b)(6) to dismiss Wells' breach of contract claims on very similar grounds. The condition precedent asserted by Wells for each of its contract claims, namely a finding that Remy is liable for patent infringement, has nothing to do with STMicroelectronics' potential liability under the terms of the Wells Purchase Order. The Order makes clear that the true condition precedent for a finding of contractual liability is a determination that a specific STMicroelectronics product has infringed a patent. That condition has not been and will not be fulfilled here because there is no infringement claim pending against a specific STMicroelectronics product. Wells' contract claims, which are entirely reliant upon the fulfillment of that condition, must therefore fail as a matter of law.

Finally, even if Wells' had pled viable indemnity and contract claims (and it did not), the Court should abstain from hearing them pursuant to the *Colorado River* doctrine. STMicroelectronics' parallel state court action in Texas involves the same parties as this case; the substantive claims in the parallel state case are based on the same events and contractual provisions as the claims here; and the complaint in the parallel state case was filed six months (and answered by Wells five months) before Wells filed the present action.  Discovery is already underway in the parallel state case.  Moreover, the parties' disputes are entirely contractual in nature and thus governed by state law (and quite possibly Texas state law).  There are no federal issues in either case, and, as detailed below, the remaining *Colorado River* factors weigh unequivocally in favor of abstention.  A dismissal or stay based on the *Colorado River* doctrine is therefore appropriate in these circumstances.

2

## NATURE AND STAGE OF PROCEEDINGS

On August 30, 2006, Delaware defendant GE Licensing filed suit against Remy, among others, in the District Court for the Eastern District of Texas (the "Texas Federal Action"), asserting claims for patent infringement based on U.S. Patent No. 4,733,159 (the "'159 patent"). The accused products in the Texas Federal Action are automobile alternators.

On November 1, 2006, STMicroelectronics, anticipating that Wells might attempt to assert misguided indemnity claims against it, filed a declaratory judgment action against Wells, among others, in the State District Court of Dallas County, Texas (the "Texas State Action"). In that case, STMicroelectronics seeks declarations that it has no contractual obligation to defend Wells in any proceeding related to the Texas Federal Action, and no contractual obligation to indemnify or to defend Wells with respect to any judgment that might result from the Texas Federal Action or any related case.

On December 4, 2006, Wells answered STMicroelectronics' complaint in the Texas State Action.

On December 21, 2006, Remy filed its Complaint in the present action (D.I. 1), asserting against Wells and others state law indemnification and duty to defend claims based on infringement claims pending against Remy in the Texas Federal Action.

On January 29, 2007, Wells responded to STMicroelectronics' request for discovery disclosures in the Texas State Action.

On April 30, 2007, almost six months to the day after STMicroelectronics filed the Texas State Action and five months after Wells submitted its answer in that action, Wells filed its Answer, Counterclaims, and Third-Party Complaint (the "Third-Party Complaint") (D.I. 24) in this action, asserting, among other things, third-party indemnification and breach of

3

contract claims against STMicroelectronics. Wells specifically seeks judgments that STMicroelectronics is obligated to defend Wells in all actions related to the Texas Federal Action and to indemnify Wells for any liability it incurs as a result of those actions. Wells also asserts breach of contract claims in the event Remy is found liable for infringement in the Texas Federal Action. All of Wells' claims are governed by state law and almost certainly not Delaware state law.

Also on April 30, GE Licensing asserted in the present case protective counterclaims for patent infringement against Remy. (D.I. 25) The counterclaims are identical to GE Licensing's claims in the Texas Federal Action, filed eight months earlier.

STMicroelectronics now moves to dismiss Wells' claims pursuant to Rule 12(b)(6), or, in the alternative, to dismiss or stay them pursuant to the *Colorado River* doctrine. This is STMicroelectronics' opening brief in support of that motion.

## SUMMARY OF ARGUMENT

1.    Wells' indemnity claims (including duty to defend claims) should be dismissed pursuant to Rule 12(b)(6) on the ground that the contractually-stated conditions precedent for Wells' indemnification rights – *i.e.*, the assertion of a patent infringement claim against Wells based on a specific STMicroelectronics product – do not exist a matter of law. There is no patent infringement claim pending against Wells.  The only claims against Wells are indemnity claims brought by Remy.  Because an infringement claim against Wells based on a specific STMicroelectronics' product is necessary for STMicroelectronics to be liable under the terms of the indemnification provision of the Wells Purchase Order and because no such claim exists, Wells indemnity claims should be dismissed.

2.    Wells breach of contract claims should be dismissed pursuant to Rule 12(b)(6) on the ground that the condition precedent asserted by Wells for each of its contract claims, namely a finding that Remy is liable for patent infringement, has nothing to do with STMicroelectronics' potential liability under the terms of the Wells Purchase Order.  The Order makes clear that the true condition precedent for a finding of contractual liability is a determination that a specific STMicroelectronics product has infringed a patent.  That condition has not been and will not be fulfilled here because there is no infringement claim pending against a specific STMicroelectronics product.  Wells' contract claims, which are entirely reliant upon the fulfillment of that condition precedent, must therefore fail as a matter of law.

3.    The Court should abstain from hearing Wells' claims pursuant to the *Colorado River* doctrine.  STMicroelectronics' parallel state court action in Texas involves the same parties as this case; the substantive claims in the parallel state case are based on the same events and contractual provisions as the claims here; and the complaint in the parallel state case

was filed six months (and answered by Wells five months) before Wells filed the present action. Discovery is already underway in the parallel state case. Moreover, the parties' disputes are entirely contractual in nature and thus governed by state law (and quite possibly Texas state law). There are no federal issues in either case, and, as detailed below, the remaining *Colorado River* factors weigh unequivocally in favor of abstention. Abstention based on the *Colorado River* doctrine is therefore appropriate in these circumstances.

   4. After deciding to abstain pursuant to the *Colorado River* doctrine, the Court should dismiss, as opposed to stay, Wells claims because, once the parallel claims have been resolved by the Texas state court, there will be nothing left for this Court to do in this case. In the alternative, STMicroelectronics seeks a stay of Wells' claims.

                          

## BACKGROUND

The following facts are drawn from the Third-Party Complaint and documents incorporated and relied upon therein.  It is proper for the Court to consider such documents in the context of a motion to dismiss.  *See infra* p. 12.

### I.    The Parties

STMicroelectronics is a Delaware corporation with a place of business in Carrollton, Texas.[1]  (D.I. 24, ¶ 2)  STMicroelectronics manufactures various semiconductor component parts for use in other products, including a semiconductor component part characterized as a "voltage regulator" in the Third-Party Complaint.  (*Id.* ¶ 5)

Wells is a Wisconsin corporation with its principal place of business in Fond Du Lac, Wisconsin.  (*Id.* ¶ 1)  Wells manufactured and added protective circuitry to the semiconductor component parts it supplied to Remy, which were purportedly included by Remy in the alternators accused of infringement in the Texas Federal Action. (*Id.* ¶ 7)

### II.    The Texas Federal Action

On August 30, 2006, GE Licensing filed patent infringement claims against Remy, among others, in the District Court for the Eastern District of Texas.  The operative complaint in the Texas Federal Action clearly and unambiguously alleges that it is Remy's alternator product that is accused of infringement by GE Licensing.  (D.I. 24, ¶ 7)  It specifically states that:

> Defendant Remy operates as a manufacturer and re-manufacturer of original equipment and aftermarket electrical <u>components</u> for automobiles, light trucks, medium and heavy duty trucks and other heavy duty vehicles, <u>including alternators</u> containing voltage regulator units.  Defendant Remy sells such components to original

---

[1]    Carrollton is located in the Northern District of Texas.

> equipment manufacturers and dealers, automotive retail chains and
> warehouse distributors …. [T]he above-mentioned activities by
> Defendant Remy have amounted to infringement, directly, by
> inducement, and/or by contributing to the infringement, of the
> Patent.

(Ex. A, Tex. Fed. Amend. Compl. ¶¶ 21-22)  The operative complaint in the Texas Federal

Action does not mention STMicroelectronics or its specific semiconductor product.

## III.    The Texas State Action

On November 1, 2006, STMicroelectronics, fearing that Wells might assert

misguided indemnification claims against it, filed a declaratory judgment action against Wells in

the State District Court of Dallas County, Texas.  STMicroelectronics seeks in the Texas State

Action declarations that it has no contractual obligation to defend Wells in any proceeding

related to the Texas Federal Action and no contractual obligation to indemnify Wells for any

judgment that might result from the Texas Federal Action or a related case.  (Ex. B, Tex. State

Compl. ¶¶ 7-12)

On December 4, 2006, Wells answered STMicroelectronics' complaint.  Wells

did not dispute personal jurisdiction or venue before doing so.  (Ex. C, Tex. State. Ans.)

On January 29, 2007, Wells represented to the Texas state court in discovery

disclosures that "[i]n the event that neither Wells' nor STMicro's terms and conditions govern

the transactions at issue, Section 2.312 of the Texas Business and Commerce Code also known

as the Uniform Commercial Code, clearly provides for indemnification."  (Ex. D, Tex. State

Discl. p. 3)  Wells has clearly put the issue of indemnification squarely before the Texas state

court.

IV.    **The Present Action**

On December 21, 2006, Remy filed the present diversity action against Wells and other defendants. (D. I. 1)  Remy's claim against Wells is entitled "Remy v. Wells for Indemnity," and Remy specifically seeks "an order requiring Wells to defend Remy against any charge of infringement with respect to the accused products, [and] a declaration that Wells is liable for any judgment against Remy . . . ." (*Id.* ¶ 21)  Remy has not asserted a patent infringement claim against Wells, nor has it accused STMicroelectronics (or its specific product) of any wrongdoing.

Almost six months after STMicroelectronics filed the Texas State Action and five months after Wells answered STMicroelectronics' claims in that case, on April 30, 2007, Wells asserted indemnification and breach of contract claims against STMicroelectronics in this case. (D.I. 24)  Wells' claims in the present action are based on the same circumstances and contractual provisions as STMicroelectronics' claims in Texas and are governed entirely by applicable state law.

Wells specifically asserts two indemnification claims against STMicroelectronics based on the indemnification provision of the Wells Purchase Order.  In paragraphs 17 and 18 of the Third-Party Complaint, Wells contends as follows:

> 17.    Wells is therefore entitled to an Order from the Court requiring [STMicroelectronics] to defend Wells against any charge of infringement or <u>indemnity claim</u> with respect to the accused products.
>
> 18.    Wells is also entitled to an Order declaring that [STMicroelectronics] is liable for any judgment against Wells with respect to the accused product.

(emphasis added).  Wells thereby seeks indemnification for Remy's indemnity claims against it.

The indemnification provision of the Wells Purchase Order, however, states as follows, as alleged in the Third-Party Complaint:[2]

> Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright: <u>the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer</u>, their successors and assigns or those using or selling Buyer's products for any alleged <u>infringement</u> of any patent, trademark, and copyright <u>by reason of the sale or use of any such article</u> or material. Seller agrees that he will pay all judgments and costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

(Ex. E, Wells Purchase Order ¶ 14 (emphasis added)) The indemnification provision does not identify a right to indemnification or duty to defend with respect to indemnity claims. It concerns only infringement claims.

Wells also asserts three breach of contract claims, all of which are dependent on the existence of a condition precedent before liability can arise. In paragraph 23 of the Third-Party Complaint, Wells asserts that "ST[Microelectronics] breached the contract terms of Wells' Purchase Order by refusing to <u>indemnify</u> Wells as it agreed in paragraph 14." (emphasis added). While not expressly stated by Wells in the Third-Party Complaint, this claim obviously depends upon a finding that STMicroelectronics has a present obligation to indemnify Wells, which it does not for reasons detailed below.

Wells' second breach claim is set forth in paragraph 21 of the Third-Party Complaint and states as follows:

---

[2]    Because this case is at the pleadings stage and Wells has alleged that the Wells Purchase Order governs this dispute, STMicroelectronics has assumed this allegation is true for purposes of this motion. As alleged in the Texas State Action, however, the relationship between Wells and STMicroelectronics is not governed by the Wells Purchase Order, but rather by the terms and conditions contained in STMicroelectronics' purchase order.

> In the event the '159 Patent is held to be valid and infringed by
> Remy, then [STMicroelectronics] has breached the contract terms
> of Wells' Purchase Order by violating [STMicroelectronics']
> warranty of no infringement made in paragraph 14.

(emphasis added)

Paragraph 14 of the Wells Purchase Order, however, states in pertinent part as

follows:

> Seller warrants that the articles described herein and the sale or use
> of them will not infringe any United States patent, trademark and
> copyright ... .

(emphasis added). Paragraph 14 makes clear that the scope of STMicroelectronics' warranty is

limited to infringement by the specific "articles" provided to Wells. Those specific articles are

not accused of infringement in the Texas Federal Action, as detailed below.

Wells' third breach claim is set forth in paragraph 22 of the Third-Party

Complaint and states as follows:

> In the event the '159 Patent is held to be valid and infringed by
> Remy, then [STMicroelectronics] has breached the contract terms
> of Wells' Purchase Order by violating [STMicroelectronics']
> warranty that it is in compliance with all federal laws pursuant to
> paragraph 19.

(emphasis added)

Paragraph 19 of the Wells Purchase Order, however, states in pertinent part as

follows:

> Seller warrants that it is currently in compliance with and will
> continue to comply with any and all applicable federal, state and
> local laws and regulations which could impose liability on Buyer
> as the result of any non-compliance on Seller's part.

Again, the specific product sold to Wells by STMicroelectronics is not accused of infringement

in the Texas Federal Action.

### ARGUMENT

**I.    MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**A.    The Court May Consider Materials Referenced Or Relied Upon In The Complaint In Evaluating STMicroelectronics' Motion.**

In determining whether indemnification claims or breach of contract claims, such as those asserted here, ought to be dismissed pursuant to Rule 12(b)(6), this Court routinely considers relevant contract language and documents referenced or relied upon in the complaint without converting the motion to one for summary judgment. *See Eames v. Nationwide Mutual Ins. Co.*, 412 F. Supp. 2d 431, 434, 437 n.3 (D. Del. 2006) (granting motion to dismiss where defendants attached and relied upon contracts upon which plaintiff's claims were based); *Oatway v. Am. Int'l Group, Inc.*, C.A. No. 01-033-GMS, 2002 U.S. Dist. LEXIS 1771, at *2 n.2 (D. Del. Feb. 5, 2002) (granting motion to dismiss after considering agreements referenced in complaint). *See also In re Rockefeller Ctr. Properties, Inc.*, 184 F.3d 280, 287 (3d Cir. 1999); *Pension Benefit Guar. Corp. v. White Cons. Inds. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

This Court may and should therefore consider, in connection with this motion, the materials upon which Wells' claims are based, namely the operative complaint in the Texas Federal Action, STMicroelectronics' complaint in the Texas State Action, Wells' Answer and Discovery Disclosures in the Texas State Action, and the Wells Purchase Order, which is cited and attached to the Third-Party Complaint. STMicroelectronics will refer to each of these documents below.

**B.    Wells' Indemnification Claims Should Be Dismissed Pursuant To Rule 12(b)(6).**

Basic horn book law dictates that dismissal of an indemnification claim is appropriate where pertinent contract language or applicable law demonstrates that there can be

12

no underlying liability as a matter of law. *See Chemtron, Inc. v. Aqua Products, Inc.*, 830 F.

Supp. 314, 316 (E.D. Va. 1993) (dismissing indemnification claim under UCC § 2-312(3) where

there was no possibility of recovery); *Teacher Retirement Sys. v. Badger XVI Ltd. Pshp.*, 556

N.W.2d 415, 424-25 (Wis. Ct. App. 1996) (affirming dismissal of indemnity claim where

language of the agreement did not provide for indemnification); *TLB Plastics Corp. v. Procter &*

*Gamble Paper Co.*, 542 N.E.2d 1373, 1376 (Ind. Ct. App. 1989) (holding that third-party

plaintiff's indemnity claim must fail as a matter of law where there exists no possibility of

liability on the underlying claim upon which indemnity claim is contingent); *Enex Resources*

*Corp. v. Texas Crude, Inc.*, No. 05-94-00641-CV, 1994 Tex. App. LEXIS 4112, at *6-7 (Tex.

App. Dec. 30, 1994) (concluding that appellee was not entitled to indemnification because it

could not recover based on language of indemnity provision).[3]  Such is the case here.

Wells asserts two indemnification/duty to defend claims against

STMicroelectronics based on the indemnification provision in the Wells Purchase Order.  In

paragraphs 17 and 18 of the Third-Party Complaint, Wells contends as follows:

> 17.    Wells is therefore entitled to an Order from the Court
> requiring [STMicroelectronics] to defend Wells against any charge

---

[3]    The Wells Purchase Order does not contain a choice of law provision.  Wells has previously
suggested that Texas state law governs the dispute by stating in its Texas Discovery
Disclosures that "[i]n the event neither Wells' not STMicro's terms and conditions govern
the transactions at issue, Section 2.312 of the Texas Business and Commerce Code clearly
provides for indemnification." (Ex. D, Tex. State Discl. p. 3)  Also, STMicroelectronics is
based in Texas.  In the Third-Party Complaint, however, Wells cites to the Indiana Code in
support of its position that it has tendered its defense to STMicroelectronics.  It is not clear
what connection Indiana has to this dispute other than the fact that it the base of operations
for Remy.  Finally, Wells is based in Wisconsin, so there is a possibility that Wisconsin law
would govern the parties' dispute.  In all events, the Court need not concern itself with choice
of law in the context of this motion because the results described herein would be the same
under any of the potentially applicable states' laws.  STMicroelectronics cites in this paper
authority from all three states where necessary.

13

> of infringement or <u>indemnity claim</u> with respect to the accused products.
>
> 18.    Wells is also entitled to an order declaring that [STMicroelectronics] is liable for any judgment against Wells with respect to the accused product.

(D.I. 24 (emphasis added))

The indemnification provision, however, does not provide for indemnification of indemnity claims. The provision specifically states as follows:

> Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright: <u>the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer</u>, their successors and assigns or those using or selling Buyer's products for any alleged <u>infringement</u> of any patent, trademark, and copyright <u>by reason of the sale or use of any such article</u> or material. Seller agrees that he will pay all judgments and costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

(Ex. E, Wells Purchase Order ¶ 14 (emphasis added))

The indemnification provision (which Wells unilaterally drafted and now seeks to impose) thus establishes that STMicroelectronics' indemnification obligations, as they relate to Wells, are limited in scope to infringement claims against Wells based on STMicroelectronics' specific product or "article."[4] The provision does not extend to non-infringement claims. There are, as a result, at least two conditions that must exist before STMicroelectronics will have an obligation to indemnify Wells under the Wells Purchase Order. First, there must be an

---

[4]    The indemnity provision of the Wells Purchase Order also purports to establish a right to indemnification for successors, assigns, and buyers of Wells' products. No successor, assignee, or buyer has asserted a claim against STMicroelectronics, and as such, that portion of the provision is of no effect here.

infringement claim against Wells; and, second, that claim must accuse STMicroelectronics' specific product of infringement.  Neither condition exists here.

Wells cannot recover under the Wells Purchase Order because there is no infringement claim pending against Wells.  The only claims against Wells are indemnification claims.  Indeed, Remy's claim against Wells is entitled "Remy v. Wells for Indemnity," and Remy specifically seeks "an order requiring Wells to defend Remy against any charge of infringement with respect to the accused products, [and] a declaration that Wells is liable for any judgment against Remy . . . ."  (D.I. 1, ¶ 21)  Absent an actual infringement claim against Wells, there is no trigger for the indemnification provision in the Wells Purchase Order, which expressly requires "a suit . . . brought against [Wells] . . . for any alleged infringement of any patent, trademark, and copyright." (emphasis added)  Because the first condition precedent for liability cannot be satisfied as a matter of law, Wells' indemnification claims should be dismissed.

Moreover, even if the infringement claim of the Texas Federal Action were somehow deemed to have been asserted against Wells (and it obviously was not, as Wells is not even a party to the Texas Federal Action), Wells also cannot recover under the Wells Purchase Order because the infringement claim now pending against Remy does not accuse STMicroelectronics' specific product.  Rather, it accuses alternators, which STMicroelectronics does not manufacture.  The pertinent allegation, of which this Court may and should take judicial notice,[5] states that:

---

[5]    Pursuant to Federal Rule of Evidence 201, it is appropriate for the Court to take judicial notice of the operative filings in the Texas cases in the context of a motion to dismiss. *Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*, C.A. No. 96-40 MMS, 1996 U.S. Dist. LEXIS 8158, at *8 n.2 (D. Del. June 7, 1996) (taking judicial notice of a complaint filed in Texas in the course of granting a motion to transfer, although neither party included the

> Defendant Remy operates as a manufacturer and re-manufacturer
> of original equipment and aftermarket electrical components for
> automobiles . . . including <u>alternators</u> containing voltage regulator
> units. Defendant Remy sells such components to original
> equipment manufacturers and dealers . . . . [T]he above-mentioned
> activities by Defendant Remy have amounted to infringement . . . .

(Ex. A, Tex. Fed. Amend. Compl. ¶¶ 21-22) (emphasis added)  The allegation does not mention

STMicroelectronics, much less name it as a party or accuse one of its specific products of

infringing the '159 patent.  Moreover, Wells concedes as much in the allegations of its own

claim by explaining that it is "<u>automobile alternator products</u> that GE Licensing has accused of

infringing U.S. Patent No. 4,733,159." (D.I. 24, at ¶ 5 (emphasis added))  For this reason, Wells'

indemnification claims also do not, as a matter of law, satisfy the second condition precedent for

indemnification, and they should be dismissed on that basis as well.

### C.    Wells' Breach Of Contract Claims Should Be Dismissed Pursuant To Rule 12(b)(6).

Wells' breach of contract claims fare no better.  Like indemnification claims,

contingent breach of contract claims, such as those here, should be dismissed where one or more

conditions precedent to a finding of liability cannot exist as a matter of law.  *See Home Repair,*

*Inc. v. Universal Restoration Servs.*, 90 Fed. Appx. 142, 144-45 (7th Cir. 2003) (affirming

motion to dismiss breach of contract claims under Rule 12(b)(6) where conditions precedent to

the agreement were not met); *Malhan v. Anthony Robbins Cos.*, No. 05-CV-05951 (WJM), 2006

U.S. Dist. LEXIS 20558, at *10-11 (D.N.J. Mar. 24, 2006) (dismissing plaintiffs' breach of

---

Texas complaint as part of the record); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp.
888, 892 (D. Del. 1991) (taking judicial notice of court records from parallel California
proceedings, including briefs and petitions of the parties, in deciding a motion to dismiss).
*See also Impax Labs., Inc. v. Aventis Pharm., Inc.*, 333 F. Supp 2d 265, 269 (D. Del. 2004)
(after a bench trial, taking judicial notice of adjudicative facts from another case between the
parties ); *In re: Peregrine Sys., Inc.*, C.A. No. 03-815-KAJ, 2004 U.S. Dist. LEXIS 13467, at
*32 (D. Del. July 12, 2004) (granting motion for judicial notice as to a transcript and order
from Bankruptcy Court).

contract claim on a 12(b)(6) motion, where conditions precedent to defendant's obligation under

the contract were not met) (citations omitted); *THQ Venture v. SW, Inc.*, 444 N.E.2d 335, 339

(Ind. Ct. App. 1983) (affirming lower court's decision to grant defendants' motion to dismiss

plaintiff-investors breach of contract claims, where, *inter alia*, plaintiffs failed to satisfy

conditions precedent required by the contract); *Centex Corp. v. Dalton*, 840 S.W.2d 952, 955-56

(Tex. 1992) (overruling lower court decision, in part, on ground that condition precedent to

contract at issue had not been satisfied, and therefore, defendant's right to enforce that contract

had never accrued).

This is clearly true of Wells' claim that STMicroelectronics breached the terms of

the Wells Purchase Order by "refusing to indemnify" Wells. This is the same indemnity claim

discussed above restated as a breach of contract claim. STMicroelectronics' indemnification

obligations have not been triggered for the reasons detailed above, and there can be no " breach"

of the indemnification obligation as a result.

Wells' second breach claim is set forth in paragraph 21 of the Third-Party

Complaint and states as follows:

> In the event the `159 Patent is held to be valid and infringed by
> Remy, then [STMicroelectronics] has breached the contract terms
> of Wells' Purchase Order by violating [STMicroelectronics']
> warranty of no infringement made in paragraph 14.

(D.I. 24 (emphasis added))

Paragraph 14 of the Wells Purchase Order, however, reads in pertinent part:

> Seller warrants that the articles described herein and the sale or use
> of them will not infringe any United States patent, trademark and
> copyright . . . .

(emphasis added) The provision establishes that STMicroelectronics' warranty is limited in

scope to a finding that STMicroelectronics' specific product or "article" infringes a patent.

17

Wells nonetheless alleges that "[i]n the event the '159 patent is held to be valid and infringed by

Remy," STMicroelectronics has breached its warranty. One conclusion, however, does not

follow from the other. Under the Wells Purchase Order, the issue is not whether Remy will be

found liable for infringement (or even whether Wells will incur indemnification liability), but

whether STMicroelectronics' specific product infringes a patent. Only then would Wells'

warranty rights be triggered. Wells has not and cannot allege as much because there is no claim

accusing a specific STMicroelectronics product of infringement, and for that reason, Wells

cannot, as a matter of law, establish the necessary condition precedent for liability on the part of

STMicroelectronics.

Wells' third and final breach claim suffers from the same defect in that it is

subject to the same condition. The third claim is set forth in paragraph 22 of the Third-Party

Complaint and states as follows:

> In the event the '159 Patent is held to be valid and infringed by
> Remy, then [STMicroelectronics] has breached the contract terms
> of Wells' Purchase Order by violating [STMicroelectronics']
> warranty that it is in compliance with all federal laws pursuant to
> paragraph 19.

(D.I. 24 (emphasis added))

Paragraph 19 of the Wells Purchase Order states in pertinent part as follows:

> Seller warrants that it is currently in compliance with and will
> continue to comply with any and all applicable federal, state and
> local laws and regulations which could impose liability on Buyer
> as the result of any non-compliance on Seller's part.

(*Id.*)

Wells essentially contends that STMicroelectronics will have breached its

warranty only if Remy is found to have infringed the '159 patent. Again, one conclusion does

not follow from the other. Remy's infringement or lack thereof has nothing to do with whether

18

STMicroelectronics has complied with federal laws. This is so because the infringement claim

pending against Remy does not accuse an STMicroelectronics product or even mention

STMicroelectronics. Thus, even if Remy's alternators were found to infringe the '159 patent,

there would remain no contractual basis for concluding that STMicroelectronics has breached its

warranty. The third breach of contract claim should be dismissed for this reason.

## II.     EVEN IF WELLS' CLAIMS WERE VIABLE UNDER RULE 12(b)(6), THE COURT SHOULD ABSTAIN FROM HEARING THEM PURSUANT TO THE *COLORADO RIVER* DOCTRINE.

Even if the Court were to conclude that Wells has stated at least one claim for

relief against STMicroelectronics (and it ought not for the reasons stated above), the Court

should abstain from hearing the claims pursuant to *Colorado River Water Conservation District*

*v. United States*, 424 U.S. 800 (1976), and the doctrine that bears its name. "Under the *Colorado*

*River* abstention doctrine, a federal court may exercise its power to stay or dismiss an action on

the sole ground that a concurrent similar action exists in a state court which may resolve the

controversy between the parties to the federal action." *Robinson v. Ruiz*, 772 F. Supp. 212, 214

(D. Del. 1991). "This type of abstention doctrine evolves from the district court's ability to

control its own docket," *Id.* at 214, and rests on "considerations of wise judicial administration, .

. . conservation of judicial resources and comprehensive disposition of litigation." *Moses H.*

*Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15 (1983) (internal quotes

omitted).

The threshold determination for application of the *Colorado River* doctrine is

whether the federal case and the state case are "parallel." *Summa Four, Inc. v. AT&T Wireless*,

994 F. Supp. 575, 580 (D. Del. 1998). Parallel does not mean identical. *Id.* (citing *Landis v.*

*North American Corp.*, 299 U.S. 248, 254 (1936)). The term "parallel," in this context, describes cases that involve substantially the same parties litigating about substantially the same issues. *See LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.") (internal quotations omitted)

Here, the federal and state cases are parallel. They involve the same parties and issues. In the Texas State Action, STMicroelectronics first asserted declaratory claims that it does not have contractual obligations to indemnify Wells for liabilities Wells may incur as the result of GE Licensing's infringement claims in the Federal Texas Action. In the present case, Wells asserts indemnity and breach of contract claims based on the very same circumstances. The fact that certain of Wells claims are couched as breach of contract claims does not make the matters any less parallel for purposes of applying the *Colorado River* doctrine. *See Manna v. Greenburgh No. 11 School Dist.*, 2 F. Supp. 2d 461, 467-68 (S.D.N.Y. 1998) (holding that concurrent state and federal proceedings were parallel, even where the relief sought in the two proceedings were not identical, but were "essentially the same"); *Benninghoff v. Tolson*, No. 94-CV-2903, 1994 U.S. Dist. LEXIS 13428, at *5-6 (E.D. Pa. Sept. 22, 1994) (pointing out that the only difference between the two actions was how the allegations were legally framed and holding that the two cases were parallel because the cases presented substantially the same facts, parties and issues, and the plaintiffs were able to present all their legal claims in the state court action)

Once the court has concluded that the federal and state cases are parallel, to "determine[e] whether to abstain under *Colorado River*, the court should consider six factors: (1) which court first assumed jurisdiction over property; (2) the inconvenience of the federal

20

forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Acierno v. Haggerty*, No. 04-1376 (KAJ), 2005 U.S. Dist. LEXIS 30353, at *33 (D. Del. Nov. 23, 2005) (citing *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999) (internal quotes omitted)). All six factors need not weigh in favor of the movant in order for the Court to abstain. *Moore v. John S. Tilley Ladders Co.*, No. 92-5902, 1993 U.S. Dist. LEXIS 2300, at *10 (E.D. Pa. Feb. 23, 1993) ("[T]he weight to be given to any one factor may vary from case to case . . . and no one factor is necessarily determinative.") (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 15 (1983)). Nonetheless, all factors weigh unequivocally in favor of abstention here.

### A.    All Six Factors Weigh In Favor Of Abstention.

#### 1.    The Texas State Court First Assumed Jurisdiction.

Where, as here, there is no actual property at issue over which a court could assume jurisdiction, it is appropriate to consider, as the first *Colorado River* factor, which court first assumed jurisdiction over the dispute itself. *See Acierno*, 2005 U.S. Dist. LEXIS 30353, at *33 (noting that no property was actually in dispute and stating that "because the state courts in Delaware first assumed jurisdiction over Acierno's land use disputes, the first factor of *Colorado River* weighs in favor of abstention."). *See also Benninghoff v. Tolson,* No. 94-CV-2903, 1994 U.S. Dist. LEXIS 13428, at *10 (E.D. Pa. Sept. 22, 1994) (applying the *Colorado River* doctrine and finding that the priority factor weighed in favor of abstention); *Fidelity Federal Bank v. Larken Motel Co.*, 764 F. Supp. 1014, 1018 (E.D. Pa. 1991) (determining that *Colorado River* doctrine weighs in favor of a dismissal or stay where the state claim was filed first).

STMicroelectronics filed the Texas State Action on November 1, 2006, six months before Wells asserted the current claims. Wells answered STMicroelectronics's state claims on December 4, 2006, almost five months before Wells asserted its claims here. And, as Wells concedes in the Third-Party Complaint, discovery has begun in the Texas State Action. (D.I. 24, ¶ 16) As a result, there is no question that the Texas state court first assumed jurisdiction over this dispute.

Moreover, Wells itself has now put the issue of indemnification squarely before the Texas state court. On January 29, 2007, Wells represented to the Texas state court in discovery disclosures that "[i]n the event that neither Wells' nor STMicro's terms and conditions govern the transactions at issue, Section 2.312 of the Texas Business and Commerce Code also known as the Uniform Commercial Code, clearly provides for indemnification." (Ex. D, Tex. State Discl. p. 3)

In very similar circumstances, other courts have concluded that the priority *Colorado River* factor weighed on favor of abstention. *See e.g. Benninghoff*, 1994 U.S. Dist. LEXIS 13428, at *10 (finding that the priority factor weighed in favor of abstention where the state court action was filed six months prior to the federal action and there had been "greater progress" in the state action); *Fidelity Federal Bank*, 764 F. Supp. at 1018 (determining that *Colorado River* doctrine weighs in favor of a dismissal or stay where the state claim was filed by more than six weeks before the commencement of the federal suit). This case should be no exception.

### 2.    The Texas State Forum Is Less Inconvenient As A Whole.

As the party initiating the dispute, STMicroelectronics' choice of forum should be given deference. *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 633-34 (3d Cir.

22

1989) (acknowledging that ordinarily "great deference" should be accorded to the plaintiff's

choice of forum); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice

of a proper forum is a paramount consideration . . . [which] should not be lightly disturbed");

*C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 561 (D. Del. 1998) (same).

    Moreover, STMicroelectronics submits that it is more inconvenient for it to

litigate in Delaware. This is certainly true with respect to travel considerations. Wells is located

in Wisconsin, near Milwaukee. Dallas is 857 miles from Milwaukee.[6] (Ex. F, Total Distance,

http://www.mapcrow.info/cgi-bin/cities_distance_airpt.cgi) A flight from Milwaukee to Dallas

will take approximately 2.5 hours, and Dallas-Fort Worth International Airport has a 73% on-

time arrival rate. (*Id.*, Flight Duration, http://www.oag.com/NorthAmerica/airlineand

airport/GetDuration.asp; On-Time Arrival Performance, http://www.bts.gov/cgi-bin) By

contrast, Wilmington is 1275 miles from Dallas (STMicroelectronics' location), a flight from

Dallas to Philadelphia will take 3 hours, and Philadelphia International Airport has only a 65%

on-time arrival rate. (*Id.*, Total Distance, http://www.mapcrow.info/cgi-bin/cities_distance_

airpt.cgi; Flight Duration, http://www.oag.com/NorthAmerica/airlineandairport/

GetDuration.asp; On-Time Arrival Performance, http://www.bts.gov/cgi-bin) It is therefore

likely more inconvenient for STMicroelectronics to travel to Delaware than it is for Wells to

travel to Dallas.

---

[6]   Courts typically take judicial notice of this type of information and the types set forth in the
remainder of this paragraph pursuant to Federal Rule of Evidence 201. *See e.g.*, *Nascone v.
Spudnuts, Inc.*, 735 F.2d 763, 773 (3d Cir. 1984) (taking judicial notice of distance between
two states); *Multimedia Publishing Co. of South Carolina, Inc. v. Greenville-Spartanburg
Airport District*, 774 F. Supp. 977, 979 (D.S.C. 1991) (taking judicial notice of flight delays),
*rev'd in part on other grounds*, 991 F.2d 154 (4th Cir. 1993); *Green v. Burlington Northern
Santa Fe Railway Company*, Civil Action No. 3:05-CV-1596-L, 2006 U.S. Dist. LEXIS
2143, at *4 (N.D. Tex. Jan. 19, 2006) (taking judicial notice of travel time and distance).

                                    

Delaware is also more inconvenient for the pool of potential witnesses as a whole. A number of potential witnesses that might appear at trial on behalf of STMicroelectronics reside close in proximity to Dallas. No potential witness for either party resides in Delaware or near Wilmington. In fact, every person identified by Wells in its Texas Discovery Disclosures as "having knowledge of relevant facts" about the dispute works in Wisconsin, Indiana, or Michigan. (Ex. D, Tex. State Discl. pp. 4-7). As a result, a trial in Dallas would result in less overall travel for potential witnesses than a trial in Wilmington.

For these reasons, the second *Colorado River* factor weighs in favor of abstention.

### 3.    Conflicting Results May Come From A Decision Not To Abstain.

The third *Colorado River* factor warns that courts should consider abstention when proceeding with a parallel federal action would result in piecemeal litigation. *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988) (holding that abstention under Colorado River was appropriate where piecemeal litigation could otherwise result). "Piecemeal" describes a situation in which two courts are adjudicating related issues pertaining to the same dispute. The issues before the two courts here are more than related – they are the same. Thus, the risk of not abstaining in this case is more severe than possible piecemeal litigation. Proceeding with this case risks duplicative litigation with the potential for conflicting results. Other courts have concluded that abstention is particularly appropriate where there is such a risk of conflicting results. *Moore v. John S. Tilley Ladders Co.*, No. 92-5902, 1993 U.S. Dist. LEXIS 2300, at *12 (E.D. Pa. Feb. 23, 1993) (abstaining in favor of the state proceedings to avoid duplicative efforts and inconsistent adjudications).

The result here should be no different. The third *Colorado River* factor thus weighs heavily in favor of abstention.

4.    **The Texas State Court Obtained Jurisdiction Before This Court.**

In a case such as this, where there is no actual property in dispute and the first *Colorado River* factor therefore relates to jurisdiction over the dispute itself rather than contested property, the first and fourth factors are substantially the same. As detailed above, the Texas state court first obtained jurisdiction over this dispute and discovery is ongoing in that case. The priority *Colorado River* factor, whether identified as the first or fourth factor, thus weighs substantially in favor of abstention.

5.    **State Law Controls This Dispute.**

The fifth *Colorado River* factor focuses on whether federal or state law controls the dispute, the implication being that it may be advantageous for a federal court to continue to hear a case involving a federal question or claim. There is no federal question or claim before the Court in this case. The parties' dispute relates exclusively to indemnification and contractual rights and, as such, is governed entirely by state law, and probably Texas state law. It will almost certainly not be governed by Delaware law.

This factor therefore weighs significantly in favor of abstention.

6.    **The Texas State Court Can More Than Adequately Protect The Interests Of The Parties.**

The sixth and final *Colorado River* factor relates to whether the state court can adequately protect the parties' interests. Here, the first-filed state court claims are the declaratory inverse of the claims before this Court. Moreover, they are governed entirely by state law (and probably Texas state law). Thus, there is no risk that a portion of the parties' dispute will not be adjudicated, or that a party will be prejudiced by a state court's application of federal law.

To the contrary, it is far more likely that the Texas state court will have greater experience with the applicable state law than this Court. In like circumstances, the Third Circuit Court of Appeals and this Court, among others, have recognized the advantages of resolving such claims in state court. *See St. Clair Intellectual Property Consultants, Inc. v. Mirage System, Inc.*, 419 F. Supp. 2d 620, 624 (D. Del. 2006) ("[S]tate court is a better forum for consideration of state law contract issues."). *See also Trent v. Dial Medical of Florida, Inc.*, 33 F.3d 217, 225 (3d Cir. 1994) (stating that a principal reason to abstain is to adjudicate state-law issues in state court); *Aetna Casualty & Surety Co. v. Sterner*, 700 F. Supp. 252, 257 (E.D. Pa. 1988) ("Where all other factors are equal, our respect for notions of comity and federalism tip the balance in favor of deferring to a state court for resolution of state law issues."). For these reasons, the sixth and final *Colorado River* factor weighs heavily in favor of abstention.

### B.    Dismissal Is The More Appropriate Remedy.

Once a federal court has determined that it will abstain in favor of a state court action, the court must decide whether to dismiss or stay the federal action. The Third Circuit has explained that dismissal under *Colorado River* is appropriate where the "parallel state-court litigation will completely resolve the issues between the parties and . . . the federal court will have nothing further to do with the case." *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 138 (3d Cir. 1988). *See also Aetna Casualty & Surety Co. v. Sterner*, 700 F. Supp. 252, 257 (E.D. Pa. 1988) (dismissing declaratory judgment action in federal court where the state court proceeding "will completely resolve the issues between the parties leaving [the federal court] with nothing further to do with this case").

Such are the circumstances here. As detailed above, the issues underlying the claims in the present action and the Texas State Action are more than related – they are identical.

26

Thus, once the claims have been resolved by the state court, there will be nothing left for this Court to do in the case.  STMicroelectronics therefore respectfully requests that the Court dismiss Wells' claims pursuant to the *Colorado River* doctrine.  In the alternative, STMicroelectronics seeks a stay of Wells' claims on the same grounds.

27

## CONCLUSION

For the reasons detailed above, STMicroelectronics respectfully submits that Wells' indemnification claims and breach of contract claims should be dismissed pursuant to Rule 12(b)(6) or the *Colorado River* doctrine.  In the alternative, STMicroelectronics seeks a stay of the claims pursuant to the *Colorado River* doctrine.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Third Party Defendant,*
*STMicroelectronics, Inc.*

Dated:  June 20, 2007

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CIF Licensing, LLC, d/b/a GE Licensing, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 2:06cv345  DF<br><br>JURY TRIAL DEMANDED |
| DENSO CORPORATION, Remy International Inc., Valeo, Inc., and Valeo Sistemas Electricos S.A. DE C.V. | § § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff CIF Licensing, LLC, d/b/a GE Licensing ("GE Licensing"), brings this action against Defendants DENSO CORPORATION ("DENSO"), Remy International, Inc. ("Remy"), Valeo, Inc. ("Valeo Inc"), and Valeo Sistemas Electricos S.A. de C.V. ("Valeo CV"), alleging as follows:

### The Parties

1.    Plaintiff GE Licensing is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Princeton, New Jersey 08540. GE Licensing is the owner of all right, title, and interest in and to United States patent No. 4,733,159 (the "Patent") by assignment, with the right to recover damages for all past infringement of the Patent. The Patent was duly and legally issued on March 22, 1988 by the United States Patent and Trademark Office. The invention of the Patent contains a voltage regulator system for automobile alternators, including a unique high frequency charge pump. A copy of the Patent is attached hereto as Exhibit A.

2.    Upon information and belief, Defendant DENSO is a Japanese corporation with its principal place of business and home office at 1-1 Showa-cho, Kariya Aichi 448-8661, Japan. Although DENSO does business in Texas by, among other things, committing acts that constitute the tort of infringement of the Patent (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, DENSO does not maintain a regular place of business in Texas, has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, DENSO may be served with process by serving the Texas Secretary of State, who is deemed to be DENSO's agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

3.    Upon information and belief, Defendant Remy is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business and home office at 2902 Enterprise Drive, Anderson, Indiana 46013.. Although Remy does business in Texas by, among other things, committing acts that constitute the tort of infringement of the Patent (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, Remy does not maintain a regular place of business in Texas, has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, Remy may be served with process by serving the Texas Secretary of State, who is deemed to be Remy's agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

4.    Upon information and belief, Defendant Valeo Inc is a corporation organized and existing under the laws of the state of New York, with its principal place of business and home office at 3000 University Drive, Auburn Hills, Michigan 48326. Upon information and belief, Valeo Inc maintains branch offices in El Paso, TX, Fort Worth, TX, and Pharr, TX. Valeo Inc also does business in Texas by, among other things, committing acts that constitute the tort of

2

infringement of the Patent and recruiting Texas residents for employment (*see*, TEX. CIV. PRAC.

& REM. CODE § 17.042).Valeo Inc has not registered to do business in Texas, and does not

maintain a designated agent for service of process in Texas. Therefore, Valeo Inc may be served

with process by serving the person in charge of its business in Texas. TEX. CIV. PRAC. & REM.

CODE § 17.043.

5.       Upon information and belief, Defendant Valeo CV is a Mexican corporation with

its principal place of business and home office at Avenida Circuito Mexico No. 160, Z.I. Parque

Tres Naciones, 78395 San Luis Potosi, Mexico. Although Valeo CV does business in Texas by,

among other things, committing acts that constitute the tort of infringement of the Patent (see,

TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, Valeo CV does not

maintain a regular place of business in Texas, has not registered to do business in Texas, and

does not maintain a designated agent for service of process in Texas. Therefore, Valeo CV may

be served with process by serving the Texas Secretary of State, who is deemed to be Valeo CV's

agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

### Jurisdiction and Venue

6.       This action for infringement arises under the patent laws of the United States,

Title 35, United States Code, including § 271. This Court has exclusive jurisdiction under Title

28, United States Code, particularly § 1338(a).

7.       Defendant DENSO has committed the tort of patent infringement in the Eastern

District. Defendant DENSO has sold and shipped into the Eastern District products that infringe

on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it

was reasonably foreseeable that the products would be shipped into the Eastern District.

Accordingly, Defendant DENSO resides in the Eastern District as the term "reside" is defined in

3

28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

     8.     Defendant DENSO is subject to personal jurisdiction in Texas and this District.

     9.     Defendant Remy has committed the tort of patent infringement in the Eastern District. Defendant Remy has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District. Accordingly, Defendant Remy resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

     10.     Defendant Remy is subject to personal jurisdiction in Texas and this District.

     11.     Defendant Valeo Inc has committed the tort of patent infringement in the Eastern District. Defendant Valeo Inc has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District. Accordingly, Defendant Valeo Inc resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

     12.     Defendant Valeo Inc is subject to personal jurisdiction in Texas and this District.

     13.     Defendant Valeo CV has committed the tort of patent infringement in the Eastern District. Defendant Valeo CV has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District.

4

Accordingly, Defendant Valeo CV resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

    14.     Defendant Valeo CV is subject to personal jurisdiction in Texas and this District.

**COUNT I**
(Patent Infringement – DENSO)

**Defendant DENSO's Activities**

1-14.   Plaintiff hereby repeats and incorporates by reference ¶1-14 as ¶1-14 of this Count I.

    15.     Defendant DENSO operates as a manufacturer and wholesaler of automotive motor vehicle supplies and parts, including alternators containing voltage regulator units. Defendant DENSO sells such supplies and parts to entities engaged in the automobile industry in North America.

    16.     On information and belief, the above-mentioned activities by Defendant DENSO have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

    17.     Plaintiff GE Licensing is the owner of all right, title and interest in and to the Patent with the right to recover damages for all past infringement of the Patent.

    18.     On information and belief, DENSO is infringing the Patent willfully and with knowledge. On information and belief, DENSO will continue infringing the Patent unless enjoined by this Court.

    19.     As a result of DENSO's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

20.    DENSO's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

## COUNT II
### (Patent Infringement – Remy)

### Defendant Remy's Activities

1-20.   Plaintiff hereby repeats and incorporates by reference ¶1-20 of Count I as ¶1-20 of this Count II.

21.    Defendant Remy operates as a manufacturer and re-manufacturer of original equipment and aftermarket electrical components for automobiles, light trucks, medium and heavy duty trucks and other heavy duty vehicles, including alternators containing voltage regulator units. Defendant Remy sells such components to original equipment manufacturers and dealers, automotive retail chains and warehouse distributors in North America, Europe, Latin America, and Asia-Pacific.

22.    On information and belief, the above-mentioned activities by Defendant Remy have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

23.    On information and belief, Remy is infringing the Patent willfully and with knowledge. On information and belief, Remy will continue infringing the Patent unless enjoined by this Court.

24.    As a result of Remy's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

25.    Remy's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

## COUNT III
(Patent Infringement – Valeo Inc)

### Defendant Valeo Inc's Activities

1-25.   Plaintiff hereby repeats and incorporates by reference ¶1-25 of Count II as ¶1-25 of this Count III.

26.      Defendant Valeo Inc operates as a manufacturer of automotive motor vehicle parts, including alternators containing voltage regulator units. Valeo Inc sells such parts to entities engaged in the automobile industry, consisting of various divisions of vehicle manufacturers in North America and Europe.

27.      On information and belief, the above-mentioned activities by Defendant Valeo Inc have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

28.      On information and belief, Valeo Inc is infringing the Patent willfully and with knowledge. On information and belief, Valeo Inc will continue infringing the Patent unless enjoined by this Court.

29.      As a result of Valeo Inc's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

30.      Valeo Inc's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

## Count IV
(Patent Infringement Valeo CV)

### Defendant Valeo CV's Activities

31.      Plaintiff hereby repeats and incorporates by reference 1-31 of Count III as 1-31 of this Count IV.

32.    Defendant Valeo CV operates as a manufacturer of automotive motor vehicle parts, including alternators containing voltage regulator units. Valeo CV sells such parts to entities engaged in the automobile industry, consisting of various divisions of vehicle manufacturers in North America and Europe.

33.    On information and belief, the above-mentioned activities by Defendant Valeo CV have amounted to infringement, directly, by inducement, and/or by contributing to the infringement of the Patent.

34.    On information and belief, Valeo CV is infringing the Patent willfully and with knowledge. On information and belief, Valeo CV will continue infringing the Patent unless enjoined by this Court.

35.    As a result of Valeo CV's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

36.    Valeo CV's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

### Requested Relief

WHEREFORE, Plaintiff GE Licensing prays that this Court enter judgment.

a.    Finding that Defendants DENSO, Remy, Valeo Inc, and Valeo CV have infringed, induced others to infringe and/or committed acts of contributing infringement of the Patent under 35 U.S.C. § 271.

b.    Enjoining Defendants DENSO, Remy, Valeo Inc, and Valeo CV and their subsidiaries, agents, officers and employees, and all others acting in concert with them, from infringing, inducing infringement, and contributing to the infringement of the Patent.

c.    Ordering Defendants DENSO, Remy, Valeo, and Valeo CV to award GE Licensing an amount that adequately compensates GE Licensing for Defendants' infringement,

8

including lost profits (and/or a reasonably royalty), treble damages, court costs, pre-judgment

interest, post-judgment interest and attorney's fees under 35 U.S.C. §§ 284 and 285.

     d.     Granting GE Licensing such other and further relief as is just.

**Demand for Jury Trial**

Plaintiff GE Licensing hereby demands a jury trial on all claims and issues triable of right

by a jury.

     Dated October 17, 2006

                                        Respectfully submitted,

                                        <u>/s/ Bradford P. Lyerla (by permission Otis Carroll)</u>
                                        **Bradford P. Lyerla, Lead Attorney**
                                        Marshall, Gerstein & Borun LLP
                                        6300 Sears Tower
                                        233 South Wacker Drive
                                        Chicago, IL 60606-6357
                                        Tel: (312) 474-6300
                                        Fax: (312) 474-0448
                                        E-mail: blyerla@marshallip.com

OF COUNSEL:

Anthony G. Sitko
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-Mail: asitko@marshallip.com

Jeffrey H. Dean
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-Mail: jdean@marshallip.com

Anthony S. Hind
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-Mail: ahind@marshallip.com

Otis W. Carroll
Texas Bar No. 03895700
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway
Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1070

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by

facsimile transmission and/or first class mail this 20th day of October, 2006.


/s/ Otis Carroll

# Exhibit B

CAUSE NO. _____

| | | |
|---|---|---|
| STMICROELECTRONICS, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | DALLAS COUNTY, TEXAS |
| | § | |
| WELLS MANUFACTURING CORP., | § | |
| KIMBALL INTERNATIONAL, INC. | § | |
| AND KIMBALL ELECTRONICS, INC., | § | |
| | § | |
| **Defendants.** | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff STMicroelectronics, Inc. ("ST") files this its Original Petition for Declaratory Judgment against Wells Manufacturing Corp. ("Wells"), Kimball International, Inc. ("Kimball International") and Kimball Electronics, Inc. (Kimball Inc."), (collectively, "Defendants"), and in support would respectfully show the following:

**I.**

## DISCOVERY CONTROL PLAN

1.    Plaintiff ST intends to conduct discovery under Level 2, Tex.R.Civ.P. 190.3.

## II.

## PARTIES, VENUE AND JURISDICTION

2.      Plaintiff ST is a Delaware corporation authorized to do business in Texas with its principal place of business in Carrollton, Dallas County, Texas.

3.      Defendant Wells is a Wisconsin corporation with its principal place of business located at 26 S. Brooke Street, Fond Du Lac, Wisconsin 54935-4007. Defendant Wells is doing business in the State of Texas, but has not designated a registered agent for service in Texas. Accordingly, pursuant to TEX. CIVIL PRACTICE AND REMEDIES CODE ANN. § 17.044, more commonly known as the *Long Arm Statute*, as well as Section 17.045 of the TEX. CIVIL PRACTICE AND REMEDIES CODE ANN., service may be had by serving the Secretary of State, who can then forward said Citation and Petition to Defendant Wells' principal place of business at 26 S. Brooke Street, Fond Du Lac, Wisconsin 54935-4007.

4.      Defendant Kimball International is an Indiana corporation doing business in the State of Texas, and may be served with process by serving its Registered Agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

5.      Defendant Kimball Inc. is a Delaware corporation doing business in the State of Texas, and may be served with citation and process by serving its registered agent, National Registered Agents, Inc., 1614 Sidney Baker Street, Kerrville, Texas 78028.

6.      Jurisdiction is proper under the Texas Uniform Declaratory Judgments Act (the "Act") in that there is a justiciable controversy about the contractual indemnity rights between ST and Defendants and venue is proper in this Court because all or part of the transactions at issue arose or occurred in whole or in part in Dallas County, Texas.

## III.

## FACTUAL BACKGROUND

7.    ST is a manufacturer and seller of semiconductor chips.  In connection with its

sales transactions, ST incorporates its terms and conditions of sale, including paragraph 13.

Paragraph 13 in pertinent part states as follows:

(b)    With respect to products manufactured solely to Seller's designs and
specifications and which are not modified by Buyer or used other than in
the manner for which they are designed, Seller will defend any suit or
proceeding brought against Buyer insofar as it is based upon a claim that
any such product furnished to Buyer hereunder, by itself and not in
combination with other items not manufactured solely to Seller's designs
and specifications, constitutes infringement of any duly issued United
States or foreign patent, provided that Seller is notified promptly of such
claim in writing and given complete authority, information and assistance
(at Seller's expense) for the defense of same, and Seller shall pay all
damages and costs not to exceed the aggregate sum paid to Seller by
Buyer for the infringing product.

(c)    The obligation of Seller under subparagraph (b) is conditioned upon
Buyer's agreement that if a product or the operation thereof becomes, or in
Seller's opinion is likely to become, the subject of such a suit or
proceeding, Buyer will permit Seller, at its sole discretion and at its own
expense either (1) procure for Buyer the right to continue to use such
product, (2) replace such product with a noninfringing product, (3) modify
such product so it becomes noninfringing, or (4) redeem such product and
refund the purchase price and the transportation costs thereof.

(d)    The sale of products or any parts thereof hereunder confers upon Buyer no
license, express or implied, under any patent rights of Seller.

(e)    The forgoing states the sole and exclusive liability of the parties hereto for
patent infringement and is in lieu of all warranties or other obligations,
express, implied, or statutory, with respect thereto.

Pursuant to paragraph 13, ST may, under certain circumstances, have indemnity obligations to its

buyers. On October 21, 2005 and January 6, 2006, ST was notified by Defendants (or their

affiliates) that Defendants were invoking their contractual indemnity rights with respect to

accusations that Defendants and/or their customers had infringed upon the patent rights of CIF Licensing, LLC d/b/a GE Licensing with respect to certain electronic components manufactured and supplied by Defendants and/or their customers. Remy International, Inc. ("Remy") manufactures, markets and sells automotive electronic components, including alternators. Defendants, *inter alia*, were, and upon information and belief, remain suppliers to Remy. ST advised Defendants that it was unwilling to provide a defense or agree to indemnification and that it owed no indemnification obligations to Defendants because any infringement claim was not being made directly or solely against ST's chip and that such chip was manufactured to the specifications of Defendants and/or their customers. Recently, on October 17, 2006, ST was notified by Remy that it intended to name its suppliers, including the Defendants, in a pending lawsuit seeking to have Defendants indemnify Remy based on the alleged patent infringement and that "those suppliers may also choose to bring STMicroelectronics into the litigation." Thus, litigation involving ST appears to be imminent.

## IV.

## REQUEST FOR DECLARATORY RELIEF

8.    ST seeks a declaration that it has no contractual obligation to indemnify or defend Defendants or any party claiming by, through or under Defendants, pursuant to ST's agreements with Defendants, including the above referenced terms and conditions of sale, and that ST has no liability for any judgment which may be assessed against Defendants in any litigation involving these issues.

## V.

### REQUEST FOR ATTORNEYS' FEES

9.    Pursuant to Section 37.009 of the TEX. CIVIL PRACTICE AND REMEDIES CODE, ST

seeks an award of the reasonable and necessary attorneys' fees that it incurs herein.

## VI.

### CONDITIONS PRECEDENT

10.    All conditions precedent have been performed or have occurred as required by

Rule 54 of the TEXAS RULES OF CIVIL PROCEDURE.

## VII.

### REQUEST FOR DISCLOSURE

11.    Under TEXAS RULES OF CIVIL PROCEDURE 194, Plaintiff requests that Defendants

disclose, within fifty (50) days of the service of this request, the information or material

described in Rule 194.2 (a) - (j).

## VIII.

### PRAYER

12.    ST asks that Defendants be cited to appear and answer and that the Court declare

that ST has no contractual obligation to indemnify or defend Defendants or any party claiming

by, through or under Defendants pursuant to ST's agreements with Defendants and that ST has

no liability for any judgment which may be assessed against Defendants or any party claiming

by, through or under Defendants in any litigation involving these issues.  ST further asks for its

attorneys' fees and costs of suit, as well as all other relief, at law or in equity, to which ST may

show itself justly entitled.

**PLAINTIFF'S ORIGINAL PETITION FOR**
**DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE**                    Page 5

Respectfully submitted,

_____

**Thomas W. Craddock**
Texas Bar No. 04695800
**Wm. David Simmons**
Texas Bar No. 18374700

**McGuire, Craddock & Strother, P.C.**
500 North Akard – Suite 3550
Dallas, Texas  75201
Phone: (214) 954-6800
Facsimile: (214) 954-6868

*Attorneys for STMicroelectronics, Inc.*

# Exhibit C

CAUSE NO. 06-11257

| STMICROELECTRONICS | § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | 134th JUDICIAL DISTRICT |
| WELLS MANUFACTURING CORP., | § | |
| KIMBALL INTERNATIONAL, INC | § | |
| and KIMBALL ELECTRONICS, INC. | § | |
| | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT WELLS MANUFACTURING CORP.'S ORIGINAL ANSWER

TO THE HONORABLE ANN ASHBY, DISTRICT COURT JUDGE:

COMES NOW Defendant Wells Manufacturing Corp. ("Wells"), Defendant in the above styled and numbered cause and files this Original Answer, and would respectfully show the Court the following:

### General Denial

Wells denies each and every allegation, singular and plural, and demands strict proof thereof by a preponderance of the evidence.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Wells Manufacturing Corp. requests a judgment of this Court that Plaintiff STMicroelectronics take nothing from its suit; that Wells have and recover its reasonable and necessary attorney's fees and costs herein expended; and that Wells have judgment for such other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

SESSIONS LAMBERT SELWYN, LLP

William Lewis Sessions,
Texas Bar No. 18041500
Elaine Polemenakos
Texas Bar No. 24027622

1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
Sessions Direct Line: 214-217-8855
Sessions Direct Fax: 214-217-8856
Polemenakos Direct Line 214-217-8050
Polemenakos Direct Fax 214-217-8861

ATTORNEYS FOR DEFENDANT
WELLS MANUFACTURING CORP.

## CERTIFICATE OF SERVICE

I certify that on this date a true and correct copy of the foregoing instrument was served upon counsel of record in accordance with the Texas Rules of Civil Procedure as detailed below:

*Certified Mail #*
*7160 3901 9849 8642 9059*
Thomas W. Craddock
McGuire, Craddock & Strother, P.C.
500 North Akard, Suite 3550
Dallas, Texas 75201

*Certified Mail #*
*7160 3901 9849 8642 9066*
Robert L. Rickman
Fish & Richardson, P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201

December 4, 2006
Date

William Lewis Sessions

# Exhibit D

<u>CAUSE NO. 06-11257</u>

| | | |
|---|---|---|
| | § | **IN THE DISTRICT COURT** |
| **STMICROELECTRONICS** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | |
| | § | **134th JUDICIAL DISTRICT** |
| **WELLS MANUFACTURING** | § | |
| **CORP., KIMBALL** | § | |
| **INTERNATIONAL, INC and** | § | |
| **KIMBALL ELECTRONICS, INC.** | § | |
| | § | |
| Defendants. | § | **DALLAS COUNTY, TEXAS** |

## DEFENDANT WELLS MANUFACTURING, L.P.'S RESPONSE TO PLAINTIFF'S REQUEST FOR DISCLOSURE

To:    Plaintiff STMicroelectronics, Inc., by and through its counsel of record Thomas Craddock, McGuire, Craddock & Strother, P.C., 500 North Akard, Suite 3550, Dallas, Texas 75201

Pursuant to Rule 194 of the TEXAS RULES OF CIVIL PROCEDURE, Defendant Wells Manufacturing, L.P. ("Wells") responds to Plaintiff STMicroelectronics, Inc's ("STMicro") Request for Disclosure as follows:

## RESPONSE TO REQUEST FOR DISCLOSURE

a)    State the correct names of the parties to the lawsuit.

**Response:**

Wells' correct name is Wells Manufacturing, L.P.    To the best of Wells' knowledge, the names of the remaining parties are correct.

b)    State the name, address, and telephone number of any potential parties.

**Response:**

Remy International, Inc.
2902 Enterprise Drive
Anderson IN 46013
(800)372-5131

Delphi
2602 E. 38th Street
Anderson, IN  46013
(765)646-7748

c)    State the legal theories and, in general, the factual bases for your claims or
      defenses

**Response:**

Wells asserts that there is not yet a justicable controversy in this matter and
therefore it is not yet ripe for adjudication.  As a result, the court lacks subject
matter jurisdiction for this case. STMicro's claim presupposes that 1.) Remy
International, Inc. ("Remy") will receive an adverse judgment in the patent
litigation with GE Trading and Licensing currently pending in the Eastern District
of Texas; 2.) that Remy will be able to seek indemnification from Wells for the
potential adverse judgment and 3) Remy will seek indemnification from Wells for
the potential adverse judgment.  Until such circumstances appear likely, this case
should be dismissed for lack of subject matter jurisdiction.

With respect to the substance of STMicro's declaratory judgment action,
Wells contends that its purchases of STMicro's L9474 All Silicon Voltage Regulator
(ASVR) ("L9474") from STMicro are governed by the terms and conditions of Wells'
purchase order, which clearly requires STMicro to indemnify Wells for any
infringement claims.

Even if STMicro's asserted terms and conditions of sale apply, which Wells
does not concede, Wells is still entitled to indemnification.  STMicro's L9474 ASVR
is "manufactured solely to Seller's designs and specifications and [is] not modified
by Buyer or used other than in the manner for which [it is] designed" as set forth in
Paragraph 13(b) of STMicro's terms and conditions of sale.  STMicro's L9474 ASVR
is an open market product and has been since prior to the time that Wells first
purchased it from STMicro.  As an open market product, the L9474 ASVR is offered
for sale to third parties, not only to Remy through Wells.  Thus, STMicro cannot
claim that the product was not developed pursuant to its own designs and
specifications.

Remy asked Wells to package the ASVR, and in fact specified the use of STMicro's L9474 ASVR or an equivalent, in the specifications it gave to Wells. Because Remy provided neither the time nor money for Wells to design an equivalent ASVR chip itself, hire a contractor to design an equivalent ASVR, or locate another supplier already selling an equivalent ASVR (which was not and apparently is still not an option, as no equivalent ASVRs are known to exist on the market), Wells purchased L9474 ASVRs from STMicro to meet Remy's product specifications.

Contrary to STMicro's assertions, Wells has not and does not modify the L9474 ASVR. STMicro compensates Wells for adding protection circuitry to prevent disturbance due to high frequency noise and high transient voltages. Wells also adds the outside connections or housing necessary to make the L9474 ASVR fit into an alternator.

In the event that neither Wells' nor STMicro's terms and conditions govern the transactions at issue, Section 2.312 of the Texas Business and Commerce Code, also known as the Uniform Commercial Code, clearly provides for indemnification.

Wells first learned of the GE Licensing suit on October 6, 2005 through an oral conversation with Dale Starks, Vice President of Remy, and Wells received written notice of the lawsuit from Mr. Starks on October 10, 2005. Wells informed STMicro of the possible indemnity claim in writing on both October 21, 2005 and January 6, 2006. In its notice, Wells provided STMicro with complete authority to defend the same.

d)    State the amount and any method of calculating economic damages.

**Response:**

Any economic damages will be equivalent to the amount of indemnity sought and obtained by Remy from Wells, Kimball, and STMicro, or any one of them, which amount is unknown and unknowable at this time.

e)    State the name, address, and telephone number of any persons having knowledge of relevant facts, and a brief statement of each identified person's connection to the case.

**Response:**

Glen Eichhorn
Vice President of Electronics
Wells Manufacturing, L.P.
26 South Brooke St.
Fond du Lac, WI 54935
(920) 922-5900

Responsible for participating in and overseeing project quotation preparation, contract negotiations, and commercial issues, such as fulfillment and production.

Dave Hansen
Senior Project Design Engineer
Wells Manufacturing, L.P.
26 South Brooke St.
Fond du Lac, WI 54935
(920) 922-5900

Responsible for circuitry issues, preparing project quotations, product design and problem solving relative thereto.

Pedro Vila
Special Markets Manager
Wells Manufacturing L.P.
26 South Brooke St.
Fond du Lac, WI 54935
(920) 922-5900

Responsible for sales and purchasing matters, preparing project quotations, interacting with purchasing departments of customers, contract negotiations, and commercial issues, such as fulfillment and production.

Jim Merkel
Purchasing Agent
Wells Manufacturing, L.P.
26 South Brooke St.
Fond du Lac, WI 54935
(920) 922-5900

Responsible for coordinating part and supply inventories and product fulfillment, disseminating Wells' purchase order terms and conditions to all Wells suppliers, and receiving suppliers' terms and conditions of sale, including the terms and conditions sent by STMicroelectronics to Wells

Dale Starks
Vice President of Purchasing
Remy International, Inc.
2902 Enterprise Drive
Anderson, IN 46013
(800) 372-5131

    Formerly with Delphi; informed Wells by phone and letter of the GE Licensing lawsuit and Remy's request for indemnification from Wells pursuant to Remy's Purchase Order Terms and Conditions

Roger Hartman
Engineering Manager
Remy International, Inc.
2902 Enterprise Drive
Anderson, IN 46013
(800) 372-5131

    Remy Engineering Manager. Formerly with Delphi; responsible for product design of ST L9474 ASVR in conjunction with STMicro. Has knowledge of the likelihood that Remy will pursue Wells for indemnity, as contrasted with the likelihood that Remy will pursue STMicro directly, related to the GE Licensing matter.

Jim Wehrly
915 Edgehill Lane
Anderson, IN 46012-9709
(765) 644-0026

    Formerly with Delco Remy Division of General Motors, which then became Delphi, was responsible for purchasing decisions and negotiations for voltage regulators; the ASVR development with STMicro was started in 1994-1995 by Delco Remy Division of General Motors

Jack Harman
(unknown address, but could be as follows)
347 McLaughlin Avenue
Indianapolis, IN 46227
(317) 786-7454

    Formerly with Delco Remy Division of General Motors, which then became Delphi, was responsible for purchasing decisions and negotiations for voltage regulators.

Monte T. Howell
2902 Enterprise Drive
Commodity Manager
Delco Remy America (Former name of Remy International, Inc.)
Anderson, IN 46013
(800)372-5131

Former Remy employee; provided all requests for quotation, conducted negotiations, and awarded business to Wells.

Brian Fursell
Remy International, Inc.
2902 Enterprise Drive
Anderson, IN 46013
(800) 372-5131

Former Remy employee, responsible for purchasing decisions and negotiations for voltage regulators.

Steve W. Anderson
7603 W 100th N
Anderson, IN 46011-9124
(765) 534-4672

Former Design Engineer, Electronics at Delphi; responsible for product design of voltage regulators.

Ahmed Lawahmeh
Senior Project Engineer
Remy International, Inc.
2902 Enterprise Drive
Anderson, IN 46013
(800) 372-5131

Initial product engineer for ST L9474 ASVR in conjunction with STMicro. Managed the program that developed the 10510887.

Bob Foust
STMicroelectronics, Inc.
19575 Victor Parkway, Suite 400
Livonia, MI 48152
(734) 462-4030

Responsible for sales and purchasing matters, preparing project quotations, interacting with purchasing departments of customers, contract negotiations, and commercial issues, such as fulfillment and production; received Wells' purchase orders for the ST L9474 ASVR

David Swanson
Technical Marketing Engineer
STMicroelectronics, Inc.
19575 Victor Parkway, Suite 400
Livonia, MI 48152
(734) 462-4030

Engineer for ST L9474 ASVR in conjunction with Remy; participated in the program that developed the ST L9474 ASVR in conjunction with Remy

Alessandro Campella
Product Marketing Engineer
STMicroelectronics, Inc.
19575 Victor Parkway, Suite 400
Livonia, MI 48152
(734) 462-4030

Engineer for ST L9474 ASVR in conjunction with Remy; participated in the program that developed the ST L9474 ASVR in conjunction with Remy

Richard Huibregtse
7643 Timber Springs Dr.
Fishers, IN 46038
(317)842-9301

Vice President of Engineering at Remy. Has knowledge of the likelihood that Remy will pursue Wells for indemnity, as contrasted with the likelihood that Remy will pursue STMicro directly, related to the GE Licensing matter.

f)    For any testifying expert, state:

    1.    the expert's name, address, and telephone number;

    2.    the subject matter on which the expert will testify;

    3.    the general substance of the expert's mental impressions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to your control, documents reflecting such information;

    4.    if the expert is retained by, employed by, or otherwise subject to your control:

        A)    produce all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

        B)    produce the expert's current resume and bibliography.

**Response:**

No testifying experts have been designated at this time. Wells will amend this disclosure after any experts have been designated.

g)    Produce any indemnity and insuring agreements as described in Rule 192.3(f).

**Response:**

The terms and conditions of Wells' purchase order or, in the alternative, although Wells does not concede that they are applicable to the transactions at issue, STMicro's terms and conditions of sale.

h)    Produce any settlement agreements as described in Rule 192.3(g)

**Response:**

Not applicable.

i)    Produce any witness statements as described in Rule 192.3(h).

**Response:**

None

j)      If this is a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, produce all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**Response:**

Not applicable.

k)      If this is a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, produce all medical records and bill obtained by you by virtue of an authorization furnished by Defendants.

**Response:**

Not applicable.

l)      Produce the name, address, and telephone number of any person who may be designated as a responsible party.

**Response:**

None at this time.

Respectfully submitted,

**SESSIONS LAMBERT SELWYN, LLP**

_(signature)_
_____
William Lewis Sessions,
Texas Bar No. 18041500
Elaine Polemenakos
Texas Bar No. 24027622

1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
Sessions Direct Line: 214-217-8855
Sessions Direct Fax: 214-217-8856
Polemenakos Direct Line: 214-217-8050
Polemenakos Direct Fax: 214-217-8851

**ATTORNEYS FOR DEFENDANT
WELLS MANUFACTURING L.P.**

## CERTIFICATE OF SERVICE

I certify that on this date a true and correct copy of **Defendant Wells Manufacturing, L.P.'s Response to Plaintiff's Request for Disclosure** was served upon counsel of record in accordance with the Texas Rules of Civil Procedure as detailed below:

*CMRRR # 7004 2510 0000 9023 2153*
Thomas W. Craddock
McGuire, Craddock & Strother, P.C.
500 North Akard, Suite 3550
Dallas, Texas 75201

*CM # 7004 2510 0000 9023 2160*
Robert L. Rickman
Fish & Richardson, P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201

_____
Date

_____
Elaine Polemenakos

# Exhibit E

## TERMS AND CONDITIONS GOVERNING PURCHASE ORDERS

1. The Buyer hereinafter referred to is Wells Manufacturing, L.P. and the Seller is the other party who has affixed its signature to this document.

2. This order is not binding until accepted by Buyer. The acceptance of this order will occur when an acknowledged copy of said order is executed by the Seller and has been returned and received by the Buyer. Seller shall not make any changes in the terms, conditions, prices and delivery dates of this order without first obtaining Buyer's written consent. Buyer shall have the right to schedule the dates of delivery for the parts and materials that are subject to this order. Buyer shall also have the right to make reasonable changes relating to the number of parts and materials subject to this order depending upon the manufacturing requirements of Buyer.

In the event that Seller fails to give a written acknowledgement of this order as so provided above, any delivery made pursuant to this order shall constitute an acceptance of all the provisions of this order.

3. By accepting this purchase order, Seller agrees that the prices, terms and conditions of this order are at least as favorable to Buyer as are those prices, terms and conditions given by Seller to other purchasers of the same quality and quantity of Seller's product. If Buyer is able to purchase goods of comparable quality from another seller at a lower delivered cost than as specified in this purchase order, the Buyer may give to Seller written notice of same and unless within fifteen days from the date of said notice. Seller does not reduce its prices to an amount equal to the price offered by the other seller, Buyer may purchase said goods from other seller. All goods so purchased shall be deducted from the remaining balance of goods to be purchased by Buyer from Seller. All other terms and conditions of this purchase order shall remain in full force and effect.

4. The Seller will not be responsible for delays or defaults in deliveries, nor the Buyer, for failure to receive or accept shipments if occasioned by wars, fires, insurrections, transportation difficulties or Act of God.

5. The title to all dies, tools and patterns supplied by Buyer or amortized by the Seller under agreement with the Buyer shall remain vested in the Buyer. All of said dies, tools and patterns shall be returned to Buyer or to Buyer's designee upon demand of Buyer.

6. Seller agrees to use all dies, tools, patterns, or material to manufacture exclusively for Buyer and not to deliver any material or parts substantially complying the Buyer's specifications to any other person, firm or corporation and Seller agrees to pay the Buyer liquidated damages for nonperformance of the terms of this contract for each person, firm or corporation to whom the same is sold or delivered. Selling or delivering such material or parts as set forth in this paragraph shall be considered a violation of the terms and conditions of this contract and Buyer may forthwith, without notice, take possession of all property title to which has been retained by the Buyer.

7. The Buyer shall have the right by written order to make changes from time to time in the work to be performed by Seller hereunder. If such changes cause an increase or decrease in the amount due under this order or in the time required for Seller to perform hereunder because of said changes, this order by agreement shall be modified in writing accordingly.

8. Buyer may change shipping schedules or defer shipment of this order or any part thereof if for any reason its production is changed, delayed or curtailed, or any contingencies interfere with the receipt, handling or stocking of the items ordered herein. Failure to deliver goods of the quality and quantity and within the time or times specified by this contract shall, at the option of the Buyer, relieve it of any obligation to accept and pay for such goods as well as any undelivered shipments if there be any, and charge the Seller with any increased cost or other loss incurred thereon, unless deferred shipment be agreed to by the Buyer in writing. Any failure by the Buyer to exercise its option with respect to any shipment of goods shall not be deemed to constitute a waiver with respect to subsequent shipments.

9. Buyer shall have the right to inspect all material and parts and the same shall be manufactured as specified and shall be of a standard quality as understood and accepted by the trade. Inspection of each shipment may be made by Buyer after delivery. Prior payment or acceptance of shipments shall not be considered as waiving such right of inspection. The Buyer may reject and return at the risk and expense of Seller all rejected material or parts and shall be given full credit for same.

10. The Buyer shall be given full credit for all material and parts rejected because of defect or the failure to meet specifications without invalidating the remainder of the order. Rejected material and parts may be held for Seller's inspection without cost or liability to Buyer and shall be removed at the expense of the Seller within five days after written notification. Buyer shall not be required to pay for any material or parts rejected after inspection.

11. The Seller expressly warrants that all the material and work covered by this order will conform to the specifications, drawings, samples or other description furnished or adopted by the Buyer and will be fit and sufficient for the purpose intended, merchantable, of good materials and workmanship and free from defect.

12. The Buyer will conduct an inspection as to the quality of the goods received from Seller. Said inspection will be at Buyer's expense if after conducting such an inspection, the percentage of defective material or parts warrants (in the judgment of the Buyer) a 100% inspection, the Buyer reserves the right to either reject the material in total or to conduct a 100% inspection. Buyer and Seller shall agree to the reasonable amount to be charged to Seller for said inspection. Any discount date or due date will be calculated from the completed inspection date.

13. In the event Seller becomes insolvent or commits an act of bankruptcy or manufacturing is retarded by reason of a strike or an assignment is made by Seller for the benefit of creditors or if Seller fails to comply with the terms of this order or schedule, this contract may be canceled by Buyer and Buyer may without notice take possession of all dies, tools, patterns and all processed or unprocessed material and parts.

14. Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright: the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer, their successors and assigns or those using or selling Buyer's products for any alleged infringement of any patent trademark, and copyright by reason of the sale or use of any such article or material. Seller agrees that he will pay all judgments or costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

15. Buyer reserves the right to cancel this order or any portion of same if delivery is not made when and as specified, time being of the essence of this order and charge Seller for any loss entailed.

16. In the event of cancellation, Wells Manufacturing, L.P. will be responsible for only the labor and material expended thereon during the normal lead time required to meet the stated delivery date or dates.

17. No material shall be acquired by the Seller in excess of that which may be necessary to meet Buyer's released delivery schedule. If Seller acquires any such excess material and thereafter this contract is canceled or terminated, such material shall be the property of Seller, and Buyer shall in no way be liable therefore.

Title to all materials supplied by Buyer to Seller shall remain vested in Buyer. The Seller agrees to pay for all materials furnished by Buyer that may be spoiled or that is not otherwise satisfactorily accounted for or delivered to the Buyer.

18. The Seller will be required to invoice the Buyer immediately upon shipment and if the invoices are not in the hands of the Buyer on or before the 4th day of the month succeeding shipment, said invoices will be considered as invoices of the succeeding month for accounting and discount purposes.

19. Seller warrants that it is currently in compliance with and will continue to comply with any and all applicable federal, state, and local laws and regulations which could impose liability upon Buyer as a result of any non-compliance on Seller's part. Seller further warrants that all goods and services covered by this order have been produced or furnished in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219, Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. §793, Section 2012 of the Vietnam Era Veterans Readjustment Act of 1974, 38 U.S.C. §§ 2011, 2012, and Executive Order 11625 together with the rules, regulations and relevant orders promulgated thereunder, to the extent such laws, rules or regulations are applicable to this order.

20. This purchase order constitutes the sole agreement between the parties and supercedes any and all agreements or understandings, bids or offers written or otherwise respecting the same.

# Exhibit F

# Total Distance

## COORDINATES +
## TOTAL DISTANCE

| | | |
|---|---|---|
| Milwaukee, US | -87.9064 43.0389 | |
| Dallas, US | -96.8000 32.7833 | Use this to get Google Earth. |
| **Miles:** | **856.84** | |
| **Kilometers:** | **1378.91** | |
| Bearing: | **SW** | |

""Ibiza"" .

**Milwaukee, US**
Local Travel Friends: 0
Add yourself

Nearest airports:
GENERAL MITCHELL INTL
(MKE) -- 10.22 km
Hotel near this airport
DANE CO RGNL TRUAX
FLD (MSN) -- 116.67 km
Hotel near this airport

Distance, Milwaukee
Landmarks

Camera on the city
5-day forecast
Photos

Ted's AccumulaTed
'Bearmiles': 38,399



**Dallas, US**
Local Travel Friends: 0
Add yourself

Nearest airports:
DALLAS LOVE FLD (DAL) --
Hotel near this airport
DALLAS FORT WORTH INT
km
Hotel near this airport

Distance, Dallas Landmarks

Event tickets

**Book the flight:**
Find Cheap Flights from 100+ S

20+ hotel reservation websites v

Camera on the city
5-day forecast
Photos



Map data ©2007 TeleAtlas - Terms of Use

## COORDINATES +
## TOTAL DISTANCE

|  |  |
|---|---|
| Wilmington, US | -75.5469<br>39.7458 |
| Dallas, US | -96.8000<br>32.7833 |
| **Miles:** | **1273.12** |
| **Kilometers:** | **2048.83** |
| Bearing: | **SW** |

Use this to get Google Earth.

""Ibiza"" .

**Wilmington, US**
Local Travel Friends: 0
Add yourself

Nearest airports:
NEW CASTLE (ILG) -- 9.03 km
Hotel near this airport
PHILADELPHIA INTL (PHL) -- 29.62 km
Hotel near this airport

Distance, Wilmington Landmarks

Camera on the city
5-day forecast
Photos

Ted's AccumulaTed
'Bearmiles': 38,399





**Dallas, US**
Local Travel Friends: 0
Add yourself

Nearest airports:
DALLAS LOVE FLD (DAL) --
Hotel near this airport
DALLAS FORT WORTH INT
km
Hotel near this airport

Distance, Dallas Landmarks

Event tickets

**Book the flight:**
Find Cheap Flights from 100+

20+ hotel reservation websites

Camera on the city
5-day forecast
Photos

Map data ©2007 TeleAtlas, Europa Technologies - Terms of Use

# Flight Duration



**My Account** | Contact us | About OAG | Affiliate | Frequent Flyer | OAG data | OAG cargo | Press Room

Home | Product Catalog | Travel Magazine | Book Hotel | Country Guides | City Guides | Airport & Airline Guides | Travel Info

English | 日本語 | 中文

🛒 **Shopping Cart: 0 items** ▸ View Cart            Search

📧 Email a Friend

## Flight Duration Results

The results of your search for Milwaukee, WI (MKE) to Dallas/Fort Worth, TX (DFW)

| Shortest Flight Duration | 2 hours 19 mins |
|---|---|

To view the flight schedules online go to OAGflights.com or browse the product catalog to see all our flight timetable products.

## New Search

From: **MKE**                    To: DFW

Departure date:   Jun   19   2007   📅▾          SUBMIT

📧 Email a Friend

^ Top of Page       © OAG Worldwide Limited 2007 All Rights Reserved        Site Map | Cookie Policy | Privacy Policy | Terms and Conditions



© OAG Worldwide Limited 2007 All Rights Reserved

# On-Time Arrival Performance

http://www.bts.gov/cgi-bin/breadcrumbs/PrintVersion.cgi?date=19120937

# Bureau of Transportation Statistics

# Table 4
# Ranking of Major Airport On-Time Arrival Performance Year-to-date through April 2007

(Percent On-Time)

Excel | CSV

| Rank | January 1 - April 30, 2006 | % | Rank | January 1 - April 30, 2007 | % |
|---|---|---|---|---|---|
| 1 | Cincinnati, OH (CVG) | 86.75 | 1 | Oakland, CA (OAK) | 80.60 |
| 2 | Baltimore, MD (BWI) | 82.73 | 2 | Baltimore, MD (BWI) | 78.75 |
| 3 | Orlando, FL (MCO) | 82.16 | 3 | Houston, TX (IAH) | 78.47 |
| 4 | St. Louis, MO (STL) | 81.86 | 4 | Salt Lake City, UT (SLC) | 78.41 |
| 5 | Detroit, MI (DTW) | 81.34 | 5 | San Diego, CA (SAN) | 78.33 |
| 6 | Fort Lauderdale, FL (FLL) | 81.14 | 6 | Atlanta, GA (ATL) | 77.82 |
| 7 | Minneapolis/St. Paul, MN (MSP) | 80.98 | 7 | Los Angeles, CA (LAX) | 77.05 |
| 8 | Washington, DC (DCA) | 80.85 | 8 | Chicago, IL (MDW) | 76.99 |
| 9 | Salt Lake City, UT (SLC) | 80.77 | 9 | Phoenix, AZ (PHX) | 76.72 |
| 10 | Tampa, FL (TPA) | 80.68 | 10 | Las Vegas, NV (LAS) | 76.65 |
| 11 | Charlotte, NC (CLT) | 80.65 | 11 | Portland, OR (PDX) | 76.15 |
| 12 | Phoenix, AZ (PHX) | 80.49 | 12 | Tampa, FL (TPA) | 75.20 |
| 13 | Chicago, IL (MDW) | 80.24 | 13 | St. Louis, MO (STL) | 75.03 |
| 14 | Miami, FL (MIA) | 79.87 | 14 | Orlando, FL (MCO) | 74.84 |
| 15 | Dallas/Ft.Worth, TX (DFW) | 79.36 | 15 | Cincinnati, OH (CVG) | 74.50 |
| 16 | Washington, DC (IAD) | 79.12 | 16 | Denver, CO (DEN) | 74.17 |
| 17 | Denver, CO (DEN) | 79.11 | 17 | Minneapolis/St. Paul, MN (MSP) | 73.24 |
| 18 | Houston, TX (IAH) | 77.71 | 18 | San Francisco, CA (SFO) | 72.80 |
| 19 | Portland, OR (PDX) | 77.02 | 19 | Dallas/Ft.Worth, TX (DFW) | 72.75 |
| 20 | San Diego, CA (SAN) | 76.55 | 20 | Seattle, WA (SEA) | 72.46 |
| 21 | Los Angeles, CA (LAX) | 76.45 | 21 | Miami, FL (MIA) | 71.58 |
| 22 | Boston, MA (BOS) | 75.91 | 22 | Washington, DC (IAD) | 70.90 |
| 23 | Oakland, CA (OAK) | 75.73 | 23 | Fort Lauderdale, FL (FLL) | 70.88 |
| 24 | Las Vegas, NV (LAS) | 75.46 | 24 | Detroit, MI (DTW) | 70.59 |
| 25 | Atlanta, GA (ATL) | 74.68 | 25 | Washington, DC (DCA) | 70.19 |
| 26 | Seattle, WA (SEA) | 74.52 | 26 | Boston, MA (BOS) | 67.91 |

Case 1:06-cv-00785-GMS    Document 88-2    Filed 06/20/2007    Page 45 of 45

| 27 | Philadelphia, PA (PHL) | 74.47 | 27 | Charlotte, NC (CLT) | 65.99 |
| 28 | New York, NY (JFK) | 73.98 | 28 | Philadelphia, PA (PHL) | 64.85 |
| 29 | Chicago, IL (ORD) | 71.12 | 29 | Chicago, IL (ORD) | 59.79 |
| 30 | New York, NY (LGA) | 67.42 | 30 | New York, NY (JFK) | 59.68 |
| 31 | San Francisco, CA (SFO) | 66.29 | 31 | New York, NY (LGA) | 58.10 |
| 32 | Newark, NJ (EWR) | 64.09 | 32 | Newark, NJ (EWR) | 55.04 |

SOURCE: Bureau of Transportation Statistics, Airline On-Time Data

Find this web page at:

http://www.bts.gov/programs/airline_information/airline_ontime_tables/2007_04/html/table_04.html

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on June 20, 2007, a true and correct copy of the

foregoing document was filed with the Clerk of the Court using CM/ECF which will send

notification that such filing is available for viewing and downloading to the following counsel of

record:

Thomas C. Grimm, Esq.
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801

Jeffrey Bove, Esq.
Dana K. Hammond, Esq.
CONNOLLY, BOVE, LODGE & HUTZ
1107 N. Orange Street
Wilmington, DE 19801

Donald J. Detweiler, Esq.
Titania R. Mack, Esq.
GREENBURG TRAURIG LLP
1007 N. Orange St., Ste. 1200
Wilmington, DE 19801

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. McGuire
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

David E. Moore, Esq.
POTTER ANDERSON & CORROON,
LLP
1313 N. Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801

I further certify that on June 20, 2007, I caused copies of the foregoing document to be

served by hand delivery on the above-listed counsel and on the following counsel of record as

indicated.

BY U.S. MAIL

Bradford Lyerla, Esq.
Jeffrey Dean, Esq.
Scott Sanderson, Esq.
MARSHALL GERSTEIN & BROUN LLP
233 S. Wacker Dr.
6300 Sears Tower
Chicago, IL 60606

Stephen Milbrath, Esq.
ALLEN DYER DOPPLET MILBRATH
& CHRIST, PA
255 S. Orange Avenue, Ste. 1401
Orlando, FL 32802

Holiday Banta, Esq.
WOODARD EMHARDT MORIARTY
MCNETT & HENRY LLP
111 Monument Circle, Ste. 3700
Indianapolis, IN 46204

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____*/s/ Adam W. Poff*_____
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*apoff@ycst.com*
Attorneys for STMicroelectronics, Inc.