# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **REMY, INC.,** | ) | |
| **UNIT PARTS COMPANY, and** | ) | |
| **WORLDWIDE AUTOMOTIVE, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **C.A. No. 06-785-***** |
| **v.** | ) | |
| | ) | |
| **CIF LICENSING, LLC, D/B/A GE LICENSING,** | ) | |
| **WELLS MANUFACTURING CORP.,** | ) | |
| **TADITEL US, INC., and** | ) | |
| **WETHERILL ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

| | |
|---|---|
| **WELLS MANUFACTURING CORP.,** | ) |
| | ) |
| **Counterclaimant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **REMY, INC.,** | ) |
| | ) |
| **Counterdefendant.** | ) |

| | |
|---|---|
| **WELLS MANUFACTURING CORP.,** | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **STMICROELECTRONICS, INC.,** | ) |
| | ) |
| **Third-Party Defendant.** | ) |

## WELLS MANUFACTURING CORP.'S ANSWERING BRIEF AGAINST THIRD-PARTY DEFENDANT STMICROELECTRONICS, INC.'S MOTION TO DISMISS OR STAY

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
317-634-3456

Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE &
HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
302-658-9141

*Attorneys for Defendant, Counterclaimant,
and Third-Party Plaintiff Wells
Manufacturing Corp.*

DATED:  July 5, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ............................................. 3

SUMMARY OF THE ARGUMENT ............................................................. 5

STATEMENT OF FACTS ............................................................................. 7

ARGUMENT .................................................................................................... 9

   I.    ST MUST INDEMNIFY WELLS FOR PATENT LIABILITY
      RESULTING FROM THE USE OF ST'S VOLTAGE
      REGULATORS ........................................................................................ 9

      A.   Legal Standard ........................................................................... 9

      B.   The Indemnification Clause Conveys Protection From Allegations of
         Infringement Against Those to Whom ST's Products Are Resold ...................... 9

      C.   The UCC Obligates ST to Indemnify Wells ................................................... 12

      D.   ST Breached Its Contract with Wells ........................................................... 13

   II.    THIS CASE SHOULD PROCEED IN FEDERAL COURT
      UNDER THE "EXCEPTIONAL CIRCUMSTANCES"
      DOCTRINE ........................................................................................... 14

      A.   Legal Standard ....................................................................................... 15

         1.   *The Six Factor Test Is Applied Only After the "Paramount" Factor Is
            Found:  Whether An Affirmative Federal Interest (Other Than Convenience)
            Favors Abstention* ............................................................................... 15

         2.   *The "Federal or State Law" Factor Weighs Against Abstention When Both
            Federal and State Law Are at Issue* ..................................................... 18

      B.   There Are No Exceptional Circumstances Justifying Abstention .............. 19

i

PDF created with pdfFactory trial version www.pdffactory.com

**C.   Even If the Requisite Exceptional Circumstances of an Affirmative Federal Policy Interest Favoring Litigation in State Court Existed, the Six Factor Test Weighs Heavily Against Abstention**.................................................. 20

**CONCLUSION** .......................................................................................... 23

PDF created with pdfFactory trial version www.pdffactory.com

# TABLE OF AUTHORITIES

## *Cases*

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ...............................................................*passim*

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................... 9

*County of Allegheny v. Frank Mashuda Co.*,
    360 U.S. 185 (1959) ...................................................................... 15

*D.P. Enters., Inc. v. Bucks County Community College*,
    725 F.2d 943 (3d Cir. 1984) ............................................................ 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...................................................................*passim*

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .......................................................... 9

*Ryan  v. Johnson*, 115 F.3d 193 (3d Cir. 1997) .............................................. 16, 17, 18

*Spring City Corp. v. Am. Bldgs. Co.*,
    193 F.3d 165 (3d Cir. 1999) ........................................................*passim*

*Trent v. Dial Med. of Florida, Inc.*,
    33 F.3d 217 (3d Cir. 1994) ................................................... 15, 17, 18

## *Other Authorities*

Fed. R. Civ. P. 10(c) .................................................................... 9

STMicroelectronics, Inc.,
    http://www.st.com/stonline/address/headquarters/index.htm ............................... 7

STMicroelectronics, Inc.,
    http://www.st.com/stonline/address/offices/amer_list.htm ................................... 7

STMicroelectronics, Inc.,
    http://www.st.com/stonline/address/distrib/usa.htm ............................................ 7

UCC 2-312 .....................................................................................11, 12

UCC 2-607 .................................................................................... 11

PDF created with pdfFactory trial version www.pdffactory.com

## PRELIMINARY STATEMENT

Third-Party Plaintiff Wells Manufacturing Corp.'s ("Wells") Complaint should be heard by this Court.  Wells's Complaint recites an explicit requirement in Wells's Terms and Conditions Governing Purchase Orders ("Wells's Purchase Order") that Third-Party Defendant STMicroelectronics ("ST") will, at ST's own expense, defend and indemnify Wells for suits for alleged infringement brought against "those using or selling [Wells's] products" when such alleged infringement occurs "by reason of the sale or use" of ST's products sold through Wells.  D.I. 24-1, ¶ 14.  In this case, "those" refers to Remy, Inc. ("Remy") since Wells purchased the specified voltage regulators from ST exclusively for resale to Remy.  ST developed its voltage regulator directly with Remy to satisfy Remy's specifications, and Remy specified the use of ST's voltage regulator to Wells when asking Wells to sell to Remy certain voltage regulator products.  The conditions precedent to Wells's bringing the instant claims under Wells's Purchase Order against ST are satisfied:  patent infringement is asserted against Remy, and the alleged infringement was the use of ST's voltage regulator.  Therefore, the facts before the Court in Wells's Complaint support Wells's claims for relief, ST's Motion to Dismiss or Stay ("Motion") should be denied, and the case should proceed in this forum.

Similarly, the conditions precedent to Wells's bringing the instant Uniform Commercial Code-based ("UCC") indemnification claims have been satisfied in that ST's products have been accused of infringement by GE Licensing, which accusation breaches ST's UCC-imposed warranty of non-infringement to Wells.  Again, therefore, ST's Motion should be denied and the case should proceed in this forum.

1

PDF created with pdfFactory trial version www.pdffactory.com

Wells's breach of contract claims should be permitted to proceed because, as stated above, ST is obligated to indemnify Wells, and its failure to do so pursuant to the terms of Wells's Purchase Order places it squarely in breach of that Purchase Order. Also, Wells has alleged, and therefore must be presumed for purposes of ST's Motion to be able to prove, that if Remy's voltage regulated alternators infringe U.S. Patent No. 4,733,159 (the "'159 Patent"), then ST's voltage regulators, a critical part of Remy's voltage regulated alternators, infringe the '159 Patent. ST's Motion must therefore be denied.

Finally, the Court should not abstain from hearing Wells's claims pursuant to the *Colorado River* doctrine. ST has made no showing of the required exceptional circumstances to support its application. Without such a showing, the Court may not abstain from hearing the case. When no showing of exceptional circumstances has been made, the Court need not even reach the six factor test enunciated in such cases as *Spring City*. Regardless, the six factors of the *Colorado River* test weigh heavily in favor of the Court denying ST's Motion and permitting Wells's Complaint to proceed before it.

PDF created with pdfFactory trial version www.pdffactory.com

## NATURE AND STAGE OF PROCEEDINGS

On October 17, 2006, Remy contacted ST to tip Remy's hand concerning its intention to file the present suit.  D.I. 38-2, p. 16 (p. 4 of ST's Complaint in the Texas State Action).  Thereafter, on November 1, 2006, well in advance of any actual controversy between Wells and either Remy or ST, ST took premature action on this tip in an attempt to secure state court jurisdiction in Texas by filing a declaratory judgment action against Wells, among others, in the State District Court of Dallas County, Texas (the "Texas State Action").  *Id.* at pp. 13-18.  ST included in its Texas State Action Complaint a one sentence request for initial disclosures pursuant to the Texas Rules of Civil Procedure, and that one sentence request comprises the sum total of discovery requested or obtained in the Texas State Action from any party as of the filing of ST's Motion.  *See id.* at p. 17 (Section VII., p. 4 of ST's Complaint in the Texas State Action) and pp. 23-33 (Wells's initial disclosure responses).  Wells generally denied ST's Complaint in the Texas State Action on December 4, 2006.  *Id.* at pp. 20-21.

Remy's decision to tip off ST followed the August 30, 2006, filing by Delaware Defendant GE Licensing against Remy's parent holding company, Remy International, Inc., among others, in the District Court for the Eastern District of Texas (the "Texas Federal Action") (*Id.* at pp. 2-11), asserting claims for patent infringement based on the '159 Patent.  Little has occurred in the Texas Federal Action since it was filed, because this case is currently awaiting decision on GE Licensing's motion to amend the complaint to substitute Remy as a party thereto in place of Remy's parent holding company.  Texas Federal Action, Docket Entry 44.

3

PDF created with pdfFactory trial version www.pdffactory.com

On December 21, 2006, Remy filed its Complaint in the present action (D.I. 1). On April 30, 2007, Wells answered in, counterclaimed in, and filed the instant third-party Complaint ("Wells's Complaint") (D.I. 24) in this action against ST asserting indemnification and duty to defend and breach of contract claims based on the claims made by GE Licensing (D.I. 25) against Remy in the instant action. All of Wells's claims in Wells's Complaint are intricately entwined with the present infringement dispute between GE Licensing and Remy and will require the resolution of federal patent infringement claims before any state or contract issues can be adequately addressed. ST moved to dismiss Wells's Complaint on June 20, 2007 in D.I. 37, and this is Wells's Answering Brief controverting that Motion.

PDF created with pdfFactory trial version www.pdffactory.com

## SUMMARY OF THE ARGUMENT

1.      Wells's Complaint should be heard by this Court.  Wells's Complaint recites an explicit requirement in Wells's Purchase Order that ST will, at ST's own expense, defend and indemnify Wells for suits for alleged infringement brought against "those using or selling [Wells's] products" when such alleged infringement occurs "by reason of the sale or use of any such" ST product.  D.I. 24-1, ¶ 14.  In this case, "those" refers to Remy since ST developed its voltage regulator directly with Remy to satisfy Remy's specifications, Remy specified the use of ST's voltage regulator to Wells when asking Wells to sell to Remy certain voltage regulator products, and Wells purchased the specified voltage regulators from ST exclusively for resale to Remy.  The conditions precedent to Wells's bringing the instant claims under Wells's Purchase Order against ST are satisfied:  Remy has been sued because it used an ST voltage regulator, which use is the basis for the patent infringement suit between Remy and GE Licensing.  Therefore, the facts before the Court in Wells's Complaint support Wells's claims for relief, ST's Motion should be denied, and the case should proceed in this forum.

2.      Similarly, the conditions precedent to Wells's bringing the instant UCC-based indemnification claims have been satisfied in that ST's products have been accused of infringement by GE Licensing, which accusation breaches ST's UCC-imposed warranty of non-infringement to Wells.  Again, therefore, ST's Motion should be denied and the case should proceed in this forum.

3.      Wells's breach of contract claims should be permitted to proceed because, as stated above, ST is obligated to indemnify Wells, and its failure to do so pursuant to the terms of Wells's Purchase Order places it squarely in breach of that Purchase Order.

PDF created with pdfFactory trial version www.pdffactory.com

As well, if Remy's voltage regulated alternators infringe the '159 Patent, then ST's voltage regulators, a critical part of Remy's voltage regulated alternators, infringe the '159 Patent. Wells's breach of contract claims factually support a viable claim, and ST's Motion must therefore be denied.

4.     The Court should not abstain from hearing Wells's claims pursuant to the *Colorado River* doctrine. ST has made no showing of the required exceptional circumstances to support its application. Without such a showing, the Court may not abstain from hearing the case. When no showing of exceptional circumstances has been made, the Court need not even reach the six factor test enunciated in such cases as *Spring City*.

5.     Regardless of whether exceptional circumstances may be found, the six factors of the *Colorado River* test weigh heavily in favor of the Court denying ST's Motion and permitting Wells's Complaint to proceed before it.

6

PDF created with pdfFactory trial version www.pdffactory.com

## STATEMENT OF FACTS

The following facts are drawn from Wells's Complaint, ST's Motion, the Texas State Action, and the supporting documentation filed therewith.  It is proper for the Court to consider such documents in the context of a motion to dismiss.  *See* D.I. 38, p. 12. These facts amplify and correct certain misstatements contained in ST's Motion.  *Id.* at pp. 7-11.

ST is a Delaware corporation.  D.I. 24, p. 11.  ST admits that it has one place of business in Texas.[1]  D.I. 38, p. 7.  Wells is a Wisconsin corporation with its headquarters and principal place of business in Fond Du Lac, Wisconsin.  D.I. 24, p. 11, ¶ 1.

On October 17, 2006, Remy contacted ST to tip Remy's hand concerning Remy's intention to file the present suit against the Defendants hereto and to claim indemnity therefrom.  D.I. 38-2, p. 16 (p. 4 of ST's Complaint in the Texas State Action). Thereafter, on November 1, 2006, well in advance of any actual controversy between Wells and either Remy or ST, ST took premature action on this tip from Remy in an attempt to secure state court jurisdiction in Texas, thereby prejudicing Wells, by filing the Texas State Action.  *See id.* at pp. 13-18.

ST included in its Texas State Action Complaint a one sentence request for initial disclosures pursuant to the Texas Rules of Civil Procedure.  *Id.* at p. 17 (Section VII., p. 4

---

[1] However, ST's worldwide headquarters is located in Geneva, Switzerland (*see* STMicroelectronics, Inc., http://www.st.com/stonline/address/headquarters/index.htm (last visited July 3, 2007)), it has U.S. sales offices in no fewer than 21 different states (*see* STMicroelectronics, Inc., http://www.st.com/stonline/address/offices/amer_list.htm (last visited July 3, 2007)), and it has distributors and sales representatives in 31 different states (*see* STMicroelectronics, Inc., http://www.st.com/stonline/address/distrib/usa.htm (last visited July 3, 2007)).  Such a range of offices and other commercial presences presumably permits ST to claim jurisdictional residence in over half of the states in the U.S.

7

PDF created with pdfFactory trial version www.pdffactory.com

of ST's Complaint in the Texas State Action). That one sentence request comprises the sum total of discovery requested or obtained in the Texas State Action from any party as of the filing of ST's Motion, despite the fact that the Texas State Action has been on file for almost 8 months. *See id.* at pp. 23-33 (Wells's initial disclosure responses).

ST and Remy cooperatively developed the voltage regulator at issue and the alternator employing the same long before Wells became involved. *See* D.I. 24, p. 11, ¶ 6. Before 2003, Delphi (the predecessor in interest to Remy) and ST worked together to develop a custom, all silicon voltage regulator ("ASVR") for Remy's next generation alternator. *Id.* On February 19, 2003, Remy issued a request for quotation on an ASVR-based product. The request for quotation was a request to add *specified* voltage protection circuitry to ST's voltage regulator, part number 19009756. *See id.* at ¶ 7. Wells offered a quote, and Remy awarded Wells the contract. *Id.*

Wells's Purchase Order demanded indemnification from ST for infringement that might be asserted against Remy. D.I. 24-1, ¶ 14. Since Wells was not involved in designing either the ASVR or the alternator product (nor in the business of selling infringement insurance), liability for potential patent infringement was to remain with the parties who chose the design. *See* D.I. 24, p. 11, ¶¶ 6-7. Wells therefore conditioned its purchase of the ASVR from ST upon a broad indemnification that covered both the voltage regulators themselves and their intended use by Remy. *See* D.I. 24-1, ¶ 14.

PDF created with pdfFactory trial version www.pdffactory.com

<h1 style="text-align:center">ARGUMENT</h1>

**I.   ST MUST INDEMNIFY WELLS FOR PATENT LIABILITY RESULTING FROM THE USE OF ST'S VOLTAGE REGULATORS**

**A.   Legal Standard**

A complaint may be dismissed for failure to state a claim upon which relief can be granted only if, accepting all of its allegations as true, the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984).  When reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates pursuant to Federal Rule of Civil Procedure 10(c).  *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *cf. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

**B.   The Indemnification Clause Conveys Protection From Allegations of Infringement Against Those to Whom ST's Products Are Resold**

ST's Motion is predicated on its assertion that its indemnification obligations under Wells's Purchase Order "are limited in scope to infringement claims against Wells."  ST's position is fatally flawed, because this assertion is false:

> Seller warrants that the articles described herein and the sale or use of them will not infringe any United States Patent, trademark and copyright: <u>the Seller covenants he will at Seller's own expense defend any suit which will be brought</u>

9

PDF created with pdfFactory trial version www.pdffactory.com

> against Buyer, their successor and assigns *or those using or selling Buyer's* *products* for any alleged infringement of any patent, trademark, and copyright by reason of the sale or use of any such article or material.  Seller agrees that he will pay all judgments and costs recovered in any suits *and will also reimburse Buyer* *for all expenses and losses incurred by Buyer as a result of said suit* or legal action.

D.I. 24-1, ¶ 14.  The underlining shows ST's emphasis; the language ST tries to ignore is in bold italics.  The indemnification clause explicitly requires ST to indemnify Wells for suits against "those using or selling Buyer's products," *i.e.*, Remy, since Wells purchased ST's voltage regulators exclusively for the purpose of resale to Remy.

Remy uses the voltage regulators ST sells to Wells to make alternators.  D.I. 24, p. 11, ¶ 5.  That use is the basis for the patent infringement dispute between Remy and GE Licensing.  D.I. 25, p. 3, ¶¶ 4-5.  This is precisely the situation anticipated by the indemnification clause.

ST tries to dismiss this fact in a footnote by simply declaring that "that portion of the provision is not in effect here."  *See* D.I. 38, n. 4 and pp. 15-16.  According to ST, that portion of the clause is only triggered if *Remy* invokes it.  *Id.*  Nothing in this clause indicates that the clause either has or was intended to have such a loophole.

The indemnification clause covers "*any* suit" which is: (1) against Wells *or* a party using ST's voltage regulators purchased from Wells; and (2) arises out of ("by reason of") an allegedly infringing sale *or use* of ST's voltage regulators.  D.I. 24-1, ¶ 14.  ST must "reimburse [Wells] for all expenses and losses incurred by [Wells] as a result of said suit."  *Id.*  "All expenses and losses incurred by Wells" is plainly broad enough to cover indemnity liability.

This much is clear from the plain language of Wells's Purchase Order.  However, in view of the facts relating to the three-way relationship between Remy, ST, and Wells,

PDF created with pdfFactory trial version www.pdffactory.com

it is clear that this is precisely the way this indemnification clause was intended to operate. Even in a more typical situation, the UCC imposes a warranty of non-infringement (UCC 2-312) and a duty to indemnify (UCC 2-607). In the instant case, it was even more reasonable and understandable that Wells would protect itself from liability resulting from an infringement action involving Remy.

ST and Remy cooperatively developed the voltage regulator at issue and the alternator employing the same long before Wells became involved. *See* D.I. 24, p. 11, ¶ 6. Before 2003, Delphi (the predecessor in interest to Remy) and ST worked together to develop a custom ASVR for Remy's next generation alternator. *Id.* On February 19, 2003, Remy issued a request for quotation on an ASVR-based product. The request for quotation was a request to add *specified* voltage protection circuitry to ST's voltage regulator, part number 19009756. *See id.* at ¶ 7. Wells offered a quote, and Remy awarded Wells the contract. *Id.*

Because of the pre-existing relationship between Remy and ST relating to the design of the ASVRs and alternators, it was a prudent business decision for Wells to demand indemnification from ST for infringement that might be asserted against Remy. *See* D.I. 24-1, ¶ 14. Since Wells was not involved in designing either the ASVR or the alternator product (nor in the business of selling infringement insurance), liability for potential patent infringement was to remain with the parties who chose the design. *See* D.I. 24, p. 11, ¶¶ 6-7. Wells therefore conditioned its purchase of the ASVR from ST upon a broad indemnification that covered both the voltage regulators themselves and their intended use by Remy. *See* D.I. 24-1, ¶ 14.

PDF created with pdfFactory trial version www.pdffactory.com

The circumstances surrounding Wells's Purchase Order therefore demonstrate that the indemnification clause was intended by the parties to operate exactly as its language dictates. ST was to indemnify Wells for any damages Wells might suffer as the result of an infringement suit against either Wells or Remy, including, in particular, damages resulting if Wells were found to be obligated to indemnify Remy.

This set of facts which entitle Wells to relief will be proven by Wells and must, for the purposes of ST's Motion, be assumed to be correct. Therefore, ST has failed to satisfy the dismissal standard, and Wells respectfully requests that the Court permit the matter to proceed.

### C.     The UCC Obligates ST to Indemnify Wells

The UCC (UCC 2-312) imposes an implied warranty of non-infringement when a merchant like ST sells a product unless that product is designed to the purchaser's specification. Wells purchased the voltage regulator from ST without specifying anything other than its product number. Thus, even without Wells's Purchase Order, ST is obliged under the UCC to indemnify Wells for harm caused because ST's voltage regulators infringe a patent.

Neither Remy nor GE Licensing have accused ST's voltage regulators of infringing the '159 Patent in their own right. However, were GE Licensing to establish that Remy's alternators infringe the '159 Patent, such infringement would not be the result of the protective circuitry added by Wells. Rather, it would be because ST's voltage regulators directly infringe the broadest claims of the '159 Patent (which are drawn to voltage regulators), because they contributorily infringe, and because ST induces Remy to infringe the claims. If Wells is held liable for reselling to Remy an

PDF created with pdfFactory trial version www.pdffactory.com

infringing product, then it is entitled to prove that ST caused Wells that harm by selling Wells infringing voltage regulators. For the purpose of ST's Motion, it must be presumed that Wells can do so; on this basis, the case should proceed before the Court.

**D.     ST Breached Its Contract with Wells**

ST's attempt to dismiss Wells's claims for breach of contract should also be rejected. As ST correctly points out, the first breach of contract claim rises or falls with Wells's indemnification claim. ST contends that it has no contractual obligation to indemnify Wells. However, if ST does have such an obligation, then it is liable to Wells both for the indemnification and for breaching the contract to do so. Thus, for at least the reasons set out in Section I.B. above, Wells's Complaint should not be dismissed. This claim is important to retain because, although liability is coextensive under the indemnification claim and this breach of contract claim, the potential measure of damages is not.

ST's ground for dismissing the second and third breach of contract claims again relies upon the false premise that liability can only follow if GE Licensing's infringement claim against Remy specifically notes that the infringement is caused by ST's voltage regulators. D.I. 38, pp. 17-19. Leaving aside the limitations of notice pleading and the fact that GE Licensing's claims specifically recite "alternators containing voltage regulator units" (D.I. 25, p. 3, ¶ 4), this is simply not what the contract says.

Reviewing the clause again, it is clear that the infringement contemplated by the warranty is that imposed for the sale or *use* of ST's voltage regulators:

> Seller warrants that the <u>articles described herein **and the sale or use of them**</u> will not infringe any United States Patent, trademark and copyright: the Seller covenants he will at Seller's own expense defend any suit which will be brought

13

PDF created with pdfFactory trial version www.pdffactory.com

against Buyer, their successor and assigns or those using or selling Buyer's products for any alleged infringement of any patent, trademark, and copyright *by reason of the sale or use of any such article or material*.  Seller agrees that he will pay all judgments and costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

D.I. 24-1, ¶ 14.  The underlining shows ST's emphasis; the language ST tries to ignore is in bold italics.  Recall that Wells was not involved in designing either the ASVR or the alternator product.  *See* D.I. 24, p. 11, ¶¶ 6-7.  In this situation, it makes perfect sense that the potential patent infringement liability would remain with the parties who chose the design.  This clause therefore imposes a broad indemnification duty on ST that covers both the voltage regulators themselves and their intended use by Remy.

    This clause establishes ST's liability if Remy's use of an ST voltage regulator is alleged to infringe a patent.  Such an infringement allegation has been made by GE Licensing, and for at least these reasons, ST's Motion must be denied.

II.    **THIS CASE SHOULD PROCEED IN FEDERAL COURT UNDER THE "EXCEPTIONAL CIRCUMSTANCES" DOCTRINE**

    For at least the reasons stated above, Wells has articulated viable claims for relief that should proceed immediately in this Court.  The Court need not consider abstention, because, as discussed *infra*, ST has not made a "showing of the requisite exceptional circumstances" to justify consideration of abstention.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

PDF created with pdfFactory trial version www.pdffactory.com

A.      **Legal Standard**

1.      *The Six Factor Test Is Applied Only After the "Paramount" Factor Is Found:  Whether An Affirmative Federal Interest (Other Than Convenience) Favors Abstention*

The abstention doctrine articulated in *Colorado River* is very narrow.  According to the Supreme Court that articulated the doctrine:

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959))

Likewise in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, the Supreme Court held that it was an abuse of discretion for a district court to abstain except upon a "showing of the requisite exceptional circumstances."  *Moses H. Cone*, 460 U.S. at 19.  This doctrine is therefore known as the "exceptional circumstances doctrine."  *See, e.g.*, *Trent v. Dial Med. of Florida, Inc.*, 33 F.3d 217, 222 (3d Cir. 1994).

Because the abstention issue in the instant case arises in the context of a patent infringement dispute, and because it is, at least arguably, not merely a procedural issue, the Federal Circuit might well apply its own standard for deciding whether the doctrine applies.  However, as the Third Circuit notes, the circumstances under which the doctrine might be applied are extremely rare, and it does not appear that the Federal Circuit has addressed the issue yet.  The Third Circuit, on the other hand, has addressed the issue in a number of cases, and its standard is a well considered one.  Even in the event that the

15

PDF created with pdfFactory trial version www.pdffactory.com

Federal Circuit holds that its own standard should apply in the context of patent infringement suits, it is likely to apply a standard similar, if not identical, to the Third Circuit standard.

ST's supporting brief (D.I. 38) sets out on pages 20 and 21 a six factor test that it uses to argue why the Court should abstain.  Factor 3 set forth in ST's brief is inaccurate as written, since the actual factor enunciated by the Third Circuit in *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 198 (3d Cir. 1999) is whether there exists "a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review."  *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 198 (3d Cir. 1999) (emphasis in original).  With that change, the test set forth in ST's brief accurately reflects a test employed by district courts in the Third Circuit.[2]

However, ST's brief fails to explain the skeptical scrutiny with which the Third Circuit Court of Appeals reviews the application of that test.  In *Spring City*, the Third Circuit reversed the district court's decision to abstain.  *Id.* at 165.  The Third Circuit reversed despite the district court's findings that three of the factors weighed heavily in favor of abstention and that the other three were irrelevant.  *Id.* at 171.

The Third Circuit in *Spring City* agreed with the district court that abstention would have been more efficient, but the Third Circuit nonetheless held that "*Colorado River* abstention must be grounded on more than just the interest in avoiding duplicative litigation."  *Id.* at 171-72.  Citing *Ryan v. Johnson*, 115 F.3d 193, 197 (3d Cir. 1997), and *Moses H. Cone*, the Third Circuit noted that its previous holding in *Ryan* held that "a stay

---

[2] ST's analysis, however, substitutes a new factor for the third one articulated by the Supreme Court.  As discussed in detail *infra* in Section II.C., four factors were set out in *Colorado River*; the other two were mentioned in *Moses H. Cone*, 460 U.S. at 23, 26.

PDF created with pdfFactory trial version www.pdffactory.com

is appropriate only when there is a 'strong federal policy against [such] litigation.'" *Id.* at 172 (brackets in original) (quoting *Ryan v. Johnson*, 115 F.3d 193, 197 (3d Cir. 1997)).

The Third Circuit continued:

> In *Ryan*, however, we recognized that *Trent*, by focusing principally on the avoidance of piecemeal litigation, was inconsistent with our earlier decisions and the Supreme Court's emphasis in *Colorado River* and *Moses H. Cone* that a "strongly articulated congressional policy against piecemeal litigation" is required to justify a stay. *Ryan*, 115 F.3d at 198. We were concerned that were we to follow what appears to be *Trent*'s emphasis on "piecemeal litigation," we would "swallow[ ] up the century-old principle . . . that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."
>
> * * *
>
> We agree and hold that *Ryan* represents the applicable law under Third Circuit and Supreme Court precedent.

*Id.* at 172.

Abstention in the *Colorado River* case was appropriate because of the decision by Congress to enact the McCarran Amendment, which Amendment specifically waived sovereign immunity to permit the United States to be joined as a defendant in state water rights actions. The existence of this Congressional Act specifically stating that actions of the type at issue in *Colorado River* were to be heard in state court instead of federal court satisfied the "'paramount'-factor justifying abstention." *Ryan*, 115 F.3d at 197.

In *Moses H. Cone* and *Spring City*, as in the instant case before the Court, no such federal policy interest was articulated, and abstention was denied. *Moses H. Cone*, 460 U.S. at 1; *Spring City*, 193 F.3d at 165. This Court should therefore follow the applicable Third Circuit and Supreme Court precedent and decline to exercise abstention in this case.

17

PDF created with pdfFactory trial version www.pdffactory.com

Indeed, the *Colorado River* case may be so narrow that it is simply *sui generis*. Aside from *Colorado River* itself, there appears to be only one Third Circuit case (*Trent*) in which abstention was ultimately upheld, and the Third Circuit repudiated its holding in *Trent* in *Ryan*. *Ryan*, 115 F.3d at 198-99 (stating that the court "cannot reconcile *Trent* with either the caselaw of this circuit, or *Colorado River* and *Cone*" and declining to apply *Trent* to decide the abstention issue before it).

Only in the exceptional case when Congress has expressly confirmed that an issue should be litigated in state courts rather than federal courts can there be sufficient justification for a federal court to abstain in favor of state litigation. The instant case is not such an exceptional case, there is no affirmative federal policy present to support a decision to abstain, and the Court must therefore decline to abstain from hearing Wells's claims against ST.

> 2. *The "Federal or State Law" Factor Weighs Against Abstention When Both Federal and State Law Are at Issue*

"Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26 (internal citations omitted). Additionally, even if a case arises entirely under state law (which is not the case here as discussed in Section II.C. *infra*), abstention cannot be justified on that basis alone. *Ryan*, 115 F.3d at 199. "[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Spring City*, 193 F.3d at 173 (quoting *Colorado River*, 424 U.S. at 817).

18

**B.**      **There Are No Exceptional Circumstances Justifying Abstention**

There is no federal policy interest that would be served by abstaining in this case, nor are there any other exceptional circumstances that might justify a decision to abstain. The Court need not even reach the six factor test.

In fact, federal policy weighs strongly against abstaining in this dispute because this dispute involves federal patent issues. The creation of the Federal Circuit Court of Appeals, which was done in large part to promote the federal policy interest in uniform application of patents throughout the nation, demonstrates a powerful federal interest against abstention when patent issues are involved. Wells's claims against ST are based on allegations that ST sold Wells voltage regulators that infringe, contribute to infringement of, and/or induce infringement by Remy of the '159 Patent, at least because the intended and actual use of ST's voltage regulators to make Remy's alternators infringes, contributes to infringement of, and/or induces infringement by Remy of the '159 Patent. Thus, questions of federal patent law are inextricably intertwined with this dispute, and it must be heard by a federal court.

The fact that some state law issues are also involved, such as the contract interpretation dispute between Wells and ST, does not undermine this conclusion. The threshold requirement for abstention is the existence of a federal policy interest that would be served by abstention. This case implicates no such federal policy interest. Nonetheless, even if the Court finds some such federal policy interest to be applicable to this case, "whether federal or state law controls" is merely one factor in six that might weigh in favor of abstention. The Supreme Court also cautions that, when weighing this

PDF created with pdfFactory trial version www.pdffactory.com

single factor, "the presence of federal-law issues must always be a major consideration weighing against surrender."  *Moses H. Cone*, 460 U.S. at 26 (internal citations omitted).

      **C.**     **Even If the Requisite Exceptional Circumstances of an Affirmative Federal Policy Interest Favoring Litigation in State Court Existed, the Six Factor Test Weighs Heavily Against Abstention**

ST incorrectly applies the six factors to be considered to the facts of this case.  As well, ST goes so far as to substitute a factor that it would prefer the Court consider instead of the third one that the Supreme Court indicated should be considered, namely, the desirability of avoiding piecemeal litigation.  This factor dominates the analysis in this case because it weighs heavily against abstention and causes several other factors to weigh heavily against abstention as well.

Because the relationship between Wells and ST is just a part of the larger web of relations between Remy, Wells, ST, and the patentee, GE Licensing, it makes sense to have all the relevant parties before one court and to have the dispute between Wells and ST resolved in such a consolidated action.  There will inevitably be an enormous amount of overlap between the issues, since the same operative facts will establish the potential liability of the various parties to one another under the various legal claims asserted.  It makes no sense for Wells and ST to have to duplicate discovery relating to these facts in a second suit.  It also makes no sense for Wells and ST to have to use the third-party discovery rules to obtain discovery from the other parties to this action (which would occur if Wells's Complaint were dismissed in favor of the Texas State Action).

It is precisely because of this close overlap of the issues that it was this Court, not the Texas state court, which first assumed jurisdiction over this dispute when Remy filed its declaratory judgment action.  Remy's declaratory judgment action and GE's

PDF created with pdfFactory trial version www.pdffactory.com

subsequent counterclaim set forth the condition precedent for all of the claims amongst these four parties:  whether the '159 Patent is infringed.  If Remy is found not to have infringed the '159 Patent, then that decision may dispose of the dispute between Wells and ST.  If that infringement decision were reached prior to the resolution of the Texas State Action, then it could act as res judicata in the Texas court.  Thus, this Court first assumed jurisdiction over this dispute,[3] and the first and fourth factors (which are substantially the same in this context) weigh against abstention.

  This close overlap of issues between the parties also makes it far more convenient and efficient to resolve the dispute between ST and Wells as part of the larger suit between all of the parties.  Separate suits would inevitably lead to duplicative and unnecessary discovery responses.  Even accepting all of ST's assertions regarding flight times and on-time arrival percentages, such considerations are dwarfed by the efficiency of having a single case management plan to coordinate all discovery by the parties.  The cost of one unnecessary, duplicative deposition would exceed the cost of a delayed flight by an order of magnitude or more.

  Notably concerning this convenience factor, ST is a Delaware corporation.  D.I. 24, p. 11.  As such, ST has availed itself of the Delaware court system and expects to be sued in Delaware.  ST's charts and graphs concerning travel times cannot be accorded any weight when ST has chosen to avail itself of the benefits of a Delaware corporate residence.

---

[3] Because ST filed its declaratory judgment action in Texas state court *before* Remy filed the instant action, ST's declaratory judgment action was plainly not ripe until this action had been filed.  The existence of this action alone was the grounds for ST's reasonable apprehension (assuming it had one) that Wells would sue for indemnification.  The Texas

PDF created with pdfFactory trial version www.pdffactory.com

The fifth factor, whether federal or state law controls, weighs against abstention. According to the Supreme Court, "the presence of federal law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. Issues of federal patent law are intimately bound up in this dispute; therefore this factor weighs heavily against abstention. This is so despite the fact that this case also involves state law issues. Indeed, state law issues are routinely resolved by federal courts under pendent jurisdiction. However, the converse is not true: state courts do not decide federal law issues simply because there are also state law issues involved.

For at least this reason, the sixth factor also weighs against abstention. Since Wells's indemnification and warranty of non-infringement claims against ST are contingent upon the Court's determination of whether the '159 Patent was infringed and since state law courts do not resolve patent infringement disputes, it is highly doubtful that any state court would be able to resolve adequately all of the issues presented by Wells's Complaint.

In short, aside from the fact that a flight from Milwaukee to Dallas may take half an hour less than a flight from Dallas to Philadelphia and may be on time 8% more often, there is no reason to prefer the Texas court over this Court to resolve this dispute. Such concerns are vanishingly small compared to the interest in avoiding piecemeal litigation that would be served by keeping this case before this Court. Apparently, even ST

---

Federal Action was not sufficient to make ST's claims in the Texas State Action ripe, because it did not name Remy as a party. D.I. 38-2, pp. 2-11.

PDF created with pdfFactory trial version www.pdffactory.com

recognizes as much, since it chose to replace this factor in its analysis with another: the danger of inconsistent results.[4]

## CONCLUSION

Wells's claims for indemnification, both contractual and UCC-based, and breach of contract state claims for which relief can be granted. Wells's Purchase Order's indemnification clause is a broad one that was written to ensure that Wells was not insuring Remy and ST against patent infringement for the voltage regulators and alternators they, not Wells, designed. Wells's Purchase Order therefore obligates ST to indemnify Wells both for suits directly against Wells and for suits against Remy based on the intended use of ST's voltage regulators.

It is totally inappropriate to apply the *Colorado River* doctrine in this case. There is no federal policy interest relevant to this case that favors resolution of this case in state court rather than federal court. The opposite is true, since there is a strong federal policy interest in having federal patent matters litigated in federal court. Furthermore, even if there were a federal policy interest in having cases like the instant one resolved outside of federal court, abstention in this case is still inappropriate because the prudential considerations in the six factor test weigh heavily against it.

---

[4] *See* D.I. 38, p. 24, heading 3 ("Conflicting Results"). ST's analysis of even this new, seventh factor is mistaken. Of course, since cases must be "parallel" before a court may even consider abstention, the same potential for inconsistent results would always be present in any *Colorado River* analysis. However, as the Third Circuit noted in *Spring City*, such danger is illusory. It is the "general rule" that parallel cases can proceed in state and federal courts, and, once a decision is reached in one, it may create a res judicata effect in the other. *Spring City*, 193 F.3d at 172. The Third Circuit specifically commented that the *Colorado River* doctrine must not swallow this rule. *Id.*

PDF created with pdfFactory trial version www.pdffactory.com

There is no good reason to create multiple suits in multiple jurisdictions from the single set of operative facts presently before this Court. The Court should therefore deny ST's Motion in its entirety and permit Wells's claims to proceed in federal court.

Respectfully submitted,

By:  /s/ Jeffrey B. Bove_____

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
317-634-3456

Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE &
HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
302-658-9141

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wells Manufacturing Corp.*

DATED:  July 5, 2007

24

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July, 2007, I electronically filed the

foregoing WELLS MANUFACTURING CORP.'S ANSWERING BRIEF AGAINST

THIRD-PARTY DEFENDANT STMICROELECTRONICS, INC.'S MOTION TO

DISMISS OR STAY with the Clerk of the Court using CM/ECF to be served upon the

below listed in the manner indicated:

**Via Hand Delivery**
Donald J. Detweiler
Titania R. Mack
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
districtcourtdel@gtlaw.com

**Via Hand Delivery**
Steven J. Balick
ASHBY & GEDDES
500 Delaware Avenue, 8th
Floor Wilmington, DE
19801

**Via Hand Delivery**
Thomas C. Grimm
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tcgefiling@mnat.com

Respectfully submitted,

By:  /s/ Jeffrey B. Bove
        Jeffrey B. Bove, Esquire (#998)
OF COUNSEL:                     Dana K. Hammond (#4869)
Holiday W. Banta                CONNOLLY BOVE LODGE &
WOODARD, EMHARDT,               HUTZ, LLP
MORIARTY, MCNETT & HENRY LLP    1007 North Orange Street
111 Monument Circle, Suite 3700 P.O. Box 2207
Indianapolis, IN 46204-5137     Wilmington, DE 19899
317-634-3456                     302-658-9141

*Attorneys for Defendant, Counterclaimant,*
*and Third-Party Plaintiff Wells*
*Manufacturing Corp.*

DATED: July 5, 2007
550943

PDF created with pdfFactory trial version www.pdffactory.com