IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REMY, INC., UNIT PARTS COMPANY, and WORLDWIDE AUTOMOTIVE, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-785-*** |
| v. | ) ) ) | |
| CIF LICENSING, LLC, D/B/A GE LICENSING, WELLS MANUFACTURING CORP., TADITEL US, INC., and WETHERILL ASSOCIATES, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| WELLS MANUFACTURING CORP., | ) ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| REMY, INC., | ) ) ) | |
| Counterdefendant. | ) ) | |
| WELLS MANUFACTURING CORP., | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| STMICROELECTRONICS, INC., | ) ) ) | |
| Third-Party Defendant. | ) ) | |

**STMICROELECTRONICS, INC.'S REPLY BRIEF IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS OR STAY**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Third-Party Defendant,*
*STMicroelectronics, Inc.*

Dated: July 12, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT

I.      MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) .......................... 3

      A.      Wells Cannot, As A Matter Of Law, Establish
              Either Of The Two Conditions Precedent
              Necessary To Trigger STMicroelectronics'
              Indemnity Obligations ........................................................... 3

              1.      There Is No Infringement Claim Against Wells .................... 3

              2.      STMicroelectronics' Product Is Not
                      Accused Of Infringement ........................................................ 5

              3.      Wells' Recitation Of Extrinsic Evidence
                      Has No Place In The Court's Analysis ................................... 6

              4.      The UCC Does Not Apply In The Present
                      Circumstances, And Even If It Did,
                      The Result Would Be The Same ............................................ 6

      B.      Wells Cannot, As A Matter Of Law, Establish
               The Conditions Precedent Necessary For A
               Finding Of Breach .................................................................. 7

II.     MOTION TO DISMISS OR STAY PURSUANT TO
      THE *COLORADO RIVER* ABSTENTION DOCTRINE .............................. 8

      A.      The Parties' Disputes Are Scheduled To Be
               Tried In Texas Beginning On October 22, 2007 ................... 8

      B.      This Court Cannot Prevent The Texas State Action
               From Proceeding ..................................................................... 9

      C.      Wells Does Not Dispute That The Actions
               Are Parallel ............................................................................ 9

      D.      Wells Should Not Be Permitted To Create
               A "Seventh" *Colorado River* Factor ................................... 10

DB02:6104808.1                065770.1001

E.     The Six-Factor Test Weighs Heavily In
Favor Of Abstention .......................................................................13

      1.     The Texas Court First Assumed
Jurisdiction...........................................................................13

      2.     The Texas State Forum Is More
Convenient As A Whole .........................................................14

      3.     Piecemeal Litigation Or Worse – Conflicting
Results – May Result From A Decision Not
To Abstain............................................................................15

      4.     The Fourth Factor Overlaps The First
Factor In The Present Circumstances
And So It Weighs In Favor Of Abstention ...........................18

      5.     State Law Controls This Dispute ...........................................18

      6.     The Texas State Court Can More Than
Adequately Protect The Interests Of The
Parties..................................................................................18

E.     Dismissal Is The More Appropriate Remedy ...................................19

CONCLUSION.......................................................................................................20

ii

# TABLE OF AUTHORITIES

Page

## Cases

*Acierno v. Haggerty,*
No. 04-1376 (KAJ), 2005 U.S. Dist. LEXIS 30353
(D. Del. Nov. 23, 2005) ........................................................................................13, 17

*Beghin-Say Int'l v. Ole-Bendt Rasmussen,*
733 F.2d 1568 (Fed. Cir. 1984) ..................................................................................12

*Bentley v. Palmer House Co.,*
332 F.2d 107 (7th Cir. 1964) .......................................................................................4

*BIL Mgmt. Corp. v. New Jersey Econ. Dev. Auth.,*
No. 06-0588 (NLH) , 2006 U.S. Dist. LEXIS 92087
(D.N.J. December 8, 2006)...........................................................................................17

*Cerelli v. Cooper,*
No. 03-3241, 2004 U.S. Dist. LEXIS 786
(E.D. Pa. January 15, 2004)........................................................................................17

*Chiampi v. Bally's Park Place, Inc.,*
No. 05-3395 (JEI), 2007 U.S. Dist. LEXIS 9010
(D.N.J. Feb. 7, 2007) ..................................................................................................17

*Christianson v. Colt Indus. Operating Corp.,*
486 U.S. 800 (1988).....................................................................................................11

*Coditron Corp. v. AFA Protective Sys., Inc.,*
392 F. Supp. 158 (S.D.N.Y. 1975) .............................................................................12

*Dahl v. United Technologies Corp.,*
632 F.2d 1027 (3d Cir. 1980) .....................................................................................15

*Golden Trade, S.r.L. v. Jordache,*
143 F.R.D. 504 (S.D.N.Y. 1992) ..................................................................................7

*Holland Transp., Inc. v. Twp. of Upper Chichester,*
No. 00-397, 2002 U.S. Dist. LEXIS 23420
(E.D. Pa. Oct. 23, 2002)..............................................................................................17

*Ideal Lease Serv. v. Amoco Prod. Co.,*
662 S.W.2d 951 (Tex. 1983)......................................................................................4, 6

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC,*
438 F.3d 298 (3d Cir. 2006) .......................................................................................16

*Ingersoll-Rand Fin. Corp. v. Callison,*
844 F.2d 133 (3d Cir. 1988) .......................................................................................15

*Intermedics Infusaid, Inc. v. Regents of University of Minnesota,*
804 F.2d 129 (Fed. Cir. 1986) ................................................................................9, 11

*Jacobson v. Bittner,*
694 F. Supp. 507 (N.D. Ill. 1988) ..............................................................................12

iii

*Johnson Electric North America, Inc. v.*
    *Johnson Electric Industrial Manufactory, Ltd.,*
    98 F. Supp. 2d 480 (S.D.N.Y. 2000) ............................................................7

*King v. Jockeys' Guild, Inc.,*
    No. 04-5712 (JBS), 2005 U.S. Dist. LEXIS 15621
    (D.N.J. July 26, 2005)................................................................................17

*Kleinerman v. Snitzer,*
    754 F. Supp. 1 (D. Mass. 1990) ................................................................12

*Kuhn v. Oehme Carrier Corp.,*
    255 F. Supp. 2d 458 (E.D. Pa. 2003) ........................................................17

*Laboon v. Goldberg,*
    No. 06-1429, 2007 U.S. Dist. LEXIS 11803
    (W.D. Pa. Feb. 16, 2007) ..........................................................................17

*LaDuke v. Burlington N. R. Co.,*
    879 F.2d 1556 (7th Cir. 1989) ..................................................................14

*MAS Corp. v. Thompson,*
    302 S.E.2d 271 (N.C. Ct. App. 1983).........................................................7

*McArdle v. Bornhofft,*
    980 F. Supp. 68 (D. Me. 1997) ..................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983).......................................................................................10

*Nat'l Fire Ins. Co. v. Universal Janitorial Supply Corp.,*
    No. 05-5945 (AET), 2006 U.S. Dist. LEXIS 17211
    (D.N.J. April 6, 2006) ...............................................................................17

*One Up, Inc. v. Webcraft Technologies, Inc.,*
    No. 87 C 3041, 1989 U.S. Dist. LEXIS 11313
    (N.D. Ill. 1989) .....................................................................................9, 15

*Park-Ohio Industries, Inc. v. Tucker Induction Systems, Ltd.,*
    1987 U.S. Dist. LEXIS 15642
    (E.D. Mich. Oct. 21, 1997) .........................................................................7

*Ryan v. Johnson,*
    115 F.3d 193 (3d Cir. 1997) ......................................................................17

*Rycoline Prods. v. C&W Unlimited,*
    109 F.3d 883 (3d Cir. 1997) ......................................................................16

*Sanitec Indus. v. Sanitec Worldwide,*
    No. 04-1386 JJF, 376 F. Supp. 2d 575 (D. Del. 2005) ..............................17

*Speedco, Inc. v. Estes,*
    853 F.2d 909 (Fed. Cir. 1988) ...................................................................11

*Spring City Corp. v. Am. Bldgs. Co.,*
    193 F.3d 165 (3d Cir. 1999) ................................................................16, 17

DB02:6104808.1

065770.1001

*Summa Four, Inc. v. AT&T Wireless*,
    994 F. Supp. 575 (D. Del. 1998)......................................................................................9

*Trent v. Dial Medical of Florida, Inc.*,
    33 F.3d 217 (3d Cir. 1994) ................................................................................16, 17

*Wells Fargo Home Mortg., Inc. v. Sec. Title Guar. Corp.*,
    337 F. Supp. 2d 680 (E.D. Pa. 2004) ..........................................................................17

*Yang v. Tsui*,
    416 F.3d 199 (3d Cir. 2005) ..........................................................................................9

## Statutes

28 *U.S.C.* § 2283 (1982 & Supp. II 1984) ........................................................................9

Uniform Commercial Code § 2-312(3)..........................................................................6, 7

## Rules

Federal Rule of Civil Procedure 12(b)(6) ......................................................................2, 3

Third Circuit Internal Operating Procedures, Rule 9.1 ....................................................16

## Other Authorities

17A James Wm. Moore, *Moore's Federal Practice*,
    § 122.06 (3d ed. 2007) ................................................................................................10

DB02:6104808.1                                                                                                065770.1001

## PRELIMINARY STATEMENT

The key passage in the Answering Brief,[1] as it relates to Wells' indemnification and breach of contract claims against STMicroelectronics, is the following concession: "Neither Remy nor GE Licensing has accused [STMicroelectronics'] voltage regulators of infringement in their own right."[2] As explained by STMicroelectronics in its Opening Brief[3] and again below, unless and until there is an infringement claim against a specific STMicroelectronics product, there can be no indemnification (or breach of contract) under the indemnity provision of the Wells Purchase Order.[4] It is that simple.

Moreover, even if a specific STMicroelectronics product were accused of infringement (and Wells freely concedes that no such accusation has been made), that claim would need to have been asserted directly against Wells in order for the indemnity provision of the Wells Purchase Order to apply for Wells' benefit under the clear and ambiguous terms of the Order. There is no such claim against Wells. The only claims against Wells are Remy's <u>indemnification</u> claims, and those claims do not trigger STMicroelectronics' indemnity obligations.

In asserting otherwise, Wells relies on what it wishes the indemnity provision said (as opposed to what it actually says) and the reasons that it would have been justified in imposing a more complete provision had it done so, much of which is not alleged in the Third-Party Complaint (and thus cannot be relied upon here) and none of which is relevant to the Court's analysis of STMicroelectronics' motion. The issue here is the plain language of the indemnity provision, as

---

[1]     Cited herein as "AB _"

[2]     All defined terms referenced herein have the same meaning ascribed to them in the Opening Brief.

[3]     Cited herein as "OB _"

[4]     STMicroelectronics assumes for purposes of this Motion only, as it must, that the allegations of the Third-Part Complaint are true and correct and that the Wells Purchase Order governs the parties' business relationship.

drafted unilaterally by Wells for the Wells Purchase Order, and that provision has the scope and meaning described in STMicroelectronics' Opening Brief.

Finally, if the Court is not inclined to dismiss Wells' claims on Rule 12(b)(6) grounds, then it should nevertheless abstain from hearing them pursuant to the *Colorado River* doctrine. Based on the contents of Wells' Answering Brief, there is no dispute that the claims between Wells and STMicroelectronics in this case and those in the Texas State Action are "parallel" for purposes of the *Colorado River* analysis. Moreover, for the reasons stated in the Opening Brief and further detailed below, all six *Colorado River* factors weigh heavily in favor of abstention. This is so notwithstanding Wells misguided efforts to add (in two different ways) a test-dispositive "seventh" *Colorado River* factor that does not exist as a matter of law. A dismissal or stay based on the *Colorado River* doctrine is therefore appropriate in these circumstances.

# ARGUMENT

## I.     MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### A.     Wells Cannot, As A Matter Of Law, Establish Either Of The Two Conditions Precedent Necessary To Trigger STMicroelectronics' Indemnity Obligations.

As detailed in the Opening Brief, there are two conditions precedent that must exist before any indemnity obligation to Wells arises under the facts alleged in the Third-Party Complaint. First, there must be an infringement claim against Wells. Second, that infringement claim must target a specific STMicroelectronics product. Neither condition exists here.

#### 1.     There Is No Infringement Claim Against Wells.

Wells begins the Argument portion of its Answering Brief with the assertion that "[t]he indemnification clause conveys protection from allegations against those to whom [STMicroelectronics'] products are resold." (AB 9)  That much is true, but only with respect to infringement claims, the sole type of claims addressed by the indemnity provision.

The provision states in pertinent part that "the Seller . . . will . . . defend any suit which will be brought against Buyer, their successor and assigns or those using or selling Buyer's products for any alleged infringement of any patent, trademark, and copyright . . . ." (Ex. A, Wells Purchase Order ¶ 14 (emphasis added))  From this, Wells leaps to the erroneous conclusion that STMicroelectronics must indemnify Wells for indemnification claims asserted by Remy. (AB 9-10) Wells attempts to justify this position by suggesting that Wells is the equivalent of Remy under the terms of the indemnity provision. (*Id.*) Wells could have drafted a provision that expressly provided it with that protection, but it did not. Rather, the indemnity provision addresses only infringement claims. Remy has been sued for patent infringement; Wells has not.

Wells attempts to marginalize this distinction by arguing that the indemnity provision does not say that Wells cannot enforce the indemnity rights of Remy, and so the provision must therefore

3

permit Wells to enforce those rights for Wells' benefit. In doing so, Wells seeks to create an indemnity right that finds no support in the plain language of the provision. Wells provides no authority, however, to demonstrate that language otherwise clear on its face should be construed to have a scope beyond the plain meaning. In fact, relevant authority indicates that the opposite is true – that such a right should not be implied from thin air. *See Ideal Lease Serv. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983) (holding that scope of indemnification obligation is limited by clear language of indemnity provision); *Bentley v. Palmer House Co.*, 332 F.2d 107, 110 (7th Cir. 1964) (holding that, in construing indemnity contract, "meaning must be determined from the words used" and that courts may not "add thereto another term about which the agreement is silent").

The plain language of the provision actually negates Wells' position. In the indemnity provision, "those using or selling Buyer's products" are included in a list of potential third-party indemnitees along with "successor[s]" and "assigns." (Ex. A, Wells Purchase Order ¶ 14) There is no contractual basis for distinguishing between their respective indemnification rights, yet Wells contends that it can enforce for its benefit the indemnity rights of "those using or selling Buyer's products" (such as Remy) when it almost certainly could not enforce the same rights of the other potential third-party indemnitees. In this way, Wells advocates a special expanded scope of indemnification for "those using or selling Buyer's products" that does not exist with respect to successors and assigns. Wells seeks to distort the provision in this way presumably because it is the only way Wells can trigger the indemnity provision. The Court should reject this attempt as contrary to the plain language of the provision.

Wells next argues that the indemnity clause covers "'any suit' against Wells . . . [that] <u>arises out of</u> ('by reason of') an allegedly infringing sale or use of [STMicroelectronics'] voltage regulators." (AB 10 (emphasis added)) This is another distortion of the indemnity provision. The actual provision states that STMicroelectronics has an indemnity obligation with respect to:

4

> [A]ny suit which will be brought against Buyer, their successor
> and assigns or those using or selling Buyer's products for any
> alleged infringement of any patent, trademark , and copyright . . . "

(Ex. A, Wells Purchase Order ¶ 14 (emphasis added))  The provision clearly relates only to patent, trademark and copyright infringement claims.  There is no reference in the indemnity provision to the broader "arises out of" or similar language.  Indeed, had Wells wanted the broader phrase "arises out of" to be part of the indemnity provision, it could easily have imposed broader indemnification rights, as the Wells Purchase Order was created unilaterally by Wells.  Wells did not do so, and its baseless attempt to expand the indemnity provision beyond its plain meaning, so as to capture Remy's indemnification claim, should fail as a result.

2.    STMicroelectronics' Product Is Not Accused Of Infringement.

Even if Remy's indemnification claim could somehow be converted into an infringement claim against Wells (and it cannot), the claim would not satisfy the second condition precedent for indemnification – that it accuse a specific STMicroelectronics product of infringement.  There is no claim accusing a specific STMicroelectronics product, as Wells concedes in the Answering Brief when it states: "Neither Remy nor GE Licensing has accused [STMicroelectronics'] voltage regulators of infringing the '159 Patent in their own right."  (AB 12)

Wells tries to sidestep the lack of a claim against a specific STMicroelectronics product by suggesting that, if Remy were to be found liable for infringement, it would not be Wells' fault and STMicroelectronics would be to blame.  The relevant claims in the Texas Federal Action and this case, however, belie Wells' position.  STMicroelectronics was not sued for infringement in Texas or in Delaware.  As a result, Wells' assignment of blame falls flat and has no place in the Court's analysis.  The indemnity provision plainly requires an infringement claim against a specific STMicroelectronics product and there is none, as Wells has now conceded.  (AB 12)

Because Wells cannot establish either condition precedent necessary to trigger STMicroelectronics' indemnity obligations, Wells' indemnification claims should be dismissed.

### 3. Wells' Recitation Of Extrinsic Evidence Has No Place In The Court's Analysis.

Wells spends more than a page of the Answering Brief setting forth facts (some alleged in the Third-Party Complaint and some not) that, according to Wells' hindsight, suggest that it would have made sense for Wells to indemnify itself for types of claims other than infringement claims. Purported evidence of Wells' intentions (even if presumed true), however, has no bearing on the Court's decision here because the indemnity provision is clear with respect to STMicroelectronics' indemnity obligations to Wells, and Wells never suggests otherwise in the Third-Party Complaint or its Answering Brief. *See generally Ideal Lease*, 662 S.W.2d at 952-53 (holding that, under Texas law, when construing a clear contract provision, the court must determine the parties' rights solely by giving legal effect to the contract as written). The Court can therefore determine within the four corners of the Wells Purchase Order whether there can be any underlying liability as a matter of law that might trigger the indemnity provision. The extrinsic evidence put forth by Wells is not relevant to that analysis.

### 4. The UCC Does Not Apply In The Present Circumstances, And Even If It Did, The Result Would Be The Same.

Wells argues without support that UCC 2-312(3) provides an implied warranty of noninfringement requiring that STMicroelectronics indemnify Wells for Remy's indemnification claim. (AB 12) Conspicuously absent from Wells' argument is the actual language of § 2-312(3), which begins with the restrictive phrase "[u]nless otherwise agreed [by the parties.]"

According to the Third-Party Complaint, the Wells Purchase Order governs the relationship between Wells and STMicroelectronics. (D.I. 24, ¶ 8) If that is true, and it must be regarded as true in the context of a motion to dismiss, then the parties "otherwise agreed" to the scope of

6

indemnification obligations in the indemnity provision. Section 2-312(3) does not apply as a result. Other courts have come to the same conclusion in virtually the same circumstances. *See, e.g., Park-Ohio Industries, Inc. v. Tucker Induction Systems, Ltd.*, 1987 U.S. Dist. LEXIS 15642, at *7 (E.D. Mich. Oct. 21, 1997) (concluding that parties "otherwise agreed" and that § 2-312(3) did not apply where purchase order included indemnity provision); *MAS Corp. v. Thompson*, 302 S.E.2d 271, 275 (N.C. Ct. App. 1983) (determining that § 2-312(3) only applies when "nothing" is said in the parties' agreement concerning liability for infringement). There is no reason that this case should be an exception.

Moreover, even if the gap-filling, implied warranty of § 2-312(3) were applicable for a Rule 12(b)(6) analysis, the result would be the same because the implied warranty only applies to infringement claims, just like the indemnity provision in the Wells Purchase Order. *See Johnson Electric North America, Inc. v. Johnson Electric Industrial Manufactory, Ltd.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000) ("Courts have interpreted section 2-312(3) to entitle the buyer of an infringing good to indemnification from the seller <u>for any claims by a third party for infringement</u>.") (emphasis added); *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 507-08 (S.D.N.Y. 1992) (concluding that third-party claims not based on infringement were "meritless" because section 2-312(3) is limited to claims for damages incurred for patent infringement).

## B.    Wells Cannot, As A Matter Of Law, Establish The <u>Conditions Precedent Necessary For A Finding Of Breach.</u>

STMicroelectronics explained in its Opening Brief that Wells' breach of contract claim based on the indemnity provision rises or falls on the same grounds as Wells' indemnification claim. (OB 16-19) Wells acknowledges this fact in its Answering Brief. (AB 13) Wells' claim for breach of the indemnity provision should therefore be dismissed for the reasons stated above.

The fatal flaw in Wells' other two breach of contract/warranty claims goes back to its concession that no one has "accused [STMicroelectronics'] voltage regulators of infringement in

7

their own right." (AB 12) As to the second claim, Wells suggests that because the noninfringement warranty in the Wells Purchase Order includes "use" of STMicroelectronics' product, STMicroelectronics can breach that warranty even though (1) neither STMicroelectronics nor its product was referenced in the Federal Texas Action, and (2) Remy, having been accused of infringement in the Federal Texas Action because, according to Wells, it was using a Wells' product containing an STMicroelectronics' device, has sought no relief from STMicroelectronics. Remy's silence with respect to STMicroelectronics is telling. Given these conditions, there is clearly no basis under any set a facts for a finding that STMicroelectronics breached the noninfringement warranty. The claim should therefore be dismissed.

Finally, Wells fails to respond to STMicroelectronics' arguments concerning Wells' claim that it has breached its obligation to be in compliance with all "applicable federal, state and local laws." (OB 18-19) Because Wells has now abandoned this claim, it should be dismissed. And, if for some reason the claim is not deemed abandoned, it should fail for the familiar reason that there are no infringement claims against STMicroelectronics' product, as conceded by Wells. (AB 12)

## II.    MOTION TO DISMISS OR STAY PURSUANT TO THE *COLORADO RIVER* ABSTENTION DOCTRINE

### A.    The Parties' Disputes Are Scheduled To Be Tried In Texas Beginning On October 22, 2007.

On June 18, 2007, Judge Anne Ashby, the presiding judge in the Texas State Action, issued an order setting the trial of the case for a two-week docket to begin on October 22, 2007, approximately three months from now. (Ex. B, Scheduling Order)[5] The parties' disputes, which are the same here as they are in the Texas State Action, will therefore be resolved in Texas long before

---

[5]    Before Wells filed its Answering Brief, STMicroelectronics provided Wells with fair notice that it intended to rely on the Texas scheduling order in connection with its Reply Brief. STMicroelectronics' e-mail providing notice to Wells counsel is attached at Ex. C, e-mail from STMicroelectronics' counsel to Wells' counsel, dated June 24, 2007. STMicroelectronics' references to the scheduling order should therefore not provide a basis for a request for leave to file a sur-reply brief.

they can be tried in the present case, and maybe even before the present motion is resolved. As a result, the Court is faced with the choice of abstaining now or engaging in a *res judicata* or collateral estoppel analysis three months from now. STMicroelectronics respectfully requests that the Court consider abstention in view of this practical reality, as other courts have done, and decide to dismiss or stay Wells' claims pursuant to the *Colorado River* doctrine. *See, e.g., One Up. Inc. v. Webcraft Technologies, Inc.,* No. 87 C 3041, 1989 U.S. Dist. LEXIS 11313, at *15 (N.D. Ill. 1989) (applying *Colorado River* doctrine and concluding that "the relative progress of the state court proceedings also compels this court to grant the stay").

### B.     **This Court Cannot Prevent The Texas State Action From Proceeding.**

Regardless of how the Court resolves the current Motion, the Texas State Action will proceed to trial. Wells has not sought any form of injunctive relief from this Court with respect to the Texas State Action, nor would such relief be proper. *See* 28 *U.S.C.* § 2283 (1982 & Supp. II 1984) ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); *Intermedics Infusaid, Inc. v. Regents of University of Minnesota*, 804 F.2d 129, 133 (Fed. Cir. 1986) (holding that district court was powerless to enjoin state court action due to Anti-Injunction Act even though state court action would adjudicate patent invalidity).

### C.     **Wells Does Not Dispute That The Actions Are Parallel.**

The threshold determination for application of the *Colorado River* doctrine is whether the federal and state cases are parallel. *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005); *Summa Four, Inc. v. AT&T Wireless*, 994 F. Supp. 575, 580 (D. Del. 1998). STMicroelectronics explained in its Opening Brief that the Texas State Action and this case are parallel because they involve the same parties and claims. Wells does not address the point in its Answering Brief, and so the Court should conclude that the cases are, in fact, parallel for purposes of the *Colorado River* analysis.

9

**D.    Wells Should Not Be Permitted To Create A "Seventh" *Colorado River* Factor.**

The *Colorado River* doctrine comprises a six-factor test for determining whether abstention in favor of a state court action is appropriate. Wells attempts in its Answering Brief to add a "seventh" factor in two different ways.

First, Wells asserts that there is a separate "exceptional circumstances" factor which is dispositive of the entire *Colorado River* analysis. (AB 15) In doing so, however, Wells profoundly overstates the significance of the "exceptional circumstances" discussion in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

There is no separate "exceptional circumstances" element in the *Colorado River* analysis. In referring to "exceptional circumstances" in *Moses H. Cone*, the United States Supreme Court was acknowledging that a dismissal or stay was appropriate only where the six-factor test weighed heavily in favor of abstention. Such circumstances were "exceptional" in the eyes of the Court. This much is clear from the Court's statement in Part IV of the opinion: "Applying the *Colorado River* factors to this case, it is clear that there was no showing of the requisite exceptional circumstances to justify the District Court's stay." *Id.* at 18. Having set forth the standard, the Court then proceeds to evaluate the lower court's application of the six-factor test and resulting determination of exceptional circumstances. *Id.* at 19-29. *See also* 17A James Wm. Moore, *Moore's Federal Practice*, § 122.06 (3d ed. 2007) (explaining that, in determining whether there are "exceptional circumstances," "typically the courts formally examine the *Colorado River* and *Moses H. Cone* standards, but no factor is controlling"). Wells' suggestion that STMicroelectronics must meet some separate, overarching "exceptional circumstances" standard should therefore be rejected.

Wells next contends that there is a separate "federal policy" factor in the *Colorado River* analysis, and that, because a federal policy is served by declining to abstain in this case, the Court

10

"need not even reach the six-factor test."[6]  (AB 19)  There is no such factor, and Wells has not and cannot cite any authority for its erroneous position.

Wells nonetheless argues that the federal policy factor of its own creation precludes abstention here because the parties' dispute involves federal patent issues.  (*Id.*)  Wells goes on to tell the Court that questions of federal patent law are "inextricably intertwined with this dispute." That is not true.  The patent case between GE and Remy is being tried in Texas, while the only claims before this Court are contractual indemnification claims between STMicroelectronics and Wells.  With the patent claims and indemnification claims being tried by different courts and on different schedules, it is impossible to conclude that the Texas patent claims and the Delaware indemnification claims are "inextricably intertwined."

Moreover, the Court of Appeals of for the Federal Circuit has concluded that "there are no policies reflected in an act of Congress" that make it in any way improper for a state court to rule on the validity of a patent. *Intermedics Infusaid, Inc.,* 804 F.2d at 132-33.  In fact, the Federal Circuit has affirmed the stay, pursuant to the *Colorado River* doctrine, of an action seeking a declaratory judgment of patent invalidity in favor of a state court contract action addressing the same issues. *See id.*

This point has been further reinforced by the United States Supreme Court and the Federal Circuit in rulings rejecting federal question jurisdiction in non-patent infringement cases where the asserted cause of action related to patents. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 811 (1988) (holding that a cause of action did not arise under the patent laws where patent issues constituted only an element of a different cause of action); *Speedco, Inc. v. Estes,* 853 F.2d 909, 913 (Fed. Cir. 1988) (holding that patent-related contract disputes do not raise federal question);

---

[6]     This argument is distinct from Wells' other federal policy argument concerning the third *Colorado River* factor, which relates to the avoidance of piecemeal litigation.  That argument is addressed at, *infra*, pp. 15-17.

11

*Beghin-Say Int'l v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1571 (Fed. Cir. 1984) ("[N]othing in the statute confers federal jurisdiction over contract disputes . . . . [As federal courts] have consistently held for over 130 years that contract disputes involving patents do not arise under 'any act of Congress relating to patents' . . . .").

Accordingly, such an action removed to federal court is properly dismissed for lack of subject-matter jurisdiction. *See, e.g., McArdle v. Bornhofft*, 980 F. Supp. 68 (D. Me. 1997) (remanding case involving agreement concerning patent in which causes of action were based in common law); *Kleinerman v. Snitzer*, 754 F. Supp. 1 (D. Mass. 1990) (remanding case in which inventor sought patent infringement damages under common law torts rather than under federal patent laws); *Jacobson v. Bittner*, 694 F. Supp. 507 (N.D. Ill. 1988) (remanding case in which resolution of claims involving patent did not require application of federal patent law); *Coditron Corp. v. AFA Protective Sys., Inc.*, 392 F. Supp. 158 (S.D.N.Y. 1975) (concluding that complaint involving patents as subject of general contract law claims failed to provide basis for removal). Indeed, Wells itself has not challenged the jurisdiction of the Texas state court on preemption or other grounds, and has appeared before that court and actively participated in the Texas State Action.

For these reasons, Wells' suggestion that there is some federal interest in resolving this dispute simply because there are related patent claims pending in another court fails as a matter of law and is undermined by its own course of conduct.

Wells also rails against duplicative discovery, but that discovery is already underway in the Texas State Action (including initial disclosures and document requests), so a decision not to abstain in this case will not prevent duplicative discovery; it will create it, as both this case and the Texas State Case will continue to move forward.

On these grounds, the Court should reject both of Wells' two asserted "seventh" factors and apply the *Colorado River* six-factor test as it was intended by the Supreme Court.

12

**E.** **The Six-Factor Test Weighs Heavily In Favor of Abstention.**

1. The Texas Court First Assumed Jurisdiction.

Where, as here, there is no actual property at issue over which a court could assume jurisdiction, it is appropriate to consider, as the first *Colorado River* factor, which court first assumed jurisdiction over the dispute itself. *See Acierno v. Haggerty*, No. 04-1376 (KAJ), 2005 U.S. Dist. LEXIS 30353, at *33 (D. Del. Nov. 23, 2005) (noting that no property was actually in dispute and stating that "because the state courts in Delaware first assumed jurisdiction over Acierno's land use disputes, the first factor of *Colorado River* weighs in favor of abstention.")

STMicroelectronics explained in its Opening Brief that the Texas state court first assumed jurisdiction over the dispute between Wells and STMicroelectronics. (OB 21-22) Wells does not dispute this fact. Rather, it argues that the Court should look to when it assumed jurisdiction over the dispute between Remy and Wells, as opposed to the dispute between Wells and STMicroelectronics, even though such a comparison would involve actions involving different parties. There are at least two significant problems with Wells' position.

First, it relegates to a footnote the fact that STMicroelectronics filed the Texas State Action before Remy filed its claims in the current case. (AB 21 n.3) Thus, even under Wells' suggested analysis, the Texas state court first assumed jurisdiction over the dispute. Wells attempts to cover itself on this point by asserting that STMicroelectronics' claims in the Texas State Court were not ripe until Remy filed the present action. Wells further asserts that the Texas Federal Action involving the patent infringement claims was not sufficient to give the Texas state court declaratory judgment jurisdiction over STMicroelectronics' claims. Wells cites no supporting authority for its position, but more significantly and notwithstanding its current certainty as to the ripeness of STMicroelectronics' claims, Wells never moved to dismiss the claims in the Texas State Action for

13

lack of subject matter jurisdiction. Indeed, it answered them <u>before</u> Remy filed the present action. Thus, Wells position on ripeness is contrary to its own actions in the Texas State Action.

<u>Second</u>, Wells' position is nonsensical in the context of the *Colorado River* analysis. The analysis begins with a threshold determination of parallelism. Cases will not be deemed parallel unless they involve "substantially the same parties." *See LaDuke v. Burlington N. R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989). Thus, the comparison advocated by Wells is not between parallel disputes and therefore has no place in the *Colorado River* analysis. Moreover, Wells' position is particularly offensive to the analysis because Wells has never contested that there are parallel disputes between Wells and STMicroelectronics.

It is also important to note that the Texas state court not only assumed jurisdiction over the parties' dispute first, but it also scheduled the trial of the issues between the parties for October 22 of this year, long before this Court can possibly try them. For this reason, the first *Colorado River* factor weighs even more heavily in favor of abstention.

## 2. The Texas State Forum Is More Convenient As A Whole.

In the Opening Brief, STMicroelectronics provided ample authority for the proposition that a plaintiff's choice of forum should be given great deference. It also set forth the circumstances establishing that the Delaware forum is more inconvenient than the Texas forum as a whole. (OB 25) Wells responds with two flawed arguments.

<u>First</u>, Wells contends that proceeding in Delaware will somehow prevent duplicative discovery, but the opposite is true. (AB 21) Discovery is already underway in the Texas State Case and will presumably conclude at some point before the October 22 trial date. Requests for Production of Documents were served upon counsel for Wells in the Texas State Action, to which Wells must respond on or before July 30, 2007. In fact, much of that discovery in Texas will likely be completed before the present motion is resolved. Thus, the only way to prevent duplicative

discovery between STMicroelectronics and Wells is for this Court to abstain. Otherwise, much of the same discovery that has already taken place in Texas will recur here. Indeed, considerations of duplicative discovery only cause the second *Colorado River* factor to weigh more heavily in favor of abstention, and courts have recognized that such circumstances are inconvenient for both parties. *See, e.g., One Up, Inc.*, 1989 U.S. Dist. LEXIS 11313, at *13 (applying the *Colorado River* Doctrine and concluding that "simultaneous litigation in both the federal and state forums would inconvenience both parties").

Second, Wells contends that the Court should ignore convenience considerations related to STMicroelectronics because it is a Delaware corporation. Wells again provides no support for its position, which is understandable because the only authority Wells probably could have provided was a comparison to *forum non conveniens* jurisprudence. And even that would have failed because state of incorporation is of so little significance, even in a *forum non conveniens* context, when compared to more practical convenience considerations, such as those set forth in STMicroelectronics' Opening Brief. (OB 23) *See Dahl v. United Technologies Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980) (affirming lower court's grant of Delaware defendant's *forum non conveniens* motion based on finding that state of incorporation was insufficient to "justify" use of "Delaware judicial time and resources.").

      3.    Piecemeal Litigation Or Worse – Conflicting Results –
           May Result From A Decision Not To Abstain.

The third *Colorado River* factor warns that courts should consider abstention when proceeding with a parallel federal action would result in piecemeal litigation. *See Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988) (holding that abstention under Colorado River was appropriate where piecemeal litigation could otherwise result).

In its Opening Brief, STMicroelectronics explained that the continuation of both the present case and the Texas State Action would result in piecemeal litigation with the potential for conflicting

                                    

results.[7] Wells responds by arguing that STMicroelectronics has misstated the third factor of the

*Colorado River* analysis. (AB 16) Wells specifically complains that STMicroelectronics' statement

of the factor does not comport with *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165 (3d Cir.

1999), because, according to Wells, that case requires that a specific federal policy against piecemeal

litigation be present before the third *Colorado River* factor can be found to weigh in favor of

abstention. (*Id.*)

Wells, however, fails to inform the Court that the most recent Third Circuit authority on the

*Colorado River* six-factor test does not recognize the federal policy restriction it advocates. In 2006

(seven years after *Spring City*), the Third Circuit, in *IFC Interconsult, AG v. Safeguard Int'l

Partners, LLC*, stated:

> The factors we consider in an abstention analysis are: . . . [3]
> whether abstention would aid in avoiding piecemeal litigation . . . .

438 F.3d 298, 307 n.4 (3d Cir. 2006) (brackets in original) (citing *Rycoline Prods. v. C&W

Unlimited*, 109 F.3d 883, 890 (3d Cir. 1997)). There is no mention of a specific federal policy

requirement in *IFC*. Moreover, the *IFC* court's decision to rely on the *Rycoline* case (which relies,

in turn, on the *Trent* case discussed below), instead of the more recent *Spring City*, confirms that the

pre-*Spring City* standard is the controlling precedent regarding application of the *Colorado River*

doctrine.

Rule 9.1 of the Third Circuit Internal Operating Procedures also makes this clear. It provides

that: "It is the tradition of this court that the holding of a panel in a precedential opinion is binding

---

[7]     It should be obvious that Wells' complaints about STMicroelectronics' purported
replacement of the "piecemeal litigation" factor with a "conflicting results" factor are
unfounded. As Wells surely knows, conflicting results are a potential risk of overlapping
piecemeal litigation. In explaining the potential for conflicting results, STMicroelectronics
is simply recognizing that the risks of overlapping piecemeal litigation may come to fruition
in this case.

on subsequent panels. Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court *en banc* consideration is required to do so."

In *Spring City*, the panel relied on a 1997 panel decision, *Ryan v. Johnson*, 115 F.3d 193 (3d Cir. 1997), to guide its analysis of the lower court's application of the six-factor test. Earlier panel decisions, however, did not recognize the federal policy requirement identified in *Spring City*. In 1994, for example, the Third Circuit, in *Trent v. Dial Medical of Florida, Inc.*, affirmed a lower court's decision to abstain pursuant to the *Colorado River* doctrine due in large part to a risk of piecemeal litigation. 33 F.3d 217, 225 (3d Cir. 1994). The *Trent* court did not recognize a federal policy requirement, and no such policy was implicated in the case. Because *Trent* predates *Spring City* and *Ryan*, it provides the controlling standard under Rule 9.1, the same standard applied by Judge Jordan in *Acierno v. Haggerty*, No. 04-1376, 2005 U.S. Dist. LEXIS 30353, at *33 (D. Del. Nov. 23, 2005) (abstaining), and subsequently applied by STMicroelectronics in the Opening Brief.[8]

For the reasons detailed in the Opening Brief, the third *Colorado River* factor weighs heavily in favor of abstention for the reasons set forth in the Opening Brief. (OB 24)

---

[8]    In addition to *Acierno*, the following district court cases since 1999 have applied the *Colorado River* doctrine without relying upon *Spring City*: *Sanitec Indus. v. Sanitec Worldwide*, No. 04-1386 JJF, 376 F. Supp. 2d 575, 578-79 (D. Del. 2005); *Laboon v. Goldberg*, No. 06-1429, 2007 U.S. Dist. LEXIS 11803, at *5-6 (W.D. Pa. Feb. 16, 2007); *Chiampi v. Bally's Park Place, Inc.*, No. 05-3395 (JEI), 2007 U.S. Dist. LEXIS 9010, at *3-7 (D.N.J. Feb. 7, 2007); *BIL Mgmt. Corp. v. New Jersey Econ. Dev. Auth.*, No. 06-0588 (NLH) , 2006 U.S. Dist. LEXIS 92087, at *5-9 (D.N.J. December 8, 2006); *Nat'l Fire Ins. Co. v. Universal Janitorial Supply Corp.*, No. 05-5945 (AET), 2006 U.S. Dist. LEXIS 17211, at *7-10 (D.N.J. April 6, 2006); *King v. Jockeys' Guild, Inc.*, No. 04-5712 (JBS), 2005 U.S. Dist. LEXIS 15621, at *13-19 (D.N.J. July 26, 2005); *Wells Fargo Home Mortg., Inc. v. Sec. Title Guar. Corp.*, 337 F. Supp. 2d 680, 683-85 (E.D. Pa. 2004); *Cerelli v. Cooper*, No. 03-3241, 2004 U.S. Dist. LEXIS 786, at *4-7 (E.D. Pa. January 15, 2004); *Kuhn v. Oehme Carrier Corp.*, 255 F. Supp. 2d 458, 463-65 (E.D. Pa. 2003); *Holland Transp., Inc. v. Twp. of Upper Chichester*, No. 00-397, 2002 U.S. Dist. LEXIS 23420, at *74-76 (E.D. Pa. Oct. 23, 2002).

17

4.    The Fourth Factor Overlaps The First Factor In The Present
      Circumstances And So It Weighs In Favor Of Abstention.

STMicroelectronics explained in the Opening Brief that in a case such as this, where there is

no actual property in dispute, the first and fourth *Colorado River* factors are substantially the same.

(OB 25)  Wells does not dispute this point.

5.    State Law Controls This Dispute.

The fifth *Colorado River* factor focuses on whether federal or state law controls the dispute,

the implication being that it may be advantageous for a federal court to continue to hear a case

involving a federal question or claim.

In its Opening Brief, STMicroelectronics explained that there is no federal question or claim

before the Court and that the parties' dispute relates only to indemnification and contractual rights

governed entirely by state law, and most likely Texas state law.  (OB 25)  Wells responds by arguing

that this case is "intimately bound up" with patent issues.  (AB 22)  That is clearly not the case.  As

this Court is well aware, the underlying patent case is pending in Texas where it will be tried and

resolved in full.  This Court will have no part in determining whether or not there was infringement.

Its only charge is to evaluate contract-based indemnification rights governed by state law if and

when the Texas federal court finds infringement.  For this reason, there is clearly no federal issue

before this Court, and Wells' suggestions to the contrary should be set aside.

6.    The Texas State Court Can More Than Adequately
      Protect The Interests Of The Parties.

The sixth and final *Colorado River* factor relates to whether the state court can adequately

protect the parties' interests.  STMicroelectronics explained in the Opening Brief that the disputes

between the parties are governed entirely by state law (and most likely Texas state law), and that

there is, as a result, no risk that a portion of the parties' dispute will not be adjudicated, or that a

party will be prejudiced by a state court's application of federal law.  (OB 25-26)  Wells seems to

18

suggest in response (although it is unclear) that because the underlying liability would be related to patents, the Texas state court would be ill-equipped to resolve the contractual indemnification claims that would relate to such liability. The United States Supreme Court, the Federal Circuit and various district courts have rejected this proposition, as discussed herein at, *supra*, pages 11-12. Wells cites no authority to the contrary. As a result, there should be no doubt that the Texas state court is more than capable of handling indemnification and breach of contract claims that most likely governed by Texas state law. Indeed, there are significant advantages to it doing so, as STMicroelectronics detailed in its Opening Brief. (OB 26)

For the reasons set forth above and in the Opening Brief, all six *Colorado River* factors weigh heavily in favor of abstention.

### E.    Dismissal Is The More Appropriate Remedy.

STMicroelectronics explained in the Opening Brief that dismissal under the *Colorado River* doctrine was a more appropriate remedy than a stay because the "parallel state-court litigation will completely resolve the issues between the parties and . . . the federal court will have nothing further to do with the case." *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 138 (3d Cir. 1988). Wells does not dispute this point in the Answering Brief.

19

## CONCLUSION

For the reasons detailed above and in the Opening Brief, STMicroelectronics respectfully submits that Wells' indemnification claims and breach of contract claims should be dismissed pursuant to Rule 12(b)(6) or the *Colorado River* doctrine. In the alternative, STMicroelectronics seeks a stay of the claims pursuant to the *Colorado River* doctrine.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

John W. Shaw (No. 3362)
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
apoff@ycst.com

*Attorneys for Third Party Defendant,*
*STMicroelectronics, Inc.*

Dated: July 12, 2007

20

## CERTIFICATE OF SERVICE

I, Adam W. Poff, hereby certify that on July 12, 2007, a true and correct copy of the

foregoing document was filed with the Clerk of the Court using CM/ECF which will send

notification that such filing is available for viewing and downloading to the following counsel of

record:

Thomas C. Grimm, Esq.
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE 19801

Jeffrey Bove, Esq.
Dana K. Hammond, Esq.
CONNOLLY, BOVE, LODGE & HUTZ
1107 N. Orange Street
Wilmington, DE 19801

Donald J. Detweiler, Esq.
Titania R. Mack, Esq.
GREENBURG TRAURIG LLP
1007 N. Orange St., Ste. 1200
Wilmington, DE 19801

Steven J. Balick, Esq.
John G. Day, Esq.
Lauren E. McGuire
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

David E. Moore, Esq.
POTTER ANDERSON & CORROON,
LLP
1313 N. Market St.
Hercules Plaza, 6th Floor
Wilmington, DE 19801

I further certify that on July 12, 2007, I caused copies of the foregoing document to be

served by hand delivery on the above-listed counsel and on the following counsel of record as

indicated.

BY U.S. MAIL

Bradford Lyerla, Esq.
Jeffrey Dean, Esq.
Scott Sanderson, Esq.
MARSHALL GERSTEIN & BROUN LLP
233 S. Wacker Dr.
6300 Sears Tower
Chicago, IL 60606

Stephen Milbrath, Esq.
ALLEN DYER DOPPLET MILBRATH
& CHRIST, PA
255 S. Orange Avenue, Ste. 1401
Orlando, FL 32802

Holiday Banta, Esq.
WOODARD EMHARDT MORIARTY
MCNETT & HENRY LLP
111 Monument Circle, Ste. 3700
Indianapolis, IN 46204

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
*apoff@ycst.com*
Attorneys for STMicroelectronics, Inc.

# Exhibit A

TERMS AND CONDITIONS GOVERNING PURCHASE ORDERS

1. The Buyer hereinafter referred to is Wells Manufacturing, L.P. and the Seller is the other party who has affixed its signature to this document.

2. This order is not binding until accepted by Buyer. The acceptance of this order will occur when an acknowledged copy of said order is executed by the Seller and has been returned and received by the Buyer. Seller shall not make any changes in the terms, conditions, prices and delivery dates of this order without first obtaining Buyer's written consent. Buyer shall have the right to schedule the dates of delivery for the parts and materials that are subject to this order. Buyer shall also have the right to make reasonable changes relating to the number of parts and materials subject to this order depending upon the manufacturing requirements of Buyer.

In the event that Seller fails to give a written acknowledgement of this order as so provided above, any delivery made pursuant to this order shall constitute an acceptance of all the provisions of this order.

3. By accepting this purchase order, Seller agrees that the prices, terms and conditions of this order are at least as favorable to Buyer as are those prices, terms and conditions given by Seller to other purchasers of the same quality and quantity of Seller's product. If Buyer is able to purchase goods of comparable quality from another seller at a lower delivered cost than as specified in this purchase order, the Buyer may give to Seller written notice of same and unless within fifteen days from the date of said notice, Seller does not reduce its prices to an amount equal to the price offered by the other seller, Buyer may purchase said goods from other seller. All goods so purchased shall be deducted from the remaining balance of goods to be purchased by Buyer from Seller. All other terms and conditions of this purchase order shall remain in full force and effect.

4. The Seller will not be responsible for delays or defaults in deliveries, nor the Buyer, for failure to receive or accept shipments if occasioned by wars, fires, insurrections, transportation difficulties or Act of God.

5. The title to all dies, tools and patterns supplied by Buyer or amortized by the Seller under agreement with the Buyer shall remain vested in the Buyer. All of said dies, tools and patterns shall be returned to Buyer or to Buyer's designee upon demand of Buyer.

6. Seller agrees to use all dies, tools, patterns, or material to manufacture exclusively for Buyer and not to deliver any material or parts substantially complying the Buyer's specifications to any other person, firm or corporation and Seller agrees to pay the Buyer liquidated damages for nonperformance of the terms of this contract for each person, firm or corporation to whom the same is sold or delivered. Selling or delivering such material or parts as set forth in this paragraph shall be considered a violation of the terms and conditions of this contract and Buyer may forthwith, without notice, take possession of all property title to which has been retained by the Buyer.

7. The Buyer shall have the right by written order to make changes from time to time in the work to be performed by Seller hereunder. If such changes cause an increase or decrease in the amount due under this order or in the time required for Seller to perform hereunder because of said changes, this order by agreement shall be modified in writing accordingly.

8. Buyer may change shipping schedules or defer shipment of this order or any part thereof if for any reason its production is changed, delayed or curtailed, or any contingencies interfere with the receipt, handling or stocking of the items ordered herein. Failure to deliver goods of the quality and quantity and within the time or times specified by this contract shall, at the option of the Buyer, relieve it of any obligation to accept and pay for such goods as well as any undelivered shipments if there be any, and charge the Seller with any increased cost or other loss incurred thereon, unless deferred shipment be agreed to by the Buyer in writing. Any failure by the Buyer to exercise its option with respect to any shipment of goods shall not be deemed to constitute a waiver with respect to subsequent shipments.

9. Buyer shall have the right to inspect all material and parts and the same shall be manufactured as specified and shall be of a standard quality as understood and accepted by the trade. Inspection of each shipment may be made by Buyer after delivery. Prior payment or acceptance of shipments shall not be considered as waiving such right of inspection. The Buyer may reject and return at the risk and expense of Seller all rejected material or parts and shall be given full credit for same.

10. The Buyer shall be given full credit for all material and parts rejected because of defect or the failure to meet specifications without invalidating the remainder of the order. Rejected material and parts may be held for Seller's inspection without cost or liability to Buyer and shall be removed at the expense of the Seller within five days after written notification. Buyer shall not be required to pay for any material or parts rejected after inspection.

11. The Seller expressly warrants that all the material and work covered by this order will conform to the specifications, drawings, samples or other description furnished or adopted by the Buyer and will be fit and sufficient for the purpose intended, merchantable, of good materials and workmanship and free from defect.

12. The Buyer will conduct an inspection as to the quality of the goods received from Seller. Said inspection will be at Buyer's expense if after conducting such an inspection, the percentage of defective material or parts warrants (in the judgment of the Buyer) a 100% inspection, the Buyer reserves the right to either reject the material in total or to conduct a 100% inspection. Buyer and Seller shall agree to the reasonable amount to be charged to Seller for said inspection. Any discount date or due date will be calculated from the completed inspection date.

13. In the event Seller becomes insolvent or commits an act of bankruptcy or manufacturing is retarded by reason of a strike or an assignment is made by Seller for the benefit of creditors or if Seller fails to comply with the terms of this order or schedule, this contract may be canceled by Buyer and Buyer may without notice take possession of all dies, tools, patterns and all processed or unprocessed material and parts.

14. Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright; the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer, their successors and assigns or those using or selling Buyer's products for any alleged infringement of any patent trademark, and copyright by reason of the sale or use of any such article or material. Seller agrees that he will pay all judgments or costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

15. Buyer reserves the right to cancel this order or any portion of same if delivery is not made when and as specified, time being of the essence of this order and charge Seller for any loss entailed.

16. In the event of cancellation, Wells Manufacturing, L.P. will be responsible for only the labor and material expended thereon during the normal lead time required to meet the stated delivery date or dates.

17. No material shall be acquired by the Seller in excess of that which may be necessary to meet Buyer's released delivery schedule. If Seller acquires any such excess material and thereafter this contract is canceled or terminated, such material shall be the property of Seller, and Buyer shall in no way be liable therefore.

Title to all materials supplied by Buyer to Seller shall remain vested in Buyer. The Seller agrees to pay for all materials furnished by Buyer that may be spoiled or that is not otherwise satisfactorily accounted for or delivered to the Buyer.

18. The Seller will be required to invoice the Buyer immediately upon shipment and if the invoices are not in the hands of the Buyer on or before the 4th day of the month succeeding shipment, said invoices will be considered as invoices of the succeeding month for accounting and discount purposes.

19. Seller warrants that it is currently in compliance with and will continue to comply with any and all applicable federal, state, and local laws and regulations which could impose liability upon Buyer as a result of any non-compliance on Seller's part. Seller further warrants that all goods and services covered by this order have been produced or furnished in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219, Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, Section 2012 of the Vietnam Era Veterans Readjustment Act of 1974, 38 U.S.C. §§ 2011, 2012, and Executive Order 11625 together with the rules, regulations and relevant orders promulgated thereunder, to the extent such laws, rules or regulations are applicable to this order.

20. This purchase order constitutes the sole agreement between the parties and supersedes any and all agreements or understandings, bids or offers written or otherwise respecting the same.

# Exhibit B



134TH DISTRICT COURT
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS 75202-4604

6/18/2007

THOMAS W CRADDOCK
500 NORTH AKARD STREET
SUITE 3550 LB 65
DALLAS      TX 75201

## ATTENTION:

## CASE WILL BE CARRIED FOR TWO (2) WEEKS.

RE: DC-06-11257
STMICROELECTRONICS INC
vs.
WELLS MANUFACTURING CORPORATION, et al

ALL COUNSEL OF RECORD:

PLEASE TAKE NOTE OF THE FOLLOWING SETTINGS:

      NON-JURY TRIAL:      10/22/2007 @ 9:00 AM

TRIAL ANNOUNCEMENTS MUST BE MADE IN ACCORDANCE WITH RULE 3.02, LOCAL RULES OF THE CIVIL COURT OF DALLAS COUNTY, TEXAS.

WHEN NO ANNOUNCEMENT IS MADE FOR DEFENDANT, DEFENDANT WILL BE PRESUMED READY. IF PLAINTIFF FAILS TO ANNOUNCE OR TO APPEAR AT TRIAL, THE CASE WILL BE DISMISSED FOR WANT OF PROSECUTION IN ACCORDANCE WITH RULE 165a, TEXAS RULES OF CIVIL PROCEDURE.

COMPLETION OF DISCOVERY, PRESENTATION OF PRETRIAL MOTIONS AND OTHER MATTERS RELATING TO PREPARATION FOR TRIAL ARE GOVERNED BY THE TEXAS RULES OF CIVIL PROCEDURE.

PLEASE FORWARD A COPY OF THIS NOTICE TO COUNSEL OF RECORD FOR EACH PARTY AND ALL PRO SE PARTIES BY A METHOD APPROVED IN TEXAS RULES OF CIVIL PROCEDURE 21a.

SINCERELY,

PRESIDING JUDGE
134th District Court
DALLAS COUNTY, TEXAS

WETHERILL ASSOCIATESINC
BY SERVING ITS REGISTERED AGENT
LEONARD F GREEN
4408 SPICEWOOD SPRINGS RD
AUSTIN TX 78759; ROBERT L RICKMAN
5000 BANK ONE CENTER
1717 MAIN STREET



### ANNE ASHBY
#### JUDGE, 134TH DISTRICT COURT

Dear Counsel and/or Parties of Record,

If you designated this case as a Level 2 or Level 3, please confer and prepare a scheduling order that fits your case, and submit it to me within one month from the date of the enclosed trial notice. **The Scheduling Order is not optional.**

The specifics I require in your scheduling order is that:

- *all Daubert/Robinson and witness challenges shall be set and heard at least 30 days prior to trial or they will be waived and*

- *Reset or continuance of the initial trial setting will not alter any deadline established in this order.*

Enclosed herewith is your trial notice. If this trial date does not work with your schedules, I need all of you to arrange a telephonic conference with my court coordinator with calendars in hand to schedule a new trial date. Juana Harlan, can be reached at 214-653-6995.

You will receive an appointment of a mediator in a different letter. Please coordinate this with your scheduling order.

I look forward to working with you.

Very truly yours,

Anne Ashby
Judge

AA/jh

CODE: STUFFER - effective 2/21/06

# Exhibit C

**Poff, Adam**

| | |
|---|---|
| **From:** | Poff, Adam |
| **Sent:** | Sunday, June 24, 2007 11:21 PM |
| **To:** | 'jbove@cblh.com' |
| **Subject:** | Remy/Wells/STM - scheduling of Texas trial |

Jeff --
I'm writing to provide Wells with notice that STM intends to rely in its reply brief upon the recent order scheduling the Texas State case for trial on October 22, 2007. Please let me know if you have any questions.

Regards --
Adam