UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| **REMY, INC.,**<br>**UNIT PARTS COMPANY, and**<br>**WORLDWIDE AUTOMOTIVE, LLC,**<br><br>    **Plaintiffs,**<br><br>        **v.**<br><br>**CIF LICENSING, LLC, D/B/A GE LICENSING,**<br>**WELLS MANUFACTURING, L.P.,**<br>**TADITEL US, INC., and**<br>**WETHERILL ASSOCIATES, INC.,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)   **C.A. No. 06-785-\*\*\***<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **WELLS MANUFACTURING, L.P.,**<br><br>    **Counterclaimant,**<br><br>        **v.**<br><br>**REMY, INC.,**<br><br>    **Counterdefendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **WELLS MANUFACTURING, L.P.,**<br><br>    **Third-Party Plaintiff,**<br><br>        **v.**<br><br>**STMICROELECTRONICS, INC.,**<br><br>    **Third-Party Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**WELLS MANUFACTURING, L.P.'S MOTION TO STRIKE OR, IN THE
ALTERNATIVE, FOR LEAVE TO FILE A SURREPLY AGAINST THIRD-PARTY
DEFENDANT STMICROELECTRONICS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS OR STAY**

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
317-634-3456

Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE &
HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
jbove@cblh.com
dhammond@cblh.com
302-658-9141

*Attorneys for Defendant, Counterclaimant, and
Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED:  July 27, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................1

NATURE AND STAGE OF PROCEEDINGS..............................................................1

SUMMARY OF THE ARGUMENT ............................................................................2

STATEMENT OF FACTS.............................................................................................2

ARGUMENT..................................................................................................................4

    I.    Legal Standard.................................................................................................4

    II.   The Newly Raised Arguments in ST's Reply Should be Stricken, or, in the
    Alternative, Wells Should be Permitted a Surreply ...........................................5

CONCLUSION ..............................................................................................................7

## TABLE OF AUTHORITIES

### *Cases*

*Boston Scientific Scimed, Inc. v. Cordis Corp.*,
    434 F. Supp. 2d 308 (D. Del. 2006)..................................................................................8

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)......................................................................................................6

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976)...................................................................................................5,10

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*
    438 F.3d 298 (3d Cir. 2006)........................................................................................10

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minnesota*,
    804 F.2d 129 (Fed. Cir. 1986)............................................................................ *passim*

*Isco Int'l, Inc. v. Conductus, Inc.*,
    279 F. Supp. 489 (D. Del. 2003)..................................................................................8

*Spring City Corp. v. Am. Bldgs. Co.*,
    193 F.3d 165 (3d Cir. 1999).......................................................................................10


### *Other Authorities*

L.R. 7.1.3(c)(2) (2007) .............................................................................................1,4,8

## PRELIMINARY STATEMENT

Third-Party Defendant STMicroelectronics's ("ST") reply brief (D.I. 46, hereinafter "Reply") violates Local Rule 7.1.3(c)(2) because it contains new matter and new authority that should have been included in a full and fair opening brief.  L.R. 7.1.3(c)(2) (2007).

ST cites a number of new cases in its Reply, including *Intermedics Infusaid, Inc. v. Regents of Univ. of Minnesota*, 804 F.2d 129 (Fed. Cir. 1986), to support new legal arguments. D.I. 46, II.D., and II.E.3., pp. 10-12, 15-17.  ST also advances additional factual arguments in support of its interpretation of the "exceptional circumstances" doctrine.  *Id.* at II.A., II.E.1., II.E.2., and II.E.5., pp.8-9, 13-14, 18.  One of these impermissible new factual arguments is based on a soon-to-be-obsolete scheduling order in the Texas state action.  *Id.* at II.A., pp. 8-9. Another is based on a mysterious allegation that "the underlying patent case is pending in Texas where it will be tried and resolved in full."  *Id.* at II.E.5., p. 18 (D.I. 47 establishes that the question of where the patent case will be resolved is still a fully open question).

For these reasons, therefore, Third-Party Plaintiff Wells Manufacturing, L.P. ("Wells") moves the Court to strike from the record those portions of ST's Reply that do not comport with the Local Rules, namely Sections II.A, II.D., and II.E..  In the alternative, Wells respectfully requests leave of the Court to allow surreply in response to ST's late-breaking arguments. Wells's proposed surreply is attached to this Motion as Exhibit A.

## NATURE AND STAGE OF PROCEEDINGS

On June 20, 2007, ST filed a Motion to Dismiss or Stay the instant proceeding and an Opening Brief in support of the same.  D.I. 37 and 38.  Because all of Wells's claims in Wells's Complaint (D.I. 24) are intricately entwined with the present infringement dispute between GE Licensing and Remy and will require the resolution of federal patent infringement claims before

any state or contract issues can be adequately addressed, Wells controverted ST's Motion in an Answering Brief (D.I. 45) filed on July 5, 2007. ST replied on July 12, 2007. D.I. 46.

Subsequent to ST's filing of its Motion to Dismiss or Stay in the present case, ST sent the first discovery requests of the Texas State Action[1] to Wells on June 29, 2007. Wells filed a Motion for Stay and a Jury Demand on July 18, 2007 in the Texas State Action. Attached as Exhibit B is Defendant Wells Manufacturing, L.P.'s Motion for Stay (with exhibit); attached as Exhibit C is Defendant Wells Manufacturing, L.P.'s Demand for Jury Trial. Those filings have not yet been addressed by the Texas court.

## SUMMARY OF THE ARGUMENT

1.      Wells moves the Court to strike from the record those portions of ST's Reply that do not comport with the Local Rules, namely Sections II.A, II.D., and II.E.. L.R. 7.1.3(c)(2) (2007). These Sections contain new facts and new authority that should have been included in a full and fair opening brief.

2.      In the alternative, Wells respectfully requests leave of the Court to allow surreply in response to ST's late-breaking arguments and newly disclosed facts.

## STATEMENT OF FACTS

The following facts are drawn from ST's Reply, the Texas State Action, and the supporting documentation filed therewith. It is proper for the Court to consider such documents in the context of a motion to strike or, in the alternative, for leave to file a surreply, because the pleadings constitute the basis from which relief is requested.

---

[1] This June 29, 2007 filing comprises the first substantive discovery served in the case, the only other discovery comprising a one sentence request for initial disclosures included in ST's Texas State Action Complaint. *See* D.I. 38-2 at 17 (Section VII., p. 4 of ST's Complaint in the Texas State Action) and 23-33 (Wells's initial disclosure responses).

ST cites a number of new cases in the Reply, including *Intermedics Infusaid*, to support new legal arguments. *Id.* at II.D. and II.E.3., pp. 10-12, 15-17. Sections II.D. and II.E.3. include new authority and present the entirely new argument that the *Colorado River* doctrine has previously been applied in the context of patent disputes like the case at bar.

In Section II.D., ST cites *Intermedics Infusaid* as a case in which "the Federal Circuit has affirmed the stay, pursuant to the *Colorado River* doctrine, of an action seeking a declaratory judgment of patent invalidity in favor of a state court contract action addressing the same issues." *Id.* at 11. Also in Section II.D., ST cites *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), a case that actually supports this Court's exercise of jurisdiction over the present dispute, and a half dozen other new cases for its new proposition that federal question jurisdiction does not lie in non-patent infringement cases. *Id.* at 11-12.

Likewise, in Section II.E.3., ST advances new argument and authority, including the Third Circuit Internal Operating Procedures, in support of what it contends is the proper Third Circuit standard for application of the exceptional circumstances doctrine. A full and fair opening brief would have addressed application of the exceptional circumstances doctrine in the context most relevant to this dispute.

ST also advances additional factual arguments in support of its interpretation of the exceptional circumstances doctrine. *Id.* at II.A., II.E.1., II.E.2., and II.E.5., pp.8-9, 13-14, 18. One of these impermissible new factual arguments is based on a mysterious allegation that "the underlying patent case is pending in Texas where it will be tried and resolved in full." *Id.* at II.E.5., p. 18 (D.I. 47 establishes that the question of where the patent case will be resolved is still a fully open question).

ST also argues for the first time in Section II.A. that abstention is appropriate because ST claims that the Texas action will have completely resolved this dispute by mid-November of this year. This new factual argument presented by ST is based on a soon-to-be-obsolete scheduling order in the Texas state action. *Id.* at II.A., pp. 8-9. The scheduling order referenced by ST will be obsolete because Wells filed a Motion for Stay and a Jury Demand on July 18, 2007 in the Texas State Action. Exhibit B, Defendant Wells Manufacturing, L.P.'s Motion for Stay (with exhibit); Exhibit C, Defendant Wells Manufacturing, L.P.'s Demand for Jury Trial. Whether or not the Motion for Stay is granted by the Texas state court, the Jury Demand will require the court to re-set the trial date during a time when a jury can be empanelled.

Based on these facts, therefore, Wells moves the Court to strike from the record those portions of ST's Reply that do not comport with the Local Rules, namely Sections II.A, II.D., and II.E. In the alternative, Wells respectfully requests leave of the Court to allow filing of the attached surreply in response to ST's late-breaking arguments.

## ARGUMENT

### I.    LEGAL STANDARD

The Local Rules state that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief." L.R. 7.1.3(c)(2) (2007). Including new matter and new authorities in a reply brief violates this rule. *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 434 F. Supp. 2d 308, 314 (D. Del. 2006). "In any case, the court [should] not belabor an argument raised for the first time in a reply brief." *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 489, 510 (D. Del. 2003).

4

II.    **THE NEWLY RAISED ARGUMENTS IN ST'S REPLY SHOULD BE STRICKEN, OR, IN THE ALTERNATIVE, WELLS SHOULD BE PERMITTED A SURREPLY**

While Section II.E.3.'s caption suggests that this Section addresses the danger of piecemeal litigation. However, this Section actually presents a new argument regarding the proper standard for application of the exceptional circumstances doctrine. Had ST's Opening Brief been full and fair, it would have fully addressed the proper legal standard for the application of the doctrine upon which ST's motion was based. Instead, this Section raises a number of new arguments and authorities, including the Third Circuit Internal Operating Procedures.

ST presents in Section II.E.3. a brand new argument that Third Circuit opinions applying the exceptional circumstances doctrine are inconsistent with one another, and, based on the Internal Operating Procedures, that *Spring City* should be considered bad law (regardless of the fact that it contains the most thorough treatment of the doctrine found in Third Circuit jurisprudence) because it conflicts with the later-decided *IFC Interconsult*. D.I. 46 at 15-17. ST contradicts its own argument, however, because if ST's argument concerning the application of the Third Circuit Internal Operating Procedures holds, then *Spring City* must be the controlling precedent because it is older than *IFC Interconsult*. In any case, this new argument to which Wells did not receive a full and fair opportunity to respond should be stricken from the Reply.

Similarly, in Section II.D., ST cites for the first time a number of cases that it contends stand for the proposition that the Court does not have subject matter jurisdiction over the present action and that it claims require application of the *Colorado River* six-factor test to the present circumstances. These new cases and new arguments are wholly inappropriate, because a full and fair opening brief should have addressed the most relevant cases. The most relevant cases are

those cases applying the legal doctrine at issue in the factual context most similar to the present facts. The argument that the exceptional circumstances doctrine may apply in the context of patent suits should not have been reserved for reply.

Finally, ST improperly reserved for reply its argument in Section II.A. that this Court should abstain because, according to ST, the Texas State Action will resolve the dispute so swiftly that the action before this Court is moot. Although ST argues in a footnote (*id.* at 8, n.5.) that it gave notice that it "intended" to rely upon the Texas scheduling order (which order was entered two days before ST filed its Opening Brief), ST's intentions, and its declarations made after filing its Opening Brief for that matter, are simply not relevant. Granting that ST did intend to argue that stay was appropriate because the Texas action would be completed by mid-November, then it truly had no excuse for reserving that argument for reply. Section II.A. should be stricken.

**CONCLUSION**

For at least these reasons, therefore, the Court should strike from the record those

portions of ST's Reply that do not comport with the Local Rules, namely Sections II.A, II.D.,

and II.E..  In the alternative, Wells respectfully requests that the Court permit the attached

surreply to be entered and considered.

Respectfully submitted,

By: */s/ Jeffrey B. Bove*

OF COUNSEL:                              Jeffrey B. Bove, Esquire (#998)
Holiday W. Banta                            Dana K. Hammond (#4869)
WOODARD, EMHARDT,               CONNOLLY BOVE LODGE &
MORIARTY, MCNETT & HENRY LLP   HUTZ, LLP
111 Monument Circle, Suite 3700     1007 North Orange Street
Indianapolis, IN 46204-5137         P.O. Box 2207
317-634-3456                          Wilmington, DE 19899
                                    jbove@cblh.com
                                    dhammond@cblh.com
                                  302-658-9141

*Attorneys for Defendant, Counterclaimant, and
Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED:  July 27, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2007, I electronically filed the foregoing

WELLS MANUFACTURING, L.P.'S MOTION TO STRIKE OR, IN THE ALTERNATIVE,

FOR LEAVE TO FILE A SURREPLY AGAINST THIRD-PARTY DEFENDANT

STMICROELECTRONICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR

STAY with the Clerk of the Court using CM/ECF to be served upon the below listed in the

manner indicated:

**Via Hand Delivery**
Donald J. Detweiler
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

**Via Hand Delivery**
Thomas C. Grimm
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

**Via Hand Delivery**
David E. Moore
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899

**Via Electronic Mail**
Christopher M. Joe
Brian Carpenter
Russell J. De Palma
Greenberg Traurig LLP
2200 Ross Avenue, Suite 4200
Dallas, TX 75201
joec@gtlaw.com
carpenterb@gtlaw.com
depalmar@gtlaw.com

**Via Hand Delivery**
Steven J. Balick
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor Wilmington,
DE 19801

**Via Hand Delivery**
Adam W. Poff
Young Conaway Stargatt & Taylor
The Brandywine Bldg
1000 West Street, 17th floor
Wilmington, DE 19899

**Via Electronic Mail**
Stephen D. Milbrath
Robert H. Thornburg
Allen, Dyer, Doppelt, Milbrath & Christ, P.A.
225 South Orange Avenue, Suite 1401
P.O. Box 37941
Orlando, FL 32802
smilbrath@addmg.com
rthornburg@addmg.com

**Via Electronic Mail**
Bradford Lyerla
Jeffrey Dean
Scott Sanderson
Marshall Gerstein & Borun LLP
223 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606
blyerla@marshallip.com
jdean@marshallip.com
ssanderson@marshallip.com

Respectfully submitted,

By: /s/ Jeffrey B. Bove
    Jeffrey B. Bove, Esquire (#998)
    Dana K. Hammond (#4869)
    CONNOLLY BOVE LODGE &
    HUTZ, LLP
    1007 North Orange Street
    P.O. Box 2207
    Wilmington, DE  19899
    302-658-9141

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
317-634-3456

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED:  July 27, 2007
555006

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| REMY, INC.,<br>UNIT PARTS COMPANY, and<br>WORLDWIDE AUTOMOTIVE, LLC,<br><br>    Plaintiffs,<br><br>          v.<br><br>CIF LICENSING, LLC, D/B/A GE LICENSING,<br>WELLS MANUFACTURING, L.P.,<br>TADITEL US, INC., and<br>WETHERILL ASSOCIATES, INC.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. No. 06-785-***<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| WELLS MANUFACTURING, L.P.,<br><br>    Counterclaimant,<br><br>          v.<br><br>REMY, INC.,<br><br>    Counterdefendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| WELLS MANUFACTURING, L.P.,<br><br>    Third-Party Plaintiff,<br><br>          v.<br><br>STMICROELECTRONICS, INC.,<br><br>    Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**WELLS MANUFACTURING, L.P.'S SURREPLY AGAINST THIRD-PARTY
DEFENDANT STMICROELECTRONICS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS OR STAY**

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN  46204-5137
317-634-3456

Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE &
HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899
jbove@cblh.com
dhammond@cblh.com
302-658-9141

*Attorneys for Defendant, Counterclaimant, and*
*Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED:  July 26, 2007

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT..................................................................................................................2

1.    THE EXCEPTIONAL CIRCUMSTANCES DOCTRINE IS NOT GENERALLY
APPROPRIATE FOR PATENT INDEMNIFICATION SUITS .................................................2

    A.  When, As In the Instant Case, Contract Questions Require Resolution of the Issues of
    Patent Validity, Enforceability, and Infringement, Federal Courts Must Decide Those
    Questions.................................................................................................................2

    B.  Wells Need Not Prove Federal Question Jurisdiction ......................................................4

    C.  The Supreme Court Set Forth the Proper Standard for the
    Exceptional Circumstances Doctrine in the Context of Patent Disputes .........................5

2.    THERE ARE NO EXCEPTIONAL FACTUAL CIRCUMSTANCES JUSTIFYING
ABSTENTION .................................................................................................................6

    A.  The Texas Suit May Not Resolve the Dispute.................................................................6

    B.  Wells *Disputes* That the Texas State Action is Parallel....................................................8

CONCLUSION..............................................................................................................8

# TABLE OF AUTHORITIES

## *Cases*

*Christianson v. Colt Indus. Operating Corp.,*
  486 U.S. 800 (1988)...........................................................................1,4

*Colorado River Water Conservation Dist. v. U.S.*
  424 U.S. 800 (1976).................................................................. *passim*

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*
  438 F.3d 298 (3d Cir. 2006)..............................................................5,6

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minnesota,*
  804 F.2d 129 (Fed. Cir. 1986).............................................................1,3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983)...............................................................................6

*Ryan v. Johnson,* 115 F.3d 193 (3d Cir. 1997) ..............................................5

*Speedco, Inc. v. Estes,*
  853 F.2d 909 (Fed.Cir. 1988)............................................................2,3

*Spring City Corp v. Am Bldgs. Co,*
  193 F.3d 165, 171-72 (3d Cir. 1999) ..................................................5,6

*Trent v. Dial Med. of Florida, Inc.,*
  33 F.3d 217 (3d Cir. 1994)...................................................................5

## PRELIMINARY STATEMENT

Sections II.D. and II.E.3. of Third-Party Defendant STMicroelectronics's ("ST") reply

brief (hereinafter "Reply") cite a number of new cases and authorities, including *Intermedics*

*Infusaid, Inc. v. Regents of Univ. of Minnesota*, 804 F.2d 129 (Fed. Cir. 1986), *Christianson v.*

*Colt Indus. Operating Corp.*, 486 U.S. 800 (1988), and the Third Circuit Internal Operating

Procedures to support new legal arguments.  D.I. 46 at II.D., and II.E.3., pp. 10-12, 15-17.  ST

contends that these new cases demonstrate the proposition that the Court does not have subject

matter jurisdiction over the present action and that these new cases require application of the

*Colorado River* six-factor test to the present circumstances.  *Id.* at 10-12.  Conspicuously absent

from ST's case cites is a single example of a patent indemnity dispute.  The obvious question,

therefore, is whether patent indemnity disputes ought to be treated as patent infringement

disputes, or, as ST advocates, lumped in with non-patent infringement disputes.  Because patent

indemnity disputes, unlike the cases cited by ST, involve questions of validity and infringement,

it is more sensible to treat them as infringement disputes.

ST also argues that abstention is appropriate because action by this Court is moot,

ostensibly in view of the fact that the Texas State Action will have completely resolved it by

mid-November.  *Id.* at II.A., II.E.1., II.E.2., and II.E.5., pp.8-9, 13-15, 18.  In addition to being

irrelevant, even under the standard ST argues, this argument is predicated on a number of

unfounded assumptions.  One of these unfounded assumptions comprises a soon-to-be-obsolete

scheduling order in the Texas state action.  *Id.* at II.A., pp. 8-9.  Another is based on a mysterious

allegation that "the underlying patent case is pending in Texas where it will be tried and resolved

in full."  *Id.* at II.E.5., p. 18 (D.I. 47 establishes that the question of where the patent case will be

resolved is still a fully open question).

1

Contrary to ST's unfounded statement in Section II.C. that Third-Party Plaintiff Wells

Manufacturing, L.P. ("Wells") does not dispute that the Texas State Action and this case are

"parallel," Wells does (and clearly did in its Answering Brief) dispute ST's contention in this

regard. *Id.* at II.C., p. 9. Therefore, Wells requests that the Court deny ST's Motion to Dismiss

and permit the action to proceed in Delaware, which is the only forum in which all the relevant

parties are joined and all the federal and state issues can be heard without threat of inconsistent

results.

## ARGUMENT

## I.    THE EXCEPTIONAL CIRCUMSTANCES DOCTRINE IS NOT GENERALLY APPROPRIATE FOR PATENT INDEMNIFICATION SUITS

### A.    When, As In the Instant Case, Contract Questions Require Resolution of the Issues of Patent Validity, Enforceability, and Infringement, Federal Courts Must Decide Those Questions

State courts often hear cases involving patents, but this occurs only when the nature of

those cases is fundamentally a matter of state law. There are, therefore, a number of state cases

relating to disputes over the conveyance of rights in patents, such as to enforce payment for a

license or for reformation of the contract because one party withheld material information during

negotiations. *Speedco*, a case cited by ST in its Reply, is one such case. *Speedco, Inc. v. Estes*,

853 F.2d 909 (Fed. Cir. 1988). In *Speedco*, the purchaser of the patent failed to make a

scheduled payment, and the seller sued to enforce the payment. *Id.*

ST contends that such cases demonstrate that state court is an appropriate venue in the

context of a patent indemnification dispute like the one at bar. D.I. 46 at 10-12. However, suits

that are based on liability for infringing those patents (whether infringement or indemnification),

unlike suits relating to a conveyance, raise the issues of validity, enforceability, and

2

infringement, all of which are questions of federal patent law. In the cases ST cites, including *Speedco*, the issues of validity and infringement were simply not before the court. *See id.*

Presumably aware of its over reaching with this argument, ST cites *Intermedics Infusaid* as a case in which "the Federal Circuit has affirmed the stay, pursuant to the *Colorado River* doctrine, of an action seeking declaratory judgment of patent invalidity in favor of a state court contract action addressing the same issues." *Id.* at 11 (citing *Intermedics Infusaid, Inc.*, 804 F.2d at 132-33). This is simply wrong. The Federal Circuit in *Intermedics* explicitly based its ruling in part on the fact that "patent invalidity would not *actually* be litigated" in the state court action. *Intermedics Infusaid, Inc.*, 804 F.2d at 135 (emphasis in original). As the Federal Circuit noted, "[t]he Minnesota court was not called on to resolve matters of federal law." *Id.* Not even the declaratory judgment plaintiff in this case asserted that the patent was invalid; the dispute was simply whether the licensee was entitled to pay less than the contractually agreed price if, prior to the agreement, the licensor concealed information material to validity. Thus, the nature of the action was for reformation of a contract—a type of action traditionally resolved in state courts.

The opposite is true of the instant dispute. Unless ST prevails upon its contract interpretation theory, it will remain to be determined whether the patent at issue was valid and enforceable, whether sale or use of ST's voltage regulators infringed in violation of ST's warranty that they would not infringe, and whether such infringement (and, ergo, breach of warranty) harmed Wells. Although indemnification actions include a contract law component absent from pure patent infringement disputes, the mixture of state and federal law that such actions present confirms that the state law issues therein should be resolved in federal court, not the other way around.

3

**B.     Wells Need Not Prove Federal Question Jurisdiction**

ST cites *Christianson v. Colt Indus. Operating Corp.* for the proposition that federal question jurisdiction does not lie in non-patent infringement cases. D.I. 46 at 11 (citing *Christianson*, 486 U.S. at 811). However, *Christianson* actually supports Wells's position.

The question before the Supreme Court in *Christianson* was whether a complaint that "obliquely hinted" at a patent issue was sufficient to sustain federal question jurisdiction. *Christianson*, 486 U.S. at 800. As the Supreme Court noted in *Christianson*, "we held long ago that in order to demonstrate that a case is one 'arising under' federal patent law 'the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.'" *Id.* at 807-08. Under that standard, the cause of action in *Christianson* did not "arise under" federal patent law, but the instant patent indemnification dispute, which places the issues of patent validity and infringement squarely at issue, does.

Of course, Wells's position does not require it to prove so much. If this Court agrees that, under the test articulated in *Christianson*, the instant dispute "arises under" federal patent law, then jurisdiction is exclusive to federal courts. In that case, the Texas state court is not even permitted to hear the dispute. Wells does contend this, but all Wells must prove to defeat the instant motion is that, even presuming a state court may decide the case, there is no federal policy ground for preferring a state court over a federal court. Wells's contentions supporting this finding are contained in its Answering Brief (D.I. 45) at pages 14-20.

### C.    The Supreme Court Set Forth the Proper Standard for the Exceptional Circumstances Doctrine in the Context of Patent Disputes

ST argues that the standard for abstention set forth in *Spring City* is not good law, citing *IFC Interconsult* and the *Trent* decision rejected in *Ryan v. Johnson*.[1] D.I. 46 at 16-17 (citing *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165 (3d Cir. 1999); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298 (3d Cir. 2006); *Trent v. Dial Med. of Florida, Inc.*, 33 F.3d 217 (3d Cir. 1994)); *see Ryan v. Johnson*, 115 F.3d 193, 198-99 (3d Cir. 1997). This misses the point, since Third Circuit precedent cannot trump Supreme Court precedent. Furthermore, if state courts could resolve contract disputes that require them to decide matters of federal patent law, it would create a loophole that would undermine the Federal Circuit's charge to assure that patent law is enforced uniformly throughout the country. It is therefore likely that the Federal Circuit would apply its own standard for the exceptional circumstances doctrine in patent disputes raising issues of federal patent law, such as this one.

*Spring City* is useful, if persuasive, authority, because it is a well reasoned opinion. The same cannot be said of either *Trent* or *IFC Interconsult*. *Trent*, as the Third Circuit in *Ryan* notes, is inconsistent with the Supreme Court's standard set out in *Colorado River* and *Moses H. Cone* (which obviously are binding precedent). *Ryan*, 115 F.3d at 198-99 (stating that the court "cannot reconcile *Trent* with either the caselaw of this circuit, or *Colorado River* and *Cone*" and declining to apply *Trent* to decide the abstention issue before it). *IFC Interconsult* mentions the

---

[1]  ST, citing Third Circuit Internal Operating Procedures, contends that, under Third Circuit "tradition," in contravention of the usual legal standard, older precedent supersedes newer. D.I. 46 at 15-17. It seems difficult, in view of the opinion in *Spring City*, to believe that the *Spring City* court was operating according to any such rule. *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171-72 (3d Cir. 1999). However, the issue is moot, since Third Circuit precedent cannot contradict Supreme Court precedent. It is also interesting to note that, if ST's argument that older precedent supersedes newer in the Third Circuit holds, then *Spring City*, decided years earlier, cannot be dismissed lightly on the basis of the newer decision in *IFC Interconsult*.

standard only in passing, in footnote dicta; the court found abstention so inappropriate that it never even reached the six factor test. *IFC Interconsult, AG*, 438 F.3d at 307, n.4.

In any event, ST's criticism of what it calls the "seventh factor" contradicts the standard for abstention articulated by the Supreme Court. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). In *Moses H. Cone*, the Supreme Court rejected the notion that abstention should be determined through any "mechanical checklist." *Id.* at 2. Instead, it said, a court should employ "a careful balancing of the important factors . . . relevant to the decision as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* Furthermore, the Supreme Court noted: "By far the most important factor in our decision to approve the dismissal there was the 'clear federal policy . . . [of] avoidance of piecemeal adjudication of water rights in a river system, [citing Colorado River], as evinced in the McCarran Amendment." *Id.* at 16.

Thus, whether or not the federal policy interest is a prerequisite for even reaching the six factor test, as suggested in *Spring City*, or a "seventh factor," as ST characterizes it, ST credits Wells for an invention plainly made by the Supreme Court. The Third and Federal Circuits may employ doctrinal analysis of any stripe they like, but if their results conflict with the Supreme Court's pronouncements, then those cases are not good law.

## II.    THERE ARE NO EXCEPTIONAL FACTUAL CIRCUMSTANCES JUSTIFYING ABSTENTION

### A.    The Texas Suit May Not Resolve the Dispute

ST appears to be arguing that this court should abstain because the Texas suit is far more advanced than this one, and will have completely resolved this dispute by mid-November.[2] First,

---

[2] ST contends that Wells should not be permitted surreply on this point because ST gave "fair notice" that it intended to rely upon the scheduling order in the Texas action. That, of course, is

6

it is not at all clear that the Texas action will resolve this dispute. Wells has filed a Motion for Stay in the Texas action for precisely the reasons discussed in Wells's Answering Brief. Exhibit B, Defendant Wells Manufacturing, L.P.'s Motion for Stay (with exhibit). The Texas court did not have jurisdiction to accept ST's declaratory judgment action because ST could not have had any real apprehension of suit before Remy filed its suit against Wells.[3]

Furthermore, the Texas state court cannot decide whether the patent at issue was infringed (whether by Remy, Wells, or ST). ST's contention that it can resolve the dispute is therefore predicated on the assumption that it has no obligation to indemnify, regardless of its role in the alleged underlying infringement. ST chose to put that issue before this Court with its Opening Brief. Unless the Court agrees that ST has no obligation to indemnify under any set of facts, even if ST sold Wells voltage regulators that infringed the patent in suit, the Texas court cannot resolve this dispute.

Furthermore, even if the Texas case does proceed, it is not substantially further advanced than the instant case. So far, the parties have merely exchanged initial disclosures, and ST, subsequent to its filing of the Motion to Dismiss or Stay in the present case, sent some document requests to Wells. Currently before the Texas court are Wells's Motion for Stay and a Jury Demand, which places the Texas court in parity with this Court in terms of deciding which court will proceed with the case. Exhibit B, Defendant Wells Manufacturing, L.P.'s Motion for Stay (with exhibit); Exhibit C, Defendant Wells Manufacturing, L.P.'s Demand for Jury Trial.

---

not the relevant standard. Wells was not obliged to anticipate in its response new arguments that ST might raise in its reply, even if such arguments cite to evidence that ST indicated it might choose to rely upon.
[3] Notwithstanding Remy's decision to give ST a head start in the race to the courthouse by advising ST of Remy's intent to sue Wells before Remy informed Wells, ST's declaratory judgment action could not possibly have been ripe while Wells's underlying cause of action itself remained unripe.

Whether or not the Motion for Stay is granted by the Texas state court, the Jury Demand will require that court to reset the trial date during a time when a jury can be empanelled.

ST cites no authority for the proposition that any court, federal or otherwise, should defer to another court simply because that other court adopts a faster scheduling order. It is especially inappropriate to consider a faster scheduling order when it is doubtful that that schedule will stand.

**B.    Wells *Disputes* That The Texas State Action Is Parallel**

ST incorrectly claims in its response that Wells does not dispute that the Texas State Action is parallel to the instant suit. Although complete identity of parties may not be a prerequisite for parallelism,[4] Remy and GE Licensing are important parties to the dispute, and their absence from the Texas State Action renders it unparallel. Because ST, Wells, and Remy all participated in the production of the allegedly infringing alternators, their liability to one another and to GE Licensing is best resolved in a single action, rather than in two or three piecemeal actions. Wells cited this as grounds for denying ST's Motion in Wells's Answering Brief. D.I. 45 at 20-21. ST claims not to understand this, yet it also argues that Wells's position is "nonsensical" unless Wells contends that the cases are parallel.[5] In any event, there should be no further confusion: the absence of Remy and GE Licensing renders the Texas action not parallel, and, therefore, abstention is not appropriate.

**CONCLUSION**

It is totally inappropriate to apply the *Colorado River* doctrine in this case. There is no federal policy interest relevant to this case that favors resolution of this case in state court rather

---

[4] ST's only authority for this proposition is from the Seventh Circuit Court of Appeals. *See* D.I. 46 at 14.
[5] *Id.*

than federal court. The opposite is true, since there is a strong federal policy interest in having federal patent matters litigated in federal court. The Texas case and this case are not parallel, and there are no exceptional circumstances justifying this Court's abstention. For at least these reasons, therefore, there is no good reason to create multiple suits in multiple jurisdictions from the single set of operative facts presently before this Court. The Court should deny ST's Motion in its entirety and permit Wells's claims to proceed in federal court.

Respectfully submitted,

By: /s/ Jeffrey B. Bove

OF COUNSEL:                                  Jeffrey B. Bove, Esquire (#998)
Holiday W. Banta                             Dana K. Hammond (#4869)
WOODARD, EMHARDT,                            CONNOLLY BOVE LODGE &
MORIARTY, MCNETT & HENRY LLP                 HUTZ, LLP
111 Monument Circle, Suite 3700              1007 North Orange Street
Indianapolis, IN  46204-5137                 P.O. Box 2207
317-634-3456                                 Wilmington, DE  19899
                                             jbove@cblh.com
                                             dhammond@cblh.com
                                             302-658-9141

*Attorneys for Defendant, Counterclaimant, and
Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED:  July 27, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2007, I electronically filed the foregoing

WELLS MANUFACTURING, L.P.'S SURREPLY AGAINST THIRD-PARTY DEFENDANT

STMICROELECTRONICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS OR

STAY with the Clerk of the Court using CM/ECF to be served upon the below listed in the

manner indicated:

**Via Hand Delivery**
Donald J. Detweiler
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
**Via Hand Delivery**
Thomas C. Grimm
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
**Via Hand Delivery**
David E. Moore
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899

**Via Electronic Mail**
Christopher M. Joe
Brian Carpenter
Russell J. De Palma
Greenberg Traurig LLP
2200 Ross Avenue, Suite 4200
Dallas, TX 75201
joec@gtlaw.com
carpenterb@gtlaw.com
depalmar@gtlaw.com

**Via Hand Delivery**
Steven J. Balick
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor Wilmington,
DE 19801

**Via Hand Delivery**
Adam W. Poff
Young Conaway Stargatt & Taylor
The Brandywine Bldg
1000 West Street, 17th floor
Wilmington, DE 19899
**Via Electronic Mail**
Stephen D. Milbrath
Robert H. Thornburg
Allen, Dyer, Doppelt, Milbrath & Christ, P.A.
225 South Orange Avenue, Suite 1401
P.O. Box 37941
Orlando, FL 32802
smilbrath@addmg.com
rthornburg@addmg.com
**Via Electronic Mail**
Bradford Lyerla
Jeffrey Dean
Scott Sanderson
Marshall Gerstein & Borun LLP
223 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606
blyerla@marshallip.com
jdean@marshallip.com
ssanderson@marshallip.com

Respectfully submitted,

By: /s/ Jeffrey B. Bove

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT,
MORIARTY, MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN 46204-5137
317-634-3456

Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE &
HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
302-658-9141

*Attorneys for Defendant, Counterclaimant, and
Third-Party Plaintiff Wells Manufacturing, L.P.*

DATED: July 27, 2007
555006

11

# EXHIBIT B
# PART 1

**CAUSE NO. 06-11257**

FILED

2007 JUL 20  AM 11: 3

| | | |
|---|---|---|
| STMICROELECTRONICS | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| WELLS MANUFACTURING | § | 134th JUDICIAL DISTRICT |
| CORP., KIMBALL | § | |
| INTERNATIONAL, INC., | § | |
| KIMBALL ELECTRONICS, INC., | § | |
| AND WITHERILL | § | |
| ASSOCIATES, INC. | § | |
| | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT WELLS MANUFACTURING L.P.'S MOTION FOR STAY

TO THE HONORABLE ANNE ASHBY, DISTRICT COURT JUDGE:

Wells Manufacturing, L.P., ("Wells") Defendant in the above entitled and numbered cause, hereby files its Motion For Stay, and in support thereof would respectfully show the Court the following:

I.

1.    Wells requests that the Court stay this action pending the outcome of related litigation in the United States District Court of Delaware and the Eastern District of Texas.  A stay is appropriate in light of the fact that the outcome of this case is dependent on questions of fact and patent law which are the within the purview of these federal courts.  In addition, Wells has filed claims for indemnification and breach of contract against Plaintiff in the related litigation.

2.    This is a suit by STMicroelectronics ("Plaintiff") for declaratory judgment. Plaintiff seeks a declaration that it has no obligation to defend or indemnify Wells in a patent infringement suit filed by CIF Licensing, LLC d/b/a GE Licensing ("GE

Licensing") against Remy International, Inc ("Remy") in the Eastern District of Texas. (the "Texas Patent Lawsuit"), or any other litigation. See Exhibit A to the Affidavit of Elaine Polemenakos ("Polemenakos Affidavit"), attached hereto as Exhibit 1 and incorporated by reference.

3.    In the Texas Patent Lawsuit, GE Licensing is suing Remy for patent infringement related to voltage regulator systems for automobile alternators. Because Remy had purchased certain voltage regulators from Wells, Remy notified Wells of its intent to seek indemnity. Wells, which had purchased the voltage regulators from Plaintiff, notified Plaintiff of Remy's claim.

4.    As a result, Plaintiff filed its Original Petition for Declaratory Judgment on November 1, 2006 (the "Indemnity Lawsuit"), seeking a declaration that it is not required to defend or indemnify Wells in any lawsuit. See Polemenakos Affidavit, Exhibit B.

5.    Remy has contested personal jurisdiction in the Eastern District of Texas, and filed a similar patent action against GE Licensing in federal court in Delaware (the "Delaware Lawsuit") on December 21, 2006. See Polemenakos Affidavit, Exhibit C. Remy also named Wells as a party to the Delaware Lawsuit and sought indemnification from Wells.

6.    As part of its Answer to the Delaware Lawsuit, Wells filed a Third-Party Complaint against Plaintiff, seeking defense and indemnification pursuant to their contract. Wells also sued Plaintiff for breach of contract. See Polemenakos Affidavit,

Exhibit D.

7.     While it is true that the Indemnity Lawsuit was filed before the Delaware Action, the sweeping nature of the judgment Plaintiff seeks demands that several critical fact issues be determined before a fair ruling can be made in this case.  These fact issues include without limitation, 1) whether the patent infringement claim is being made against the parts provided to Plaintiff, which patent infringement claim is being made by Wells in the Delaware Lawsuit and 2) whether the parts were made according to the purchaser's specifications or solely according to Plaintiff's designs. Plaintiff itself raised this issue in its Response to Wells' Request for Rule 194 Disclosures.  See Polemenakos Affidavit, Exhibit E.

8.     In addition, determination of Plaintiff's obligations under the contract with Wells may depend on the resolution of a substantial question of patent law.  However, the federal courts have exclusive jurisdiction over patent claims. 28 U.S.C. §1338.

9.     The claims for which Wells seeks indemnification and defense are intricately entwined with the infringement dispute between GE Licensing and Remy.   The Indemnity Lawsuit does not involve all of the parties to this dispute.  If the patent at issue in the Delaware Lawsuit and the Texas Patent Lawsuit is found to be infringed, then the responsibilities of Remy, Wells and Plaintiff to GE Licensing and to each other will be determined not simply by their contractual obligations, but also by who is the shared production process (from Plaintiff to Wells to Remy to the customer) performed the step resulting in the infringement.  The determination of Plaintiff's responsibilities under the contract will likely require resolution of at least some of the

legal and factual questions related to the patent infringement claims before defense or indemnity issues can be adequately and fairly addressed. These issues are already before the federal courts in Delaware and the Eastern District of Texas. Therefore, in the interests of justice and judicial economy, this case should be stayed until the completion of the Delaware and Texas Patent Lawsuits.

10.    Wells requests an oral hearing on this Motion for Stay. Pursuant to Dallas County District Court's Local Rules, Wells will present a brief in support of this Motion for Stay no less than three business days prior to the hearing.

## PRAYER

WHEREFORE, Defendant Wells Manufacturing, L.P. respectfully prays that this cause be stayed, and that Wells have such other and further relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

**SESSIONS LAMBERT SELWYN, LLP**

William Lewis Sessions,
Texas Bar No. 18041500
Elaine Polemenakos
Texas Bar No. 24027622
1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
Sessions Direct Line: 214-217-8855
Sessions Direct Fax: 214-217-8856
Polemenakos Direct Line: 214-217-8050
Polemenakos Direct Fax: 214-217-8851

**ATTORNEYS FOR DEFENDANT
WELLS MANUFACTURING L.P.**

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies to the Court that she spoke with counsel for Plaintiff regarding the substance of this motion and Plaintiff is opposed to the filing of the Defendant Wells Manufacturing L.P.'s Motion for Stay.

Elaine Polemenakos

## CERTIFICATE OF SERVICE

I certify that on this date a true and correct copy of Defendant Wells Manufacturing, L.P.'s Motion for Stay was served upon counsel of record in accordance with the Texas Rules of Civil Procedure as detailed below:

*Certified Mail # 7160 3901 9849 8642 7840*
Thomas W. Craddock
McGuire, Craddock & Strother, P.C.
500 North Akard, Suite 3550
Dallas, Texas 75201

7/18/07
Date
7484

Elaine Polemenakos

<u>CAUSE NO. 06-11257</u>

| | | |
|---|---|---|
| STMICROELECTRONICS | § | IN THE DISTRICT COURT |
|     Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| WELLS MANUFACTURING | § | |
| CORP., KIMBALL | § | 134th JUDICIAL DISTRICT |
| INTERNATIONAL, INC., | § | |
| KIMBALL ELECTRONICS, INC., | § | |
| AND WITHERILL | § | |
| ASSOCIATES, INC. | § | |
| | § | |
|     Defendants. | § | DALLAS COUNTY, TEXAS |

### AFFIDAVIT OF ELAINE POLEMENAKOS

STATE OF TEXAS      )
                         )
COUNTY OF DALLAS   )

BEFORE ME, the undersigned authority, on this date personally appeared Elaine Polemenakos, to me well known, and who, after being by me first duly sworn, upon oath, deposed and stated as follows:

1.    My name is Elaine Polemenakos. I am capable of making this Affidavit and the facts stated in this Affidavit are within my personal knowledge and are true and correct. I am over the age of 21 years. I have never been convicted of a felony or other crime involving moral turpitude and am competent in all respects to give the testimony contained in this Affidavit.

2.    I am an attorney admitted to practice in the State of Texas and am an associate at the law firm of Sessions Lambert Selwyn, LLP, attorneys for Defendant Wells Manufacturing, L.P., in the above-entitled and numbered cause (the "Lawsuit"). This Affidavit is given in support of Defendant's Motion for Stay.

3.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's First Amended Complaint in CIF Licensing, LLC d/b/a GE Licensing v. Denso Corporation et al, Case No. 2:06cv345 in the United States District Court of the Eastern District Of Texas, Marshall Division.



4.　　Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Petition For Declaratory Judgment filed in the instant case.

5.　　Attached hereto as Exhibit C is a true and correct copy of the Complaint filed by in Remy, Inc. et al v. CIF Licensing LLC, d/b/a GE Licensing et al, Civil Action No: 06-785 in the United States District Court for the District of Delaware.

6.　　Attached hereto as Exhibit D is a true and correct copy of Wells Manufacturing Corp.'s Answer, Counterclaims and Third Party-Complaint in Remy, Inc. et al v. CIF Licensing LLC, d/b/a GE Licensing et al, Civil Action No: 06-785 in the United States District Court for the District of Delaware.

7.　　Attached hereto as Exhibit E is a true and correct copy of Plaintiff's Response to Defendant Wells Manufacturing Corp.'s Request for Disclosures served by Plaintiff in the instant case.

FURTHER AFFIANT SAYETH NOT.

_____
Elaine Polemenakos

SUBSCRIBED AND SWORN TO before me by Elaine Polemenakos this 18th day of July, 2007.

_____
Notary Public in and for the State of Texas

My Commission Expires:

_____



BROOKE ATCHESON
Notary Public
STATE OF TEXAS
My Comm Exp Feb 22 2011

AFFIDAVIT OF ELAINE POLEMENAKOS – PAGE 2 OF 2
Cause No. 06-11257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CIF Licensing, LLC, d/b/a GE Licensing, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 2:06cv345  DF |
| DENSO CORPORATION, Remy International Inc., Valeo, Inc., and Valeo Sistemas Electricos S.A. DE C.V. | § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff CIF Licensing, LLC, d/b/a GE Licensing ("GE Licensing"), brings this action against Defendants DENSO CORPORATION ("DENSO"), Remy International, Inc. ("Remy"), Valeo, Inc. ("Valeo Inc"), and Valeo Sistemas Electricos S.A. de C.V. ("Valeo CV"), alleging as follows:

### The Parties

1.     Plaintiff GE Licensing is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Princeton, New Jersey 08540. GE Licensing is the owner of all right, title, and interest in and to United States patent No. 4,733,159 (the "Patent") by assignment, with the right to recover damages for all past infringement of the Patent. The Patent was duly and legally issued on March 22, 1988 by the United States Patent and Trademark Office. The invention of the Patent contains a voltage regulator system for automobile alternators, including a unique high frequency charge pump. A copy of the Patent is attached hereto as Exhibit A.



EXHIBIT
A

2.    Upon information and belief, Defendant DENSO is a Japanese corporation with its principal place of business and home office at 1-1 Showa-cho, Kariya Aichi 448-8661, Japan. Although DENSO does business in Texas by, among other things, committing acts that constitute the tort of infringement of the Patent (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, DENSO does not maintain a regular place of business in Texas, has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, DENSO may be served with process by serving the Texas Secretary of State, who is deemed to be DENSO's agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

3.    Upon information and belief, Defendant Remy is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business and home office at 2902 Enterprise Drive, Anderson, Indiana 46013.. Although Remy does business in Texas by, among other things, committing acts that constitute the tort of infringement of the Patent (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, Remy does not maintain a regular place of business in Texas, has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, Remy may be served with process by serving the Texas Secretary of State, who is deemed to be Remy's agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

4.    Upon information and belief, Defendant Valeo Inc is a corporation organized and existing under the laws of the state of New York, with its principal place of business and home office at 3000 University Drive, Auburn Hills, Michigan 48326. Upon information and belief, Valeo Inc maintains branch offices in El Paso, TX, Fort Worth, TX, and Pharr, TX. Valeo Inc also does business in Texas by, among other things, committing acts that constitute the tort of

2

Case 1:06-cv-00785-GMS    Document 50-3    Filed 07/27/2007    Page 12 of 31

Case 1:06-cv-00785-***    Document 38-2    Filed 06/20/2007    Page 4 of 45
Case 2:06-cv-00345-DF    Document 12-1    Filed 10/20/2006    Page 3 of 10

infringement of the Patent and recruiting Texas residents for employment (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042). Valeo Inc has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, Valeo Inc may be served with process by serving the person in charge of its business in Texas. TEX. CIV. PRAC. & REM. CODE § 17.043.

    5.    Upon information and belief, Defendant Valeo CV is a Mexican corporation with its principal place of business and home office at Avenida Circuito Mexico No. 160, Z.I. Parque Tres Naciones, 78395 San Luis Potosi, Mexico. Although Valeo CV does business in Texas by, among other things, committing acts that constitute the tort of infringement of the Patent (*see*, TEX. CIV. PRAC. & REM. CODE § 17.042), upon information and belief, Valeo CV does not maintain a regular place of business in Texas, has not registered to do business in Texas, and does not maintain a designated agent for service of process in Texas. Therefore, Valeo CV may be served with process by serving the Texas Secretary of State, who is deemed to be Valeo CV's agent for service of process. TEX. CIV. PRAC. & REM. CODE § 17.044.

## Jurisdiction and Venue

    6.    This action for infringement arises under the patent laws of the United States, Title 35, United States Code, including § 271. This Court has exclusive jurisdiction under Title 28, United States Code, particularly § 1338(a).

    7.    Defendant DENSO has committed the tort of patent infringement in the Eastern District. Defendant DENSO has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District. Accordingly, Defendant DENSO resides in the Eastern District as the term "reside" is defined in

3

28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

     8.    Defendant DENSO is subject to personal jurisdiction in Texas and this District.

     9.    Defendant Remy has committed the tort of patent infringement in the Eastern District. Defendant Remy has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District. Accordingly, Defendant Remy resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and 1400(b).

     10.    Defendant Remy is subject to personal jurisdiction in Texas and this District.

     11.    Defendant Valeo Inc has committed the tort of patent infringement in the Eastern District. Defendant Valeo Inc has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District. Accordingly, Defendant Valeo Inc resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

     12.    Defendant Valeo Inc is subject to personal jurisdiction in Texas and this District.

     13.    Defendant Valeo CV has committed the tort of patent infringement in the Eastern District. Defendant Valeo CV has sold and shipped into the Eastern District products that infringe on Plaintiff GE Licensing's Patent and/or has sold such products under circumstances in which it was reasonably foreseeable that the products would be shipped into the Eastern District.

4

Accordingly, Defendant Valeo CV resides in the Eastern District as the term "reside" is defined in 28 U.S.C. § 1391(c), and, therefore, venue in the Eastern District is proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

14. Defendant Valeo CV is subject to personal jurisdiction in Texas and this District.

**COUNT I**
(Patent Infringement – DENSO)

**Defendant DENSO's Activities**

1-14. Plaintiff hereby repeats and incorporates by reference ¶¶1-14 as ¶¶1-14 of this Count I.

15. Defendant DENSO operates as a manufacturer and wholesaler of automotive motor vehicle supplies and parts, including alternators containing voltage regulator units. Defendant DENSO sells such supplies and parts to entities engaged in the automobile industry in North America.

16. On information and belief, the above-mentioned activities by Defendant DENSO have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

17. Plaintiff GE Licensing is the owner of all right, title and interest in and to the Patent with the right to recover damages for all past infringement of the Patent.

18. On information and belief, DENSO is infringing the Patent willfully and with knowledge. On information and belief, DENSO will continue infringing the Patent unless enjoined by this Court.

19. As a result of DENSO's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

5

20.     DENSO's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

## COUNT II
(Patent Infringement – Remy)

### Defendant Remy's Activities

1-20.   Plaintiff hereby repeats and incorporates by reference ¶¶1-20 of Count I as ¶¶1-20 of this Count II.

21.     Defendant Remy operates as a manufacturer and re-manufacturer of original equipment and aftermarket electrical components for automobiles, light trucks, medium and heavy duty trucks and other heavy duty vehicles, including alternators containing voltage regulator units. Defendant Remy sells such components to original equipment manufacturers and dealers, automotive retail chains and warehouse distributors in North America, Europe, Latin America, and Asia-Pacific.

22.     On information and belief, the above-mentioned activities by Defendant Remy have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

23.     On information and belief, Remy is infringing the Patent willfully and with knowledge. On information and belief, Remy will continue infringing the Patent unless enjoined by this Court.

24.     As a result of Remy's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

25.     Remy's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

6

<u>COUNT III</u>
(Patent Infringement – Valeo Inc)

<u>Defendant Valeo Inc's Activities</u>

1-25.   Plaintiff hereby repeats and incorporates by reference ¶1-25 of Count II as ¶1-25 of this Count III.

26.     Defendant Valeo Inc operates as a manufacturer of automotive motor vehicle parts, including alternators containing voltage regulator units. Valeo Inc sells such parts to entities engaged in the automobile industry, consisting of various divisions of vehicle manufacturers in North America and Europe.

27.     On information and belief, the above-mentioned activities by Defendant Valeo Inc have amounted to infringement, directly, by inducement, and/or by contributing to the infringement, of the Patent.

28.     On information and belief, Valeo Inc is infringing the Patent willfully and with knowledge. On information and belief, Valeo Inc will continue infringing the Patent unless enjoined by this Court.

29.     As a result of Valeo Inc's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

30.     Valeo Inc's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

<u>Count IV</u>
(Patent Infringement Valeo CV)

<u>Defendant Valeo CV's Activities</u>

31.     Plaintiff hereby repeats and incorporates by reference 1-31 of Count III as 1-31 of this Count IV.

7

32.  Defendant Valeo CV operates as a manufacturer of automotive motor vehicle parts, including alternators containing voltage regulator units. Valeo CV sells such parts to entities engaged in the automobile industry, consisting of various divisions of vehicle manufacturers in North America and Europe.

33.  On information and belief, the above-mentioned activities by Defendant Valeo CV have amounted to infringement, directly, by inducement, and/or by contributing to the infringement of the Patent.

34.  On information and belief, Valeo CV is infringing the Patent willfully and with knowledge. On information and belief, Valeo CV will continue infringing the Patent unless enjoined by this Court.

35.  As a result of Valeo CV's infringing conduct, GE Licensing has been damaged and will continue to suffer irreparable harm without the issuance of an injunction by this Court.

36.  Valeo CV's willful infringement of the Patent and other conduct make this an exceptional case under 35 U.S.C. § 285.

### Requested Relief

WHEREFORE, Plaintiff GE Licensing prays that this Court enter judgment.

a.  Finding that Defendants DENSO, Remy, Valeo Inc, and Valeo CV have infringed, induced others to infringe and/or committed acts of contributing infringement of the Patent under 35 U.S.C. § 271.

b.  Enjoining Defendants DENSO, Remy, Valeo Inc, and Valeo CV and their subsidiaries, agents, officers and employees, and all others acting in concert with them, from infringing, inducing infringement, and contributing to the infringement of the Patent.

c.  Ordering Defendants DENSO, Remy, Valeo, and Valeo CV to award GE Licensing an amount that adequately compensates GE Licensing for Defendants' infringement,

8

including lost profits (and/or a reasonably royalty), treble damages, court costs, pre-judgment interest, post-judgment interest and attorney's fees under 35 U.S.C. §§ 284 and 285.

    d.    Granting GE Licensing such other and further relief as is just.

### Demand for Jury Trial

Plaintiff GE Licensing hereby demands a jury trial on all claims and issues triable of right by a jury.

Dated October 17, 2006

Respectfully submitted,

/s/ Bradford P. Lyerla (by permission Otis Carroll)
Bradford P. Lyerla, Lead Attorney
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-mail: blyerla@marshallip.com

OF COUNSEL:

Anthony G. Sitko
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-Mail: asitko@marshallip.com

Jeffrey H. Dean
Marshall, Gerstein & Borun LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
Tel: (312) 474-6300
Fax: (312) 474-0448
E-Mail: jdean@marshallip.com

9

CAUSE NO. 06-11253

**FILED**
2006 NOV -1 AM 9: 33
JIM HAMLIN
DISTRICT CLERK
DALLAS CO. TEXAS

STMICROELECTRONICS, INC., §

    Plaintiff, §

v. §

WELLS MANUFACTURING CORP., §
KIMBALL INTERNATIONAL, INC. §
AND KIMBALL ELECTRONICS, INC., §

    Defendants. §

IN THE DISTRICT COURT OF

DALLAS COUNTY, TEXAS

G-134th _____ JUDICIAL DISTRICT

## PLAINTIFF'S ORIGINAL PETITION FOR DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

    Plaintiff STMicroelectronics, Inc. ("ST") files this its Original Petition for Declaratory Judgment against Wells Manufacturing Corp. ("Wells"), Kimball International, Inc. ("Kimball International") and Kimball Electronics, Inc. (Kimball Inc."), (collectively, "Defendants"), and in support would respectfully show the following:

**I.**

### DISCOVERY CONTROL PLAN

1.     Plaintiff ST intends to conduct discovery under Level 2, Tex.R.Civ.P. 190.3.

PLAINTIFF'S ORIGINAL PETITION FOR
DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

Page 1


EXHIBIT
B

II.

## PARTIES, VENUE AND JURISDICTION

2.    Plaintiff ST is a Delaware corporation authorized to do business in Texas with its principal place of business in Carrollton, Dallas County, Texas.

3.    Defendant Wells is a Wisconsin corporation with its principal place of business located at 26 S. Brooke Street, Fond Du Lac, Wisconsin 54935-4007. Defendant Wells is doing business in the State of Texas, but has not designated a registered agent for service in Texas. Accordingly, pursuant to TEX. CIVIL PRACTICE AND REMEDIES CODE ANN. § 17.044, more commonly known as the *Long Arm Statute*, as well as Section 17.045 of the TEX. CIVIL PRACTICE AND REMEDIES CODE ANN., service may be had by serving the Secretary of State, who can then forward said Citation and Petition to Defendant Wells' principal place of business at 26 S. Brooke Street, Fond Du Lac, Wisconsin 54935-4007.

4.    Defendant Kimball International is an Indiana corporation doing business in the State of Texas, and may be served with process by serving its Registered Agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

5.    Defendant Kimball Inc. is a Delaware corporation doing business in the State of Texas, and may be served with citation and process by serving its registered agent, National Registered Agents, Inc., 1514 Sidney Baker Street, Kerrville, Texas 78028.

6.    Jurisdiction is proper under the Texas Uniform Declaratory Judgments Act (the "Act") in that there is a justiciable controversy about the contractual indemnity rights between ST and Defendants and venue is proper in this Court because all or part of the transactions at issue arose or occurred in whole or in part in Dallas County, Texas.

III.

## FACTUAL BACKGROUND

7.    ST is a manufacturer and seller of semiconductor chips. In connection with its sales transactions, ST incorporates its terms and conditions of sale, including paragraph 13. Paragraph 13 in pertinent part states as follows:

(b)    With respect to products manufactured solely to Seller's designs and specifications and which are not modified by Buyer or used other than in the manner for which they are designed, Seller will defend any suit or proceeding brought against Buyer insofar as it is based upon a claim that any such product furnished to Buyer hereunder, by itself and not in combination with other items not manufactured solely to Seller's designs and specifications, constitutes infringement of any duly issued United States or foreign patent, provided that Seller is notified promptly of such claim in writing and given complete authority, information and assistance (at Seller's expense) for the defense of same, and Seller shall pay all damages and costs not to exceed the aggregate sum paid to Seller by Buyer for the infringing product.

(c)    The obligation of Seller under subparagraph (b) is conditioned upon Buyer's agreement that if a product or the operation thereof becomes, or in Seller's opinion is likely to become, the subject of such a suit or proceeding, Buyer will permit Seller, at its sole discretion and at its own expense either (1) procure for Buyer the right to continue to use such product, (2) replace such product with a noninfringing product, (3) modify such product so it becomes noninfringing, or (4) redeem such product and refund the purchase price and the transportation costs thereof.

(d)    The sale of products or any parts thereof hereunder confers upon Buyer no license, express or implied, under any patent rights of Seller.

(e)    The forgoing states the sole and exclusive liability of the parties hereto for patent infringement and is in lieu of all warranties or other obligations, express, implied, or statutory, with respect thereto.

Pursuant to paragraph 13, ST may, under certain circumstances, have indemnity obligations to its buyers. On October 21, 2005 and January 6, 2006, ST was notified by Defendants (or their affiliates) that Defendants were invoking their contractual indemnity rights with respect to

PLAINTIFF'S ORIGINAL PETITION FOR
DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

Page 3

accusations that Defendants and/or their customers had infringed upon the patent rights of CIF Licensing, LLC d/b/a GE Licensing with respect to certain electronic components manufactured and supplied by Defendants and/or their customers. Remy International, Inc. ("Remy") manufactures, markets and sells automotive electronic components, including alternators. Defendants, *inter alia*, were, and upon information and belief, remain suppliers to Remy. ST advised Defendants that it was unwilling to provide a defense or agree to indemnification and that it owed no indemnification obligations to Defendants because any infringement claim was not being made directly or solely against ST's chip and that such chip was manufactured to the specifications of Defendants and/or their customers. On October 17, 2006, ST was notified by Remy that it intended to name its suppliers, including the Defendants, in a pending lawsuit seeking to have Defendants indemnify Remy based on the alleged patent infringement and that "those suppliers may also choose to bring STMicroelectronics into the litigation." Thereafter, on October 30, 2006, Kimball International renewed its demand that ST indemnify it or it would name ST in a lawsuit. Thus, litigation involving ST appears to be imminent.

IV.

## REQUEST FOR DECLARATORY RELIEF

8.    ST seeks a declaration that it has no contractual obligation to indemnify or defend Defendants or any party claiming by, through or under Defendants, pursuant to ST's agreements with Defendants, including the above referenced terms and conditions of sale, and that ST has no liability for any judgment which may be assessed against Defendants in any litigation involving these issues.

PLAINTIFF'S ORIGINAL PETITION FOR
DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

V.

## REQUEST FOR ATTORNEYS' FEES

9.    Pursuant to Section 37.009 of the TEX. CIVIL PRACTICE AND REMEDIES CODE, ST seeks an award of the reasonable and necessary attorneys' fees that it incurs herein.

VI.

## CONDITIONS PRECEDENT

10.    All conditions precedent have been performed or have occurred as required by Rule 54 of the TEXAS RULES OF CIVIL PROCEDURE.

VII.

## REQUEST FOR DISCLOSURE

11.    Under TEXAS RULES OF CIVIL PROCEDURE 194, Plaintiff requests that Defendants disclose, within fifty (50) days of the service of this request, the information or material described in Rule 194.2 (a) - (j).

VIII.

## PRAYER

12.    ST asks that Defendants be cited to appear and answer and that the Court declare that ST has no contractual obligation to indemnify or defend Defendants or any party claiming by, through or under Defendants pursuant to ST's agreements with Defendants and that ST has no liability for any judgment which may be assessed against Defendants or any party claiming by, through or under Defendants in any litigation involving these issues.  ST further asks for its attorneys' fees and costs of suit, as well as all other relief, at law or in equity, to which ST may show itself justly entitled.

PLAINTIFF'S ORIGINAL PETITION FOR
DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

**Page 5**

Respectfully submitted,

*[signature: OTW Craddock]*

Thomas W. Craddock
Texas Bar No. 04695800
Wm. David Simmons
Texas Bar No. 18374700

McGuire, Craddock & Strother, P.C.
500 North Akard – Suite 3550
Dallas, Texas 75201
Phone: (214) 954-6800
Facsimile: (214) 954-6868

*Attorneys for STMicroelectronics, Inc.*

PLAINTIFF'S ORIGINAL PETITION FOR
DECLARATORY JUDGMENT AND REQUEST FOR DISCLOSURE

FORM NO. 353-4—CITATION

# THE STATE OF TEXAS

To:

WELLS MANUFACTURING CORPORATION
BY SERVING THE SECRETARY OF STATE
OFFICE OF THE SECRETARY OF STATE
CITATIONS UNIT - P.O. BOX 12079, AUSTIN, TX, 78711

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and ORIGINAL petition, a default judgment may be taken against you.

Your answer should be addressed to the clerk of the 134th District Court at 600 Commerce Street, Dallas, Texas 75202.

Said PLAINTIFF being STIMICROELECTRONICS INC

Filed in said Court  ON THIS THE 1ST DAY OF NOVEMBER, 2006 against
WELLS MANUFACTURING CORPORATION

For suit, said suit being numbered  DC-06-11257  the nature of which demand is as follows:
Suit On  OTHER (CIVIL)  etc.
as shown on said petition      , a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: JIM HAMLIN, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this the 1st day of November, 2006
ATTEST: JIM HAMLIN
Clerk of the District Courts of Dallas, County, Texas

_____, Deputy
CARROLL JONES

RECEIVED
SECRETARY OF STATE
NOV 03 2006
1:05p
CITATIONS UNIT

128320

ATTY. (SOS)
_____ 20 ___

RECEIVED THIS __3__ DAY OF _Nov_
BRUCE ELIFANT
CONSTABLE, PREC. 1, HARRIS COUNTY, TEXAS
BY _Edward Roach_
DEPUTY

# CITATION

No.: DC-06-11257

STIMICROELECTRONICS INC
VS.
WELLS MANUFACTURING
CORPORATION, ET AL.

ISSUED
ON THIS THE 1ST DAY OF
NOVEMBER, 2006

JIM HAMLIN
Clerk District Courts,
Dallas County, Texas

By CARROLL JONES, Deputy

Attorney for : Plaintiff
THOMAS W CRADDOCK
500 NORTH AKARD STREET
SUITE 3550 LB 65
DALLAS     TX  75201
214-954-6800 TELEPHONE
214-954-6869 FACSIMILE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REMY, INC., UNIT PARTS COMPANY, and WORLDWIDE AUTOMOTIVE, LLC | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 0 6 - 7 8 5 - |
| CIF LICENSING, LLC, D/B/A GE LICENSING, WELLS MANUFACTURING CORP., TADITEL US, INC., and WETHERILL ASSOCIATES, INC. | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 DEC 21 PM 3: 15

## COMPLAINT

Plaintiffs Remy Inc. ("Remy"), Unit Parts Company ("UPC") and WorldWide Automotive, LLC ("WorldWide") file this Complaint against Defendants CIF Licensing, LLC d/b/a GE Licensing, Wells Manufacturing Corporation ("Wells"), Taditel US, Inc. ("Taditel") and Wetherill Associates, Inc. ("WAI") and would show this Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Remy Inc. is a Delaware corporation with its principal place of business in Indiana.

2.    Plaintiff Unit Parts Company is a Delaware corporation with its principal place of business in Oklahoma.

3.    Plaintiff WorldWide Automotive, LLC is a Virginia limited liability company with its principal place of business in Virginia.



EXHIBIT
C

4.      Defendant CIF Licensing, LLC d/b/a GE Licensing ("GE") is a Delaware company with its principal place of business in Princeton, New Jersey.  GE maintains a registered agent for service of process in Delaware, The Corporation Trust Company, which is located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

5.      Defendant Wells Manufacturing Corporation is a Wisconsin corporation with its principal place of business at 26 South Brooke Street, Fond du Lac, Wisconsin 54936.  Wells may be served with citation through its registered agent for service of process William A. Allen at 26 South Brooke Street, P.O. Box 70, Fond du Lac, Wisconsin 54935.

6.      Defendant Taditel U.S., Inc. is an Indiana corporation with its principal place of business at 720 West 8th Street, Anderson, Indiana 46016.  Taditel may be served with citation through its registered agent, James Wehrly, at 720 West 8th Street, Anderson, Indiana 46016.

7.      Defendant Wetherill Associates, Inc. is a Delaware corporation with its principal place of business at 1101 Enterprise Drive, Royersford, Pennsylvania 19468.  WAI may be served with citation through its registered agent, Corporation Guaranty and Trust Company, 1000 West Street, 17th Floor, Wilmington, Delaware 19801.

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1338 (patents), 2201 (declaratory judgment), 2202 (declaratory judgment), 1332 (diversity), and 1367 (supplemental and pendant claims).

9.      Venue is proper in this Court because it is the district where all defendants reside, the district where two Plaintiffs reside and the district where a substantial part of the acts and events giving rise to this lawsuit occurred.

2

## CAUSES OF ACTION

### Count One:  All Plaintiffs vs. GE Licensing for Declaratory Judgment

10.    GE has asserted that it owns all right, title and interest in United States Patent No. 4,733,159 (the "'159 patent"). The '159 patent is attached hereto as **Exhibit A.**

11.    GE has asserted that certain automobile alternators infringe the '159 patent.

12.    GE filed a patent infringement action against Remy International, Inc., a Delaware corporation with its principal place of business in Indiana, and others in the United States District Court for the Eastern District of Texas, Marshall Division on August 30, 2006.

13.    Remy International, Inc. exists only as a holding company of various other companies. Because it does no business of its own, Remy International, Inc. has not made, used, offered for sale, sold or imported the product accused of infringement in the Texas suit.

14.    Remy, UPC and WorldWide make and sell the products accused of infringement in the Texas suit.

15.    Plaintiffs assert that those accused products do not infringe the '159 patent. Accordingly, there is a justiciable controversy between GE and Plaintiffs.

16.    Plaintiffs further assert that the '159 patent, as asserted against the products accused of infringement in the Texas suit, is invalid or unenforceable under, *inter alia*, 35 U.S.C. §§ 101, 102, 103 or 112.

17.    Plaintiffs therefore request a judgment from the Court declaring that Plaintiffs have not infringed the '159 patent, declaring that the '159 patent as asserted by GE in the Texas suit is invalid or unenforceable, and awarding Plaintiffs their attorneys' fees under 35 U.S.C. § 285, costs, and all other relief as may be appropriate.

3

### Count Two: Remy v. Wells for Indemnity

18.    Wells provided Remy with the voltage regulator for products GE has accused of infringing the '159 patent in the Texas suit.

19.    Pursuant to the agreements between the parties and pursuant to the Uniform Commercial Code, Wells is obligated to defend Remy and to indemnify Remy for any judgment entered against it with respect to the accused products that contain parts supplied by Wells.

20.    Wells was notified of GE's assertions of infringement and refused to provide a defense or agree to indemnification.

21.    Remy therefore requests an order requiring Wells to defend Remy against any charge of infringement with respect to the accused products, a declaration that Wells is liable for any judgment against Remy with respect to the accused products, and an award of attorneys' fees, costs and such other relief as may be appropriate.

### Count Three: Remy, UPC and WorldWide v. Taditel for Indemnity

22.    Taditel provided Remy, UPC and WorldWide with the voltage regulator for products GE has accused of infringing the '159 patent in the Texas suit.

23.    Pursuant to the agreements between the parties and pursuant to the Uniform Commercial Code, Taditel is obligated to defend Plaintiffs and to indemnify Plaintiffs for any judgment entered against it with respect to the accused products that contain parts supplied by Taditel.

24.    Taditel was notified of GE's assertions of infringement and refused to provide a defense or agree to indemnification.

25.    Plaintiffs therefore request an order requiring Taditel to defend Plaintiffs against any charge of infringement with respect to the accused products, a declaration that Taditel is

liable for any judgment against Plaintiffs with respect to the accused products, and an award of attorneys' fees, costs and such other relief as may be appropriate.

## Count Four: UPC v. WAI for Indemnity

26.    WAI provided UPC with the voltage regulator for products GE has accused of infringing the '159 patent in the Texas suit.

27.    Pursuant to the agreements between the parties and pursuant to the Uniform Commercial Code, WAI is obligated to defend UPC and to indemnify UPC for any judgment entered against it with respect to the accused products that contain parts supplied by WAI.

28.    WAI was notified of GE's assertions of infringement and refused to provide a defense or agree to indemnification.

29.    UPC therefore requests an order requiring WAI to defend UPC against any charge of infringement with respect to the accused products, a declaration that WAI is liable for any judgment against Remy with respect to the accused products, and an award of attorneys' fees, costs and such other relief as may be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this Court enter:

(a)    a declaratory judgment that Remy, UPC and WorldWide each has not infringed the '159 patent,

(b)    a declaratory judgment that the '159 patent, as asserted by GE in the Texas suit, is invalid or unenforceable,

(c)    a judgment in Remy's favor as to Counts Two and Three of this Complaint and a ruling that Remy is entitled to defense and indemnity as requested in those Counts;

    (d)    a judgment in UPC's favor as to Counts Three and Four of this Complaint and a ruling that UPC is entitled to defense and indemnity as requested in those Counts;

    (e)    a judgment in WorldWide's favor as to Count Three of this Complaint and a ruling that WorldWide is entitled to defense and indemnity as requested in that Count;

    (f)    an award of attorneys' fees;

    (g)    taxable costs of court against Defendants; and

    (h)    such other relief as may be appropriate.


Dated: December 21, 2006        Respectfully submitted,

        GREENBERG TRAURIG LLP

        Donald J. Detweiler (#3087)
        Titania R. Mack (#4120)
        The Nemours Building
        1007 North Orange Street, Suite 1200
        Wilmington, DE 19801
        Tel.: (302) 661-7000
        Fax: (302) 661 7390

        *Attorneys for Plaintiffs*

OF COUNSEL:

Christopher M. Joe (Texas Bar No. 00787770)
Russell J. DePalma (Texas Bar No. 00795318)
GREENBERG TRAURIG LLP
2200 Ross Avenue, Suite 5200
Dallas, TX 75201
Tel.: (214) 655-3600
Fax: (214) 665.3601


DEL-FS1\164803v01

6

# EXHIBIT B
# PART 2

# EXHIBIT A

# United States Patent [19]

Edwards et al.

[11] Patent Number: 4,733,159

[45] Date of Patent: Mar. 22, 1988

[54] CHARGE PUMP VOLTAGE REGULATOR

[75] Inventors: Arthur J. Edwards, Hoffman Estates, Ill.; Mihaly Lanoth, Coppet, Switzerland

[73] Assignee: Motorola, Inc., Schaumburg, Ill.

[21] Appl. No.: 924,100

[22] Filed: Oct. 22, 1986

[51] Int. Cl.⁴ ............................... G05F 1/56

[52] U.S. Cl. .................................. 323/282; 322/28

[58] Field of Search ......... 323/282, 284; 318/199; 322/28

[56] References Cited

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,343,060 | 9/1967 | Ingraham | 323/282 X |
| 3,447,065 | 5/1969 | Kuhn | 322/28 X |
| 4,210,856 | 7/1980 | Taylor | 322/17 |
| 4,346,337 | 8/1982 | Wehrens | 322/23 |
| 4,386,310 | 5/1983 | Sieven | 322/28 |
| 4,388,586 | 6/1983 | Lanoth | 322/23 |
| 4,381,537 | 6/1983 | Lanoth et al. | 323/282 |
| 4,580,090 | 4/1986 | Bailey et al. | 323/282 |
| 4,636,711 | 1/1987 | Przyanik | 323/282 X |

## OTHER PUBLICATIONS

Motorola Data Sheet XPC1500 for the 16 Ampere Logic-to-Power Switch.
Motorola Data Sheet MPC1500, Logic-to-Power Switch Block Diagram.

Primary Examiner—Patrick R. Salce
Assistant Examiner—Marc S. Hoff
Attorney, Agent, or Firm—Phillip H. Melamed

[57] ABSTRACT

A voltage regulator (11) provides a pulse width modulated voltage regulator output (40) to a drive circuit (37) to provide field coil excitation for a voltage generator (16–17) providing a charging signal for a battery (14). The voltage regulator output determines on/off states of an FET power switching device (28) coupled in series with a field coil (17) across a maximum power source voltage potential V_BAT corresponding to battery voltage. The drive circuit includes a charge pump (26, 33, 36) with a low capacitance capacitor (26) coupled and decoupled across a source of voltage potential at a rate determined by a high frequency signal (41), provided by the regulator, having a frequency substantially in excess of the frequency of the voltage regulator output. The drive circuit includes a pair of switches (21, 35) which alternately couple one terminal of the capacitor to either battery voltage or ground potential in accordance with the voltage regulator output. The above configuration provides a control voltage (44) at the gate of the FET substantially in excess of battery voltage and this insures maximum field current when the FET is on. This is achieved with a minimum capacitance for the capacitor, thus reducing circuit size and cost. Battery current drain of the drive circuit is minimized by disconnecting the one terminal of the capacitor from battery voltage when the FET is off.

18 Claims, 2 Drawing Figures





FIG. 1



FIG. 2

4,733,159

1

## CHARGE PUMP VOLTAGE REGULATOR

### BACKGROUND OF THE INVENTION

The present invention generally relates to the field of voltage regulators, and in particular to voltage regulator systems utilized to control the charging of a battery, such as the battery in a vehicle.

In prior voltage regulator systems for vehicles it is known to provide a voltage regulator which senses battery voltage and provides a pulse width modulated output signal that varies in duty cycle in accordance with the difference between sensed battery voltage and a reference signal. This output signal is used to control a power switching device connected in series with a field coil across the battery voltage potential. The field coil controls excitation of stator windings of a voltage generating system which, after rectification of the output of the stator windings, provides a charging signal for the battery. Such voltage regulator systems, as described above, are conventional and well understood.

In some of the above-noted voltage regulator systems, it is necessary to provide a relatively large voltage, larger than battery voltage, at a control terminal of the power switching device so as to insure that maximum field current is provided when the switching device is on. In some cases an FET (field effect transistor) is utilized as the power switching device, with the drain electrode connected to battery voltage and the source terminal is connected through the field coil to ground potential. In such a configuration, to provide a gate voltage in excess of battery voltage when it is desired to have the FET on, a prior voltage regulator system has utilized a voltage doubler circuit. In the prior voltage doubler circuit, a voltage of approximately twice battery voltage is selectively provided at the gate terminal to insure that approximately the entire battery voltage potential is applied across the field coil when the FET is on.

The voltage doubler circuit of the prior voltage regulator relies on utilizing the pulse width modulated output of the voltage regulator to selectively couple and decouple a large magnitude capacitor across the battery voltage potential via a switch device. The end result is that essentially a voltage doubler is provided by the capacitor and the selective switching of the capacitor across the battery voltage potential. However, in such a configuration, a very large capacitance for the capacitor is utilized to insure that at high duty cycle percentages of the voltage regulator output signal, the voltage across the capacitor does not substantially decrease during the long on-duty cycle and thereby decrease the magnitude of the voltage at the gate electrode of the FET. When the prior voltage regulator produced an output signal which essentially resulted in the FET being on all of the time since field coil current was required all of the time, the additional complex logic circuitry was required to provide some alternate coupling and decoupling of the capacitor across the battery voltage, and this increased the circuit cost. Without this additional logic circuitry, the twice battery voltage to be maintained at one terminal of the large capacitance capacitor would decrease due to leakage effects and the limiting of the turned-on FET device. This is undesirable as it would result in reducing field coil current when the voltage regulator has indicated that maximum field coil current should be provided. Also, the required large magnitude capacitor is expensive, and it cannot be

2

implemented as part of an integrated circuit so as to reduce circuit cost.

### SUMMARY OF THE INVENTION

An object of the present invention is to provide an improved voltage regulator which overcomes the aforementioned deficiencies.

A more particular object of the present invention is to provide a voltage regulator which does not require a large magnitude capacitor but which still provides a switching control voltage substantially in excess of battery voltage at the gate of an FET device connected in series with the field coil that controls the output of a voltage generator which implements battery charging.

In one embodiment of the present invention, an improved voltage regulator is provided. The voltage regulator comprises regulator means for receiving a sensed voltage signal and for providing, in response to the effective comparison of said sensed voltage signal with a reference signal, a regulator output signal, comprising pulses having a predetermined frequency and a predetermined signal characteristic determined in accordance with said comparison, drive circuit means coupled to said regulator means and comprising a power switching device having a control terminal effectively coupled to said regulator output signal and having at least two output terminals, said output terminals coupled in series with a control element of a voltage control means which determines said sensed voltage signal, across a maximum power source voltage potential, said drive circuit means controlling said sensed voltage, via said control means, in accordance with said characteristic of said regulator output signal to maintain said sensed voltage signal at a predetermined voltage level determined by said reference signal, said drive circuit means including a peak voltage increasing means for receiving said regulator output signal and effectively providing in response thereto a corresponding increased magnitude voltage signal generally varying as said regulator output signal but varying up to a peak voltage magnitude in excess of said maximum power source voltage potential, wherein the improvement comprises said peak voltage increasing means comprising a capacitor selectively series coupled and decoupled across a predetermined power source voltage potential in accordance with pulses of a high frequency signal having a pulse frequency substantially in excess of the frequency of said regulator output signal, said peak voltage increasing means, therefore, comprising a high frequency charge pump which provides said increased voltage signal, said increased voltage signal having the same general waveform as said regulator output signal but increased in voltage magnitude to achieve a peak voltage potential in excess of said maximum power source voltage potential, the charge pump providing said increased voltage signal as an output which is coupled to said control terminal of said power switching device.

Essentially, the above-recited configuration results in utilization of a relatively small magnitude capacitor while still providing a switching voltage at the control terminal of the power switching device that is substantially in excess of the maximum power source voltage potential, which preferably corresponds to battery voltage in the vehicle charging system. Preferably, the power switching device comprises an N channel field effect transistor (FET) in which the gate electrode is the control terminal the drain electrode is connected to

3

4,733,159

4

positive battery voltage and the source electrode is connected through a field coil to ground potential. Preferably, the voltage regulator means output signal comprises a pulse width modulated switching signal which selectively couples one terminal of the capacitor, at which said increased voltage signal is provided, to ground during one polarity of the duty cycle of the regulator output signal and during another polarity of the regulator output signal couples this terminal to battery voltage.

Preferably the high frequency switching signal is at least two orders of magnitude higher than the frequency of the regulator output signal, and this results in requiring only a very small capacitance for the selectively series coupled capacitor thus reducing component cost and size. This also permits synthesizing the capacitor as part of an integrated circuit which includes other regulator components. In addition, the present invention contemplates utilizing the pulse width modulated output signal of the regulator and a switch device to alternately couple and decouple the capacitive terminal at which the increased voltage is produced to battery voltage, and this minimizes field current drain during duty cycle portions of the regulator output signal during which no field current is desired. Also, this insures no substantial battery current drain when the voltage regulator is off and a low voltage regulator output signal is provided.

### BRIEF DESCRIPTION OF THE DRAWINGS

For a more complete understanding of the invention, reference should be made to the drawings, in which:

FIG. 1 is a schematic diagram of a voltage regulator system constructed in accordance with the present invention; and

FIG. 2 comprises a series of graphs A through F illustrating waveforms of signals provided at the terminals A through F in FIG. 1.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, a voltage regulator system 10 is illustrated in which a substantially conventional pulse width modulated voltage regulator 11 has a voltage sensing input terminal 12 connected to a positive battery voltage terminal 13 also designated as $V_{BAT}$. The terminal 13 corresponds to the positive electrode of a vehicle battery 14 which has its negative electrode connected to ground potential. Charging of the battery 14 is accomplished by means of a plurality of stator output windings 15 which provide an output that is rectified by a rectifier circuit 16. The output of the stator windings 15 is controlled, as is conventionally understood, by the current excitation applied to a field coil 17 having a flyback transient suppression diode 18 connected thereacross.

Essentially, the voltage across the battery is sensed by the voltage regulator 11 via the signal at the terminal 11. The voltage regulator compares this voltage to an internal or external reference voltage signal provided at a terminal 19, and in response to this comparison produces a pulse width modulated regulator output signal at an output terminal 20. The duty cycle of this pulse width modulated output signal at the terminal 20 can vary from approximately 0% to 100% and is essentially determined in accordance with the difference between the sensed battery voltage and the reference voltage at the terminal 19. This is accomplished in a conventional manner as is understood to those in the voltage regula-

tor art field, and can be implemented by a number of different circuit configurations for the voltage regulator 11. The constant frequency regulator disclosed in U.S. Pat. No. 4,286,310 to Sievers, assigned to the same assignee as the present invention, can be used for the above described voltage regulator 11. Also see U.S. Pat. Nos. 4,388,586 and 4,381,487. Essentially, the voltage regulator system 10, as is understood, responds to the pulse width modulated switching output signal at the terminal 20 so as to provide field coil current such that the battery voltage at the terminal 13 is maintained at a predetermined voltage with respect to the voltage magnitude of the reference signal at the terminal 19. This operation is conventional.

Essentially, the present invention involves providing a drive circuit means so as to couple the pulse width modulated regulator output signal at the terminal 20 to the field coil 17 so as to control field coil current excitation. This is accomplished in an advantageous manner by a relatively simple and economical drive circuit utilizing inexpensive components. The construction and operation of the drive circuit means is as follows.

The battery voltage terminal 13 is connected through a resistor 18A to the emitter of a PNP first switch device transistor 21 which has its collector coupled through a diode 22 to a terminal 23 also designated as terminal D. The emitter of transistor 21 is coupled to ground through an effective 20 volt Zener diode 23B and coupled through a resistor 24 to a terminal 25 also designated as terminal C. A relatively small magnitude capacitor 26 is connected between the terminals C and D wherein the capacitor 26 has a typical capacitance magnitude of 50 picofarads.

The terminal D is connected through a diode 27 to a gate electrode G of an N channel FET transistor 28 wherein the gate electrode is also designated by the terminal E. A drain electrode D of the FET is directly connected to the battery voltage terminal 13, and a source electrode S of the FET corresponds to a terminal F. A Zener diode 29 is connected between the terminals E and F to insure that no excessive voltage can be applied between the gate and source electrodes which would cause destruction of the FET. In FIG. 1, the effective internal input capacitance of the FET is illustrated as an inherent capacitor 30 connected between the gate and source electrodes and having a typical magnitude of 1000 picofarads. The FET 28 is utilized as a power switching device that controls current in the field coil 17.

The source electrode of the FET is connected through a current sensing resistor 31 to a terminal 32 at which one end of the field coil 17 is connected and a cathode of the flyback diode 18 is connected. Another end of the field coil 17 and the anode of the diode 18 are connected to ground potential. The amount of field coil current being drawn can be measured by noting the voltage drop across the resistor 31, if desired. With this configuration the output electrodes (drain and source) of the FET are connected in series with field coil 17 between a maximum power source potential corresponding to the battery voltage.

The pulse width modulated regulator output signal at the terminal 20 is connected to a terminal 33 also designated as terminal A. This terminal is connected through a level shifter or isolation device 34 to the base electrode of the first switch device transistor 21. The terminal 33 is also connected directly to the base electrode of an NPN transistor 35 which comprises a third switch

5

4,733,159

6

device transistor having its emitter connected to ground and its collector connected to the terminal E. An effective 40 volt Zener diode 35A is connected between the collector and base electrodes of the transistor 35. A second switch device transistor 36 comprising an NPN transistor has its collector connected to the terminal C, its emitter connected to ground potential and its base electrode connected to a terminal B which is contemplated as being an additional output terminal of the voltage regulator 11 at which a very high frequency switching signal is provided. It is contemplated that the high frequency switching signal at the terminal B is a constant frequency signal having a frequency of 200 to 300 kilohertz as contrasted with the frequency of the pulse width modulated regulator output signal at the terminal 20 which has an output frequency of 50 to 70 hertz.

The operation of the voltage regulator system 10 in FIG. 1 will now be discussed with reference to the signal waveforms shown in the graphs A through F in FIG. 2. It should be noted that the signal waveforms illustrated in FIG. 2 in graphs A through F correspond to the voltage waveforms of electrical signals provided at the terminals A through F, respectively, in FIG. 1. In the graphs in FIG. 2, the vertical axes are representative of signal magnitude, and the horizontal axes are representative of time. It should also be noted that the time scale utilized to illustrate the very high frequency signal at the terminal B, and its effect on other signals, is not drawn to scale with regard to the much slower varying signal of the pulse width modulated regulator output signal at the terminal 20 corresponding to the signal at terminal A. However, this has been done to enhance the clarity of the Figures so as it is readily understood.

As shown in FIG. 2, the voltage regulator 11 provides a pulse width modulated signal 40 at the terminal A wherein the duty cycle of this signal is variable and is determined in accordance with the difference between the second battery voltage at the terminal 12 and the reference signal voltage at the terminal 19. During a high, or positive, polarity 41A of the duty cycle portion of the signal 40, no field current will be drawn, but during the low, or negative, polarity 41B of the duty cycle of the signal 40, field current will be provided so as to charge the battery 14. The signal 40 illustrates that at a reference time in there is a high to low transition indicating the commencement of a low state for the signal 40 during which field current will flow. The frequency of the signal 40 is typically between 50 to 70 hertz, and the duty cycle can vary between extreme percentages such as 0 to 100% depending upon how much field current the voltage regulator 11 determines is necessary.

In generating the pulse width modulated signal 40 at the terminal 20, it is contemplated that the voltage regulator may internally use a very high frequency reference oscillator. Alternatively, a separate high frequency reference oscillator may be provided within the voltage regulator 11 even though this signal may not be utilized to generate the pulse width modulated regulator output signal 20. In either event, the voltage regulator 11 provides at the terminal B a very high frequency signal comprising a series of pulses wherein the frequency is 200 to 300 kilohertz. This is generally shown in graph B in FIG. 2, even though the time scale for graph B does not correspond to the same time scale utilized for graph A.

Essentially, in response to the high and low outputs provided at the terminal 20 by the voltage regulator 11, the first and third switch transistor devices 21 and 36, will be alternately opened and closed. More specifically, in response to a high signal level at the terminal A, transistor 35 will be turned on, therefore grounding the gate electrode of the FET and limiting the voltage at the terminal D to only one diode drop above ground potential. At the same time, this high signal level at the terminal A, via the level shifter 34, will result in effectively turning off the first switch device 21 and thereby decouple the battery voltage terminal 13 from the capacitor terminal D via the transistor 21 and diode 22. During the time that a high or positive logic level is present at the terminal A, and even when a low logic level is present at the terminal A, a high frequency signal 61 is continuously provided at the terminal B as illustrated in graph B in FIG. 2. The signal 61 is not necessarily continuously provided during the duty cycle polarity 61A of signal 40. This high frequency signal continuously results in turning the transistor 36 on and off and, therefore, alternately connecting the terminal C to ground potential and then opening this connection. When a positive signal level is provided at a terminal A, the opening and closing of the transistor switch 36 results in providing a corresponding ramp signal 42 at terminal C as illustrated in graph C in FIG. 2. During the time that the transistor 36 is on, terminal C is connected to ground potential, but when transistor 36 is off, the potential at terminal C rises due to a charging current provided from the battery voltage terminal 13 through the resistor 24. Typically, the peak of this ramp signal during a positive logic state at the terminal A will be approximately 2.5 volts less than the battery voltage at the terminal 13, which is typically 14 volts. Thus, approximately 11.5 volts is the magnitude of the voltage peaks of the signal 42 for a positive logic state at the terminal A which corresponds to no field current being conducted. During this same time, a relatively small magnitude square wave varying at the same frequency as the high frequency signal 61 is at the terminal D wherein the signal at the terminal D is generally designated by the reference numeral 43 in graph D. The peak magnitude of the signal 43 when a positive logic state is at the terminal A is approximately +1 volt since at that time the transistor 35 is on and the peaks of signal at the terminal D are limited by the clipping action provided by the diode 37. Typically, a slight negative voltage is provided at the terminal D when a positive logic state is present at terminal A and the transistor 36 is turned off. Since a positive logic state at the terminal A turns the transistor 35 on, this means that at this time the gate electrode of the FET is at ground potential, and, therefore, the FET is turned off. While the FET is turned off, field current will not flow in the field coil 17 by virtue of power (current) supplied by the battery 14. A signal 44 in graph B in FIG. 2 illustrates the voltage waveform for the signal at the gate electrode of the FET, and a signal 45 in graph F in FIG. 1 illustrates the voltage waveforms at the source electrode of the FET. The signals at the terminals F and 33 are identical, except for a minor voltage shift in case field current is flowing due to the drop across the resistor 31. Thus a graph of the signal at terminal 32 is not provided.

Essentially, prior to the time to shown in FIG. 2, there is no field coil current because the FET 28 is turned off. At this time to the transistor 36 which was previously on, is now turned off, thus removing the clamping ac-

7

4,733,159

8

tion provided at the gate electrode of the FET by virtue of the transistor 38 and diode 27. At the same time, since a low or negative logic state is now provided at the terminal A, the transistor 21 is turned on via level shifter 34 resulting in applying approximately battery voltage at the terminal D by virtue of the transistor 21 and diode 22. This is illustrated in the graphs in FIG. 2 by the abrupt rising transient present at the time $t_0$ in the signals 43, 44 and 45. Immediately after to the signal 43 has a magnitude of $V_{BAT}-1$ diode drop, signal 44 has a magnitude of $V_{BAT}-2$ diode drops, and signal 45 has a magnitude of approximately 7 volts, representing the difference between the signal 44 at the terminal E and the gate-to-source turn-on threshold developed across the FET 22.

After the time $t_0$ the transistor 36 continues to be switched on and off at a very rapid rate in accordance with the pulses of the high frequency signal 41. This results in only a slight change in the peak magnitudes of the signal 43 at the terminal C, and this slight increase in magnitude is due to the fact that the clamping action of the diode 27 to ground potential through the transistor 38 has now been removed. However, the significance of continuing the high frequency switching after the time $t_0$ is more evident in the signals 43 through 46. For signal 43, it is noted that what essentially happens is that the ramp signal provided at the terminal C is now effectively transferred to the terminal D and superimposed upon a DC level of approximately the battery voltage $-V_{BAT}$ at the terminal 13 minus the turn drop across the transistor 21 and diode 22. This essentially results in the signal 43 reaching peak magnitudes of approximately twice the battery voltage since this AC component of the signal 43 is now effectively superimposed on a DC level of approximately battery voltage.

In response to the signal 43, the diode 27, and the effective input capacitance 30 of the FET effectively provide a peak rectification circuit such that the signal 44 essentially follows the envelope of the signal peaks of the signal 43 less the voltage drop across diode 27. This is illustrated in graph E in FIG. 2. The signal 44 at the source electrode essentially tracks the gate voltage and, therefore, also increases, but the maximum value of the signal 44 is achieved at battery voltage since this signal cannot exceed the drain voltage wherein the drain electrode is directly connected to the relatively constant voltage $V_{BAT}$ at the battery voltage terminal 13. However, as seen in graph F in FIG. 2, the signal 44 does increase from a voltage somewhat below battery voltage to approximately battery voltage during the time that field current is flowing. This means that maximum possible field current is provided during the time that a low logic level is provided for the signal 49 since the source voltage of the FET will now reach approximately battery voltage due to the effective saturation of the FET device 28. This is possible in the present invention since the gate voltage is maintained in excess of the battery voltage $V_{BAT}$ present at the drain electrode and this situation is required in order to maintain the FET in an on condition with the source at $V_{BAT}$. At a subsequent time $t_1$, the signal 40 undergoes a logic state inversion resulting in the turning off of field current, and this is maintained until a subsequent time $t_1$ at which time the turn-on cycle is reinstituted.

Essentially, the present invention is concerned with providing a voltage as high as possible at the terminal F such that maximum field coil current can be drawn when the voltage regulator 11 indicates that field cur-

rent should be provided. This is accomplished by the present circuit providing approximately battery voltage $V_{BAT}$ at the source electrode of the FET. In order to accomplish this, a much higher than $V_{BAT}$ voltage must be provided at the gate of the N channel FET to insure that the FET turns on and remains on since there is a minimum gate-to-source threshold which must be exceeded in order for the FET to be on. The present invention is concerned with how this larger than battery voltage control signal at the gate of the FET can be produced efficiently and with minimum expense. It should be noted that the reason that the field coil 17 is not provided in the drain circuit of the FET, is that many voltage regulator systems do not wish to subject the field coil to constant positive voltage potential even when no field current is to be drawn. Thus, in the present circuit, the field coil is in the source circuit of the N channel FET, and the FET essentially acts as a source follower. Also, an N channel FET is used since P channel FETs are substantially more expensive.

The present invention essentially provides the approximately twice battery voltage signal at the gate of the FET when it is desired to commence field current. This occurs by use of the high frequency switching provided by the signal 41 at the terminal B and the use of a relatively small magnitude capacitor 26. This is contrasted with prior voltage regulator systems, which while recognizing that a high gate voltage is desirable, implemented this by utilizing relatively slow switching speeds with a very large magnitude capacitor to form a battery voltage doubling system. Those prior systems were not cost effective in implementing field current for 100% of the time, because they required utilization of extensive additional logic circuitry required to provide some periodic interruptions (in case a 100% duty cycle was required) for charging the large capacitor. In addition, the prior systems required an extremely large magnitude capacitor 26 to insure that there was not a substantial decrease in the voltage being maintained at the terminal D after commencement of field current flow. The present invention avoids these problems by implementing very rapid switching via the transistor 36 and, therefore can utilize a very small capacitor (typically 50 picofarads), for the capacitor 26. This enhances circuit performance and reduces circuit cost. In the present circuit, rather than relying on the massive capacitance of the capacitor 26, now the inherent gate-to-source capacitance of the FET 28 can be relied on to maintain an appropriate voltage at the terminal B during field current flow, and thus no additional large capacitor is required. The small size of the capacitor 26 makes it possible to synthesize, on a single integrated circuit chip, substantially all of the components of a driver circuit 37, shown dashed in FIG. 1, and the regulator 11, except the FET 28 and the resistor 31.

In addition to the above advantages, the present invention minimizes battery current drain during a condition of no field current flow. This is because the switch 21 will effectively decouple the capacitor terminal D from battery voltage when no field current is required. If the transistor 21 were replaced by a direct connection between the anode of the diode 22 and the terminal 13, then there would have to be some provision to prevent excessive battery current drain because of the shunting action provided by the transistor 38 and additional leakage current associated with the FET, when the device is off and no field current is drawn. These problems are avoided by utilization of the transistor 21 which is

4,733,159

9

switched alternately with respect to, but at the same frequency as, the transistor 36. Thus transistor 21 prevents series coupling the capacitor 26 between $V_{REF}$ at terminal 13 and ground during duty cycle portions 61A, and permits such coupling during 61B, and this reduces battery current drain. Also, this insures no substantial battery current drain when the voltage regulator is off, and, therefore, a low voltage regulator output signal at terminal 29 is provided. The effective Zener diode 13B protects the transistors 21 and 36 from excessive battery voltage transients caused by battery load variations, and the effective Zener 33A protects the transistor 25 against transients at the terminal E.

While specific embodiments of the present invention have been shown and described, further modifications and improvements will occur to those skilled in the art. All such modifications which retain the basic underlying principles disclosed and claimed herein are within the scope of this invention.

We claim:

1. A voltage regulator comprising:
regulator means for receiving a sensed voltage signal and for providing, in response to the effective comparison of said sensed voltage signal with a reference signal, a regulator output signal, comprising pulses, having a predetermined frequency and a predetermined signal characteristic determined in accordance with said comparison;
drive circuit means coupled to said regulator means and comprising a power switching device having a control terminal effectively coupled to said regulator output signal and having at least two output terminals, said output terminals coupled in series with a control element of a voltage control means which determines said sensed voltage signal, across a maximum power source voltage potential, said drive circuit means controlling said sensed voltage, via said control means, in accordance with said characteristic of said regulator output signal to maintain said sensed voltage signal at a predetermined voltage level determined by said reference signal, said drive circuit means including a peak voltage increasing means for receiving said regulator output signal and effectively providing in response thereto a corresponding increased magnitude voltage signal generally varying as said regulator output signal but varying up to a peak voltage potential in excess of said maximum power source voltage potential,
wherein the improvement comprises said peak voltage increasing means comprising a capacitor selectively series coupled and decoupled across a predetermined power source voltage potential in accordance with pulses of a high frequency signal having a pulse frequency substantially in excess of the frequency of said regulator output signal, said peak voltage increasing means, comprising a high frequency charge pump which provides said increased voltage signal, said increased voltage signal having the same general waveform as said regulator output signal but increased in voltage magnitude to achieve a peak voltage potential in excess of said maximum power source voltage potential, the charge pump providing said increased voltage signal as an output which is coupled to said control terminal of said power switching device.

10

2. A voltage regulator according to claim 1 wherein said predetermined characteristic of said regulator output signal, which characteristic is determined in accordance with said comparison, comprises duty cycle.

3. A voltage regulator according to claim 2 wherein said drive circuit means includes means for selectively preventing said series coupling of said capacitor across said predetermined power source voltage potential during duty cycle portions of said regulator output signal of a predetermined polarity and permitting said series coupling during duty cycle portions of said regulator output signal of an opposite predetermined polarity.

4. A voltage regulator according to claim 3 wherein said predetermined power source voltage potential that said capacitor is selectively series coupled and decoupled across substantially comprises said maximum power source voltage potential that said power switching device and control element of said voltage control means are coupled across.

5. A voltage regulator according to claim 4 wherein the frequency of said high frequency signal pulses is at least one order of magnitude higher than the frequency of said regulator output signal.

6. A voltage regulator according to claim 5 wherein said preventing means of said drive circuit means includes a first switch device which selectively couples a first terminal of said capacitor to a first predetermined voltage in accordance with duty cycle portions of said regulator output signal of a predetermined polarity and decouples said first terminal during duty cycle portions of said regulator output signal of an opposite predetermined polarity, and wherein said peak voltage increasing means of said drive circuit means includes a second switch device which selectively series couples and decouples a second terminal of said capacitor to a second predetermined voltage, different from said first predetermined voltage, in accordance with said pulses of said high frequency signal.

7. A voltage regulator according to claim 6 wherein said drive circuit means includes a third switch device which selectively couples and decouples said one capacitor terminal to said second voltage potential in accordance with said regulator output signal.

8. A voltage regulator according to claim 1 wherein said drive circuit means includes a first switch device which selectively couples a first terminal of said capacitor to a first predetermined voltage in accordance with duty cycle portions of said regulator output signal of a predetermined polarity and decouples said first terminal during duty cycle portions of said regulator output signal of an opposite predetermined polarity, and wherein said peak voltage increasing means of said drive circuit means includes a second switch device which selectively series couples and decouples a second terminal of said capacitor to a second predetermined voltage, different from said first predetermined voltage, in accordance with said pulses of said high frequency signal.

9. A voltage regulator according to claim 8 wherein said drive circuit means includes a third switch device which selectively couples and decouples said one capacitor terminal to said second voltage potential in accordance with said regulator output signal.

10. A voltage regulator according to claim 9 wherein said first capacitor terminal is coupled to said power switching device control terminal through a peak rectifying diode.

11                    4,733,159                    12

11. A voltage regulator according to claim 10
wherein said first predetermined voltage is coupled to
said first capacitor terminal through a diode.

12. A voltage regulator according to claim 11
wherein said power switching device comprises an
FET having gate, drain and source electrodes corre-
sponding to said control and output terminals, respec-
tively.

13. A voltage regulator according to claim 12
wherein said drain electrode is coupled to a source of
constant voltage potential and wherein the effective
internal capacitance of said FET between said gate and
source electrodes is substantially larger than the capaci-
tance of said capacitor.

14. A voltage regulator according to claim 13
wherein said voltage control means comprises a voltage
generator means and wherein said control element of
said voltage control means comprises a field coil.

15. A voltage regulator according to claim 1 wherein
said voltage control means comprises a voltage genera-
tor means and wherein said control element of said
voltage control means comprises a field coil.

16. A voltage regulator according to claim 15
wherein said voltage generator means includes stator
windings, in addition to said field coil, and a rectifier
circuit means for receiving the output of said stator
windings and providing a charging signal for a battery
so as to maintain a predetermined battery voltage there-
across.

17. A voltage regulator according to claim 16
wherein said predetermined voltage across said battery
corresponds to said predetermined maximum power
source voltage potential.

18. A voltage regulator according to claim 1 wherein
the frequency of said high frequency pulses is at least
one order of magnitude higher than the frequency of
said regulator output signal.

* * * * *

# UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.  :  4,733,159

DATED       :  March 22, 1988

INVENTOR(S) :  Arthur J. Edwards and Mihaly Lenoth

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In claim 1, Col. 9, line 35, after "voltage control means", please insert —,—.

Signed and Sealed this

Twenty-seventh Day of September, 1988

Attest:

*Attesting Officer*

DONALD J. QUIGG

*Commissioner of Patents and Trademarks*

# Greenberg
# Traurig

Christopher M. Joe
Direct Dial: (214) 665-3604
Facsimile:    (214) 665-5904
joec@gtlaw.com

January 29, 2007

*via Facsimile Number (312) 913-0002 and*
*E-mail:  gannon@mbhb.com*

Michael D. Gannon, Esq.
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois  60606

Re:     Case No. 2:06-cv-00345-DF; *CIF Licensing, LLC d/b/a GE Licensing v. Denso
Corporation, Remy International, Inc., and Valeo, Inc.;* United States District
Court for the Eastern District of Texas, Marshall Division

Dear Mr. Gannon:

This confirms that in connection with the above-referenced lawsuit Remy
International, Inc. and its affiliates do not intend to seek indemnity from Kimball Electronics
for regulators accused by GE Licensing of infringement of U.S. Patent No. 4,733,159 for the
damages period November 2004 to October 2006.

Please call me if you have any questions.

Sincerely,

Christopher M. Joe

CMJ:ss

DAL-FS1\102131r02\078944.011700
Greenberg Traurig, LLP | Attorneys at Law | 2200 Ross Avenue | Suite 5200 | Dallas, Texas 75201 | Tel 214.565.3600 | Fax 214.665.3601 | www.gtlaw.com

**From:** Gannon, Michael
**Sent:** Tuesday, January 30, 2007 10:09 AM
**To:** 'tcraddock@mcslaw.com'
**Subject:** FW: Kimball Electronics - Remy International, Inc.

Hi Tom:

Attached is a letter I received from Remy. As you will see, the letter covers both time periods.

The Kimball entities are prepared to execute the same letter to ST. We trust that such a letter will be sufficient and that ST will agree to dismiss Kimball from the Dallas action.

Please advise as soon as possible whether this is acceptable to ST.

Also, I would be more than happy to discuss with you what I know about the GE patent and what is accused of infringement. I am in the office today, out tomorrow and Thursday, but will be back in the office on Friday.

Thanks.

Mike

Michael D. Gannon
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive
Chicago, Illinois 60606-6709
312 913 2139 direct
312 913 0001 main
312 913 0002 fax
gannon@mbhb.com

J

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

REMY, INC.,
UNIT PARTS COMPANY, and
WORLDWIDE AUTOMOTIVE, LLC,

    Plaintiffs,

        v.

CIF LICENSING, LLC, D/B/A GE LICENSING,
WELLS MANUFACTURING CORP.,
TADITEL US, INC., and
WETHERILL ASSOCIATES, INC.,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 06-785-***

WELLS MANUFACTURING CORP.,

    Counterclaimant,

        v.

REMY, INC.,

    Counterdefendant.

)
)
)
)
)
)
)
)
)

WELLS MANUFACTURING CORP.,

    Third-Party Plaintiff,

        v.

STMICROELECTRONICS, INC.,

    Third-Party Defendant.

)
)
)
)
)
)
)
)
)
)

## WELLS MANUFACTURING CORP.'S ANSWER, COUNTERCLAIMS, AND THIRD-PARTY COMPLAINT

1



Defendant Wells Manufacturing Corp. ("Wells") hereby answers the Complaint of Plaintiffs Remy, Inc. ("Remy"), Unit Parts Company ("UPC"), and Worldwide Automotive, LLC ("Worldwide") as follows:

<h3 style="text-align:center">ANSWER</h3>

<h3 style="text-align:center">PARTIES, JURISDICTION AND VENUE</h3>

1.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

2.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

3.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

4.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

5.   ADMITTED.

6.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

7.   Wells is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph, and the same are therefore DENIED.

8.   Wells admits that 28 U.S.C. §§ 1331, 1338(a), 1367(a), 2201(a), and 2202 apply to give this Court subject matter jurisdiction over the claims of this action. Wells is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and the same are therefore DENIED.

2

9.     Wells does not contest venue in this District.  Wells is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and the same are therefore DENIED.

### Count One:  All Plaintiffs v. GE Licensing for Declaratory Judgment

Paragraphs 10-17 are not directed to Wells, and therefore, no response is required.

### Count Two:  Remy v. Wells for Indemnity

18.     DENIED.

19.     DENIED.

20.     DENIED.

21.     This is not an allegation; therefore, no response is required.

### Count Three:  Remy, UPC, and Worldwide v. Taditel for Indemnity

Paragraphs 22-25 are not directed to Wells, and therefore, no response is required.

### Count Four:  UPC v. WAI for Indemnity

Paragraphs 26-29 are not directed to Wells, and therefore, no response is required.

### FIRST AFFIRMATIVE DEFENSE

1.     Remy's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.     Remy comes to this Court with unclean hands and/or acted in bad faith and therefore is not entitled to legal or equitable relief.

### THIRD AFFIRMATIVE DEFENSE

3.     Remy's claims are barred in whole or in part because it failed to mitigate its damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

3

4.     On information and belief, Remy knew of U.S. Patent No. 4,733,159 (hereinafter "the '159 Patent") and induced Wells to become part of the supply chain for the voltage regulator part. Because Remy did not exercise reasonable care in communicating the existence of the '159 Patent or the existence of a claim against Remy by GE concerning the '159 Patent to Wells, Wells has suffered loss by justifiably relying on Remy's specifications and silence regarding any possible patent difficulties with the same. Remy therefore has unclean hands and/or acted in bad faith and is not entitled to legal or equitable relief.

## FIFTH AFFIRMATIVE DEFENSE

5.     Remy's Purchase Order does not govern the rights and remedies of the parties because it is ambiguous, unintelligible, unconscionable, and unenforceable as against public policy.

## SIXTH AFFIRMATIVE DEFENSE

6.     The Uniform Commercial Code applies to require Remy to hold Wells harmless for any infringement claim arising out of compliance with Remy's specifications. Remy is therefore not entitled to legal or equitable relief from Wells.

## SEVENTH AFFIRMATIVE DEFENSE

7.     Remy did not inform Wells of GE Licensing's claim in a timely fashion to permit Wells to avoid damages and/or further alleged infringement. Remy did not tender the indemnity claim for 8 months after receiving the cease and desist notice from GE, and Wells relied to its detriment on this failure. Remy therefore has unclean hands and/or acted in bad faith. It is inequitable for Remy to recover on its indemnity claim prior to its tender of the GE defense to Wells. Wells had no ability to cure or mitigate damages prior to Remy's tender.

## EIGHTH AFFIRMATIVE DEFENSE

4

8.    Remy's claims asserted in the Complaint are barred by the doctrines of laches, acquiescence, and/or estoppel.

## NINTH AFFIRMATIVE DEFENSE

9.    Remy's claims are subject to indemnity and setoff.

## TENTH AFFIRMATIVE DEFENSE

10.    Remy's claims are properly directed to STMicroelectronics, Inc. with which Remy has a contractual relationship and which is responsible for manufacturing and selling the allegedly infringing part to Remy via Wells. Remy is therefore entitled to no relief from Wells.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    Wells reserves the right to assert any additional applicable factual and legal defenses following discovery and further investigation of this matter.

WHEREFORE, Remy should take nothing from its Complaint, Remy should be denied all injunctive and other equitable relief in this action, Remy's Complaint should be dismissed with prejudice, and Wells should be compensated by Remy for the attorneys' fees, expenses, and costs that Wells has incurred as a result of this action.

## COUNTERCLAIMS: WELLS V. REMY

1.    Counterclaimant Wells Manufacturing Corp. is a Wisconsin corporation and has its principal place of business at 26 South Brooke Street, Fond du Lac, Wisconsin 54936.

2.    Upon information and belief, Counterdefendant Remy, Inc. is a Delaware corporation and has its principal place of business at 2902 Enterprise Drive, Anderson, Indiana

46013. Remy may be served with citation through its registered agent for service of process Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

3.    This Court has subject matter jurisdiction of this counterclaim under 28 U.S.C. §§ 2201(a), 2202, 1332(a), and 1367(a).

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Counterdefendant resides in this District.

## COUNT I:  DECLARATORY JUDGMENT OF NO DUTY TO INDEMNIFY

5.    Remy has asserted that Wells provided Remy with the voltage regulator for certain automobile alternator products that GE Licensing has accused of infringing U.S. Patent No. 4,733,159, which voltage regulator is manufactured by STMicroelectronics, Inc.

6.    Remy has asserted that Wells is obligated to defend Remy and to indemnify Remy for any judgment entered against it with respect to the accused products that contain parts supplied by Wells but manufactured by STMicroelectronics pursuant to instructions and specifications provided by Remy.

7.    Wells obtains the accused voltage regulators from STMicroelectronics and adds protection circuitry thereto pursuant to specifications provided by Remy.  The circuitry added by Wells pursuant to Remy's design specifications is not relevant to any claim of infringement made by GE Licensing against Remy.

8.    Remy failed to tender its defense timely to Wells, waiting over eight months to inform Wells of GE Licensing's claims against Remy.

9.    Remy's Purchase Order terms do not apply to entitle Remy to indemnification from Wells because the Purchase Order terms are ambiguous, unintelligible, and void.

6

10.     The Uniform Commercial Code does not apply to permit Remy to receive indemnification from Wells because Remy is obligated to indemnify and hold Wells harmless for any infringement claim arising out of compliance with Remy's specifications.

11.     For at least these reasons, Wells denies that it is obligated to defend Remy or to indemnify Remy for any judgment entered against it with respect to the accused products that contain parts supplied by Wells but manufactured by STMicroelectronics pursuant to instructions and specifications provided by Remy.

12.     Accordingly, there is a justiciable controversy between Wells and Remy.

13.     Wells is therefore entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Wells is not obligated to defend Remy or to indemnify Remy for any judgment entered against Remy with respect to the accused products that contain parts supplied by Wells.

14.     Wells is entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Wells is not liable for any judgment against Remy with respect to the accused products.

15.     Wells is also entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Remy is not entitled to an award of attorneys' fees, costs, or any other relief requested by Remy against Wells.

16.     Wells is entitled to an award of its attorneys' fees, expenses, and costs that Wells has incurred as a result of this action.

## COUNT II: DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF REMY'S PURCHASE ORDER

7

17.  Counterclaimant Wells incorporates by reference into Count II of its Counterclaim the averments contained in paragraphs 1 through 16 of this Counterclaim.

18.  Remy has asserted that, pursuant to the agreements between the parties, Wells is obligated to defend Remy and to indemnify Remy for any judgment entered against it with respect to the accused products that contain parts supplied by Wells but manufactured by STMicroelectronics pursuant to instructions and specifications provided by Remy.

19.  Upon information and belief, the agreement between the parties that Remy is asserting applies to obligate Wells to indemnify Remy for the claims made against Remy by GE Licensing is Remy's Purchase Order Terms and Conditions for the Wells ASVR product (hereinafter "Remy's Purchase Order").

20.  Paragraph 14. Intellectual Property from Remy's Purchase Order states as follows:

> Seller agress [sic]: (a) to defend, hold harmless and indemnify Buyer, its successors and customers against all claims [sic] demands, losses, suits, damages, liability and expenses (including reasonable attorney fees) arising out of any suit, claim or action for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States of [sic] foreign patent, trademark, copyright or mask work right by reason of the manufacture, use or sale of the goods or services ordered, including infringement arising out of compliance with specifications furnished by Buyer, or for actual or alleged misuse or misappropriation of a trade secret resulting directly or indirectly from Seller's actions: (b) to waive any claim against Buyer under the Uniform Commercial Code or otherwise, including any hold harmless or similar claim, in any way related to a claim asserted against Seller or Buyer for patent, trademark, copyright or mask work right infringement or the like, including claims arising out of compliance with specifications furnished by Buyer, and (c) to grant to Buyer a worlwide [sic], nonexclusive, royalty-free, irrevocable license to repair and have repaired, to reconstruct and have reconstructed the goods ordered hereunder. Seller assings [sic] to Buyer all right, title and interest in and to all trademarks, copyrights and mask work rights in any material created for Buyer under this order.

8

21.     Paragraph 16. Indemnification from Remy's Purchase Order states in relevant part as follows:

\* \* \*

In additions, [sic] Seller shall indemnify and hold Buyer harmless from and against any liability, claims, demands or expenses (including reasonable attorneys fees) arising out of or relating to (i) any actual or alleged deficiencies or defects in the goods, whether latent or patent, (ii) violation by Seller, the goods or the manufacture, possession, use or sale thereof, of any law, rule, regulation or governmental or administrative order, or (iii) any act or omission of Seller.

22.     Remy's Purchase Order is vague, ambiguous, and unintelligible.

23.     Remy's Purchase Order, if enforced as Remy requests, would permit Remy to specify parts that it knew may infringe intellectual property rights of others, and with knowledge of a claim of infringement, with no risk to Remy if the intellectual property owners decided to enforce their rights against Remy.

24.     Remy's attempt to collect for a liability incurred as the result of intentional and bad faith conduct is void as against public policy.

25.     The relevant provisions of Remy's Purchase Order are unconscionable and therefore the Court should decline to enforce Remy's Purchase Order against Wells pursuant to Indiana Code ("IC") 26-1-2-302.

26.     Accordingly, there is a justiciable controversy between Wells and Remy.

27.     Wells is entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Remy's Purchase Order is not enforceable against Wells.

28.     Wells is entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Wells is not liable for any judgment against Remy with respect to the accused products.

9

29.    Wells is also entitled to a judgment from the Court pursuant to 28 U.S.C. §§ 2201(a) and 2202 declaring that Remy is not entitled to an award of attorneys' fees, costs, or any other relief requested by Remy against Wells.

30.    Wells is also entitled to an award of its attorneys' fees, expenses, and costs that Wells has incurred as a result of this action.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimant requests that this Court enter:

A.    A declaratory judgment that Wells is not obligated to defend Remy or to indemnify Remy for any judgment entered against Remy with respect to the accused products that contain parts supplied by Wells;

B.    A declaratory judgment that Wells is not liable for any judgment against Remy with respect to the accused products;

C.    A declaratory judgment that Remy is not entitled to an award of attorneys' fees, costs, or any other relief requested by Remy against Wells;

D.    A declaratory judgment that Remy's Purchase Order is not enforceable against Wells;

E.    An award of Wells's attorneys' fees, expenses, and costs that Wells has incurred as a result of this action; and

F.    An award of such other and further relief as this Court may deem proper.

## THIRD-PARTY COMPLAINT:  WELLS v. STMICROELECTRONICS

1. Third-Party Plaintiff Wells Manufacturing Corp. is a Wisconsin corporation and has its principal place of business at 26 South Brooke Street, Fond du Lac, Wisconsin 54936.

2. Upon information and belief, Third-Party Defendant STMicroelectronics, Inc. ("ST") is a Delaware corporation and has its principal place of business at 1310 Electronics Drive, Carrollton, Texas 75006. ST may be served with citation through its registered agent for service of process The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

3. This Court has subject matter jurisdiction of this counterclaim under 28 U.S.C. §§ 1332(a) and 1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because ST resides in this District.

## COUNT I:  INDEMNIFICATION

5. Remy has asserted that Wells provided Remy with the voltage regulator for certain automobile alternator products that GE Licensing has accused of infringing U.S. Patent No. 4,733,159, which voltage regulator is manufactured by ST.

6. ST and Remy worked together to develop the accused voltage regulator prior to involving Wells in the supply chain for the accused voltage regulator.

7. Wells obtains the accused voltage regulators from ST and adds protection circuitry thereto pursuant to specifications provided by Remy. The circuitry added by Wells pursuant to Remy's design specifications is not relevant to any claim of infringement made by GE Licensing against Remy.

11

8.    Wells's Purchase Order Terms and Conditions (hereinafter "Wells's Purchase Order") and the Uniform Commercial Code provisions govern the relationship between Wells and ST. A true and accurate copy of Wells's Purchase Order is attached hereto as Exhibit A.

9.    Paragraph 2. of Wells's Purchase Order confirms the manner in which ST may accept Wells's terms and the consequences of doing so:

> This order is not binding until accepted by Buyer. The acceptance of this order will occur when an acknowledged copy of said order is executed by the Seller and has been returned and received by the Buyer. Seller shall not make any changes in the terms, conditions, prices and delivery dates of this order without first obtaining Buyer's written consent. Buyer shall have the right to schedule the dates of delivery for the parts and materials that are subject to this order. Buyer shall also have the right to make reasonable changes relating to the number of parts and materials subject to this order depending upon the manufacturing requirements of Buyer.

> In the event that Seller fails to give a written acknowledgment of this order as so provided above, any delivery made pursuant to this order shall constitute an acceptance of all the provisions of this order.

10.    Paragraph 14. from Wells's Purchase Order states as follows:

> Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright: the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer, their successors and assigns or those using or selling Buyer's products for any alleged infringement of any patent [sic] trademark, and copyright by reason of the sale or use of any such article or material. Seller agrees that he will pay all judgments or costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

11.    Paragraph 19. from Wells's Purchase Order states in relevant part as follows:

> Seller warrants that it is currently in compliance with and will continue to comply with any and all applicable federal, state, and local laws and regulations which could impose liability upon Buyer as a result of any non-compliance on Seller's part.

12.    Thus, ST is obligated to defend Wells and to indemnify Wells for any judgment entered against Wells with respect to the accused products that contain parts supplied by ST.

12

13.    Wells tendered its defense to and demanded indemnification from ST concerning Remy's demand for indemnification for GE Licensing's claims against Remy.

14.    Pursuant to IC 26-1-2-607, Wells tendered its defense to ST and gave ST the opportunity to control any litigation that might ensue.

15.    ST has thus far refused to indemnify Wells for Remy's indemnity claim against Wells or to provide a defense for Wells concerning the same.

16.    ST instead filed a declaratory judgment action in Texas State District Court, 134th Judicial District, Dallas County, Texas, Cause No. 06-11257, on November 1, 2006, against Wells, Kimball International, Inc., Kimball Electronics, Inc., and, later, Wetherill Associates, Inc. This declaratory judgment action seeks a judgment that ST is not obligated to indemnify or defend any of the named defendants from claims arising from the infringement claims made by GE Licensing against Remy. All parties to that Texas action except Wetherill Associates, Inc. have answered and exchanged initial disclosures in that case, but no substantive actions have yet taken place.

17.    Wells is therefore entitled to an order from the Court requiring ST to defend Wells against any charge of infringement or indemnity claim with respect to the accused products.

18.    Wells is also entitled to an order from the Court declaring that ST is liable for any judgment against Wells with respect to the accused products.

19.    The Court should award Wells its attorneys' fees and costs incurred as a result of this action.

## COUNT II:  BREACH OF CONTRACT

13

20.     Third-Party Plaintiff Wells incorporates by reference into Count II of its third-party Complaint the averments contained in paragraphs 1 through 19 of this third-party Complaint.

21.     In the event that the '159 Patent is held to be valid and infringed by Remy, then ST has breached the contract terms of Wells's Purchase Order by violating ST's warranty of no infringement made in paragraph 14.

22.     In the event that the '159 Patent is held to be valid and infringed by Remy, then ST has breached the contract terms of Wells's Purchase Order by violating ST's warranty that it is in compliance with all federal laws pursuant to paragraph 19.

23.     ST has breached the contract terms of Wells's Purchase Order by refusing to indemnify Wells as it agreed in paragraph 14.

24.     As a direct and proximate result of ST's breach(es) of Wells's Purchase Order, Wells has suffered and continues to suffer damage.

25.     Upon information and belief, ST's activities were performed willfully, with full knowledge of the '159 Patent and its implications to the accused products, and with knowledge of the damage that would come to Wells as a result of its involvement with ST and Remy concerning the accused products.

26.     Wells is therefore entitled to an award of damages for its losses suffered as a direct and proximate result of ST's breach of Wells's Purchase Order terms and conditions.

27.     Wells is also entitled to an order from the Court requiring specific performance of ST's indemnification obligations to defend Wells against any charge of infringement or indemnity claim with respect to the accused products.

28.     The Court should award Wells its attorneys' fees and costs incurred as a result of this action.

## PRAYER FOR RELIEF

WHEREFORE, Third-Party Plaintiff Wells requests that this Court enter:

A.     A judgment requiring ST to defend Wells against any charge of infringement or indemnity claim with respect to the accused products;

B.     An order declaring that ST is liable for any judgment against Wells with respect to the accused products.

C.     An order requiring specific performance of ST's indemnification obligations to defend Wells against any charge of infringement or indemnity claim with respect to the accused products.

D.     An award of damages to compensate Wells for its losses suffered as a direct and proximate result of ST's breach of Wells's Purchase Order terms and conditions;

E.     An award of Wells's attorneys' fees, expenses, and costs that Wells has incurred as a result of this action; and

F.     An award of such other and further relief as this Court may deem proper.

15

Respectfully submitted,

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT, MORIARTY,
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN 46204-5137
317-634-3456

By: /s/ Jeffrey B. Bove
    Jeffrey B. Bove, Esquire (#998)
    Dana K. Hammond (#4869)
    CONNOLLY BOVE LODGE & HUTZ, LLP
    1007 North Orange Street
    P.O. Box 2207
    Wilmington, DE 19899
    302-658-9141

    *Attorneys for Defendant, Counterclaimant, and
    Third-Party Plaintiff Wells Manufacturing
    Corp.*

DATED: April 30. 2007

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2007, I electronically filed the foregoing WELLS MANUFACTURING CORP.'S ANSWER, COUNTERCLAIMS, AND THIRD PARTY COMPLAINT with the Clerk of the Court using CM/ECF to be served upon the below listed in the manner indicated:

**Via Hand Delivery**
Donald J. Detweiler
Titania R. Mack
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
districtcourtdel@gtlaw.com

**Via Hand Delivery**
Steven J. Balick
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

**Via Hand Delivery**
Thomas C. Grimm
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
tcgefiling@mnat.com

OF COUNSEL:
Holiday W. Banta
WOODARD, EMHARDT, MORIARTY,
MCNETT & HENRY LLP
111 Monument Circle, Suite 3700
Indianapolis, IN 46204-5137
317-634-3456

By: /s/ Jeffrey B. Bove
Jeffrey B. Bove, Esquire (#998)
Dana K. Hammond (#4869)
CONNOLLY BOVE LODGE & HUTZ, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
302-658-9141

*Attorneys for Defendant, Counterclaimant, and Third-Party Plaintiff Wells Manufacturing Corp.*

DATED: April 30, 2007
536075

## TERMS AND CONDITIONS GOVERNING PURCHASE ORDERS

1. The Buyer hereinafter referred to is Wells Manufacturing, L.P. and the Seller is the other party who has affixed its signature to this document.

2. This order is not binding until accepted by Buyer. The acceptance of this order will occur when an acknowledged copy of said order is executed by the Seller and has been returned and received by the Buyer. Seller shall not make any changes in the terms, conditions, prices and delivery dates of this order without first obtaining Buyer's written consent. Buyer shall have the right to schedule the dates of delivery for the parts and materials that are subject to this order. Buyer shall also have the right to make reasonable changes relating to the number of parts and materials subject to this order depending upon the manufacturing requirements of Buyer.

In the event that Seller fails to give a written acknowledgement of this order as so provided above, any delivery made pursuant to this order shall constitute an acceptance of all the provisions of this order.

3. By accepting this purchase order, Seller agrees that the prices, terms and conditions of this order are at least as favorable to Buyer as are those prices, terms and conditions given by Seller to other purchasers of the same quality and quantity of Seller's product. If Buyer is able to purchase goods of comparable quality from another seller at a lower delivered cost than as specified in this purchase order, the Buyer may give to Seller written notice of same and unless within fifteen days from the date of said notice, Seller does not reduce its prices to an amount equal to the price offered by the other seller, Buyer may purchase said goods from other seller. All goods so purchased shall be deducted from the remaining balance of goods to be purchased by Buyer from Seller. All other terms and conditions of this purchase order shall remain in full force and effect.

4. The Seller will not be responsible for delays or defaults in deliveries, nor the Buyer, for failure to receive or accept shipments if occasioned by wars, fires, insurrections, transportation difficulties or Act of God.

5. The title to all dies, tools and patterns supplied by Buyer or amortized by the Seller under agreement with the Buyer shall remain vested in the Buyer. All of said dies, tools and patterns shall be returned to Buyer or to Buyer's designee upon demand of Buyer.

6. Seller agrees to use all dies, tools, patterns, or material to manufacture exclusively for Buyer and not to deliver any material or parts substantially complying the Buyer's specifications to any other person, firm or corporation and Seller agrees to pay the Buyer liquidated damages for nonperformance of the terms of this contract for each person, firm or corporation to whom the same is sold or delivered. Selling or delivering such material or parts as set forth in this paragraph shall be considered a violation of the terms and conditions of this contract and Buyer may forthwith, without notice, take possession of all property title to which has been retained by the Buyer.

7. The Buyer shall have the right by written order to make changes from time to time in the work to be performed by Seller hereunder. If such changes cause an increase or decrease in the amount due under this order or in the time required for Seller to perform hereunder because of said changes, this order by agreement shall be modified in writing accordingly.

8. Buyer may change shipping schedules or defer shipment of this order or any part thereof if for any reason its production is changed, delayed or curtailed, or any contingencies interfere with the receipt, handling or stocking of the items ordered herein. Failure to deliver goods of the quality and quantity and within the time or times specified by this contract shall, at the option of the Buyer, relieve it of any obligation to accept and pay for such goods as well as any undelivered shipments if there be any, and charge the Seller with any increased cost or other loss incurred thereon, unless deferred shipment be agreed to by the Buyer in writing. Any failure by the Buyer to exercise its option with respect to any shipment of goods shall not be deemed to constitute a waiver with respect to subsequent shipments.

9. Buyer shall have the right to inspect all material and parts and the same shall be manufactured as specified and shall be of a standard quality as understood and accepted by the trade. Inspection of each shipment may be made by Buyer after delivery. Prior payment or acceptance of shipments shall not be considered as waiving such right of inspection. The Buyer may reject and return at the risk and expense of Seller all rejected material or parts and shall be given full credit for same.

10. The Buyer shall be given full credit for all material and parts rejected because of defect or the failure to meet specifications without invalidating the remainder of the order. Rejected material and parts may be held for Seller's disposition without cost or liability to Buyer and shall be removed at the expense of the Seller within five days after written notification. Buyer shall not be required to pay for any material or parts rejected after inspection.

11. The Seller expressly warrants that all the material and work covered by this order will conform to the specifications, drawings, samples or other description furnished or adopted by the Buyer and will be fit and sufficient for the purpose intended, merchantable, of good materials and workmanship and free from defect.

12. The Buyer will conduct an inspection as to the quality of the goods received from Seller. Said inspection will be at Buyer's expense. If after conducting such an inspection, the percentage of defective material or parts warrants (in the judgment of the Buyer) a 100% inspection, the Buyer reserves the right to either reject the material in total or to conduct a 100% inspection. Buyer and Seller shall agree to the reasonable amount to be charged to Seller for said inspection. Any discount date or due date will be calculated from the completed inspection date.

13. In the event Seller becomes insolvent or commits an act of bankruptcy or manufacturing is retarded by reason of a strike or an assignment is made by Seller for the benefit of creditors or if Seller fails to comply with the terms of this order or schedule, this contract may be canceled by Buyer and Buyer may without notice take possession of all dies, tools, patterns and all processed or unprocessed material and parts.

14. Seller warrants that the articles described herein and the sale or use of them will not infringe any United States patent, trademark and copyright the Seller covenants he will at Seller's own expense defend any suit which will be brought against Buyer, their successors and assigns or those using or selling Buyer's products for any alleged infringement of any patent, trademark, and copyright by reason of the sale or use of any such article or material. Seller agrees that he will pay all judgments or costs recovered in any suits and will also reimburse Buyer for all expenses and losses incurred by Buyer as a result of said suit or legal action.

15. Buyer reserves the right to cancel this order or any portion of same if delivery is not made when and as specified, time being of the essence of this order and charge Seller for any loss entailed.

16. In the event of cancellation, Wells Manufacturing, L.P. will be responsible for only the labor and material expended thereon during the normal lead time required to meet the stated delivery date or dates.

17. No material shall be acquired by the Seller in excess of that which may be necessary to meet Buyer's released delivery schedule. If Seller acquires any such excess material and thereafter this contract is canceled or terminated, such material shall be the property of Seller, and Buyer shall in no way be liable therefore.

Title to all materials supplied by Buyer to Seller shall remain vested in Buyer. The Seller agrees to pay for all materials furnished by Buyer that may be spoiled or that is not otherwise satisfactorily accounted for or delivered to the Buyer.

18. The Seller will be required to invoice the Buyer immediately upon shipment and if the invoices are not in the hands of the Buyer on or before the 4th day of the month succeeding shipment, said invoices will be considered as invoices of the succeeding month for accounting and discount purposes.

19. Seller warrants that it is currently in compliance with and will continue to comply with any and all applicable federal, state, and local laws and regulations which could impose liability upon Buyer as a result of any non-compliance on Seller's part. Seller further warrants that all goods and services covered by this order have been produced or furnished in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201-219, Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. §.793, Section 2012 of the Vietnam Era Veterans Readjustment Act of 1974, 38 U.S.C. §§ 2011, 2012, and Executive Order 11625 together with the rules, regulations and relevant orders promulgated thereunder, to the extent such laws, rules or regulations are applicable to this order.

20. This purchase order constitutes the sole agreement between the parties and supercedes any and all agreements or understandings, bids or offers written or otherwise respecting the same.

CAUSE NO. 06-11257-G

| | | |
|---|---|---|
| STMICROELECTRONICS, INC., | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § § | |
| V. | § § | DALLAS COUNTY, TEXAS |
| WELLS MANUFACTURING CORP., KIMBALL INTERNATIONAL, INC. KIMBALL ELECTRONICS, INC., AND WITHERILL ASSOCIATES, INC., | § § § § § § | |
| Defendants. | § § | 134TH JUDICIAL DISTRICT |

## PLAINTIFF'S RESPONSE TO DEFENDANT WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

TO:    Defendant, Wells Manufacturing L.P., by and through its attorneys of record:
William Lewis Sessions, Esq.
Elaine Polemenakos, Esq.
SESSIONS LAMBERT SELWYN, LLP
1700 Pacific Avenue, Suite 2250
Dallas, TX 75201

COMES NOW, STMicroelectronics, Inc. ("ST"), Plaintiff in the above entitled and numbered cause, pursuant to Rule 194.2 of the TEXAS RULES OF CIVIL PROCEDURE, hereby submits Plaintiff's Response to Defendant Wells Manufacturing Corp.'s Request for Disclosures. ST will supplement these disclosures when appropriate.



Respectfully submitted,

Thomas W. Craddock
Texas Bar No. 04695800

McGUIRE, CRADDOCK & STROTHER, P.C.
500 North Akard, Suite 3550
Dallas, Texas 75201
Phone: (214) 954-6800
Facsimile: (214) 954-6868

*Attorneys for STMicroelectronics, Inc.*

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded via certified mail, return receipt requested, to the following counsel of record on this, the 5th day of February, 2007:

**ATTORNEYS FOR DEFENDANT WELLS MANUFACTURING L.P.:**
William Lewis Sessions, Esq.
Elaine Polemenakos, Esq.
SESSIONS LAMBERT SELWYN, LLP
1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
**CERTIFIED MAIL #7160 3901 9842 9365 8326**
**RETURN RECEIPT REQUESTED**

**ATTORNEYS FOR DEFENDANTS KIMBALL INTERNATIONAL, INC. AND KIMBALL ELECTRONICS, INC.:**
Robert L. Rickman, Esq.
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
**CERTIFIED MAIL #7160 3901 9842 9365 8333**
**RETURN RECEIPT REQUESTED**

Thomas W. Craddock

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Page 3

# RESPONSES TO RULE 194 REQUESTS FOR DISCLOSURE

a. The correct names of the parties to this lawsuit.

RESPONSE:   ST believes the parties are properly named, except that Wells Manufacturing Corp. has indicated that the correct name of the entity is Wells Manufacturing, L.P.

b. The name, address and telephone number of any potential parties.

RESPONSE:

(1)   CIF Licensing, LLC d/b/a GE Licensing
One Independence Way
Princeton, NJ 08540
Phone: 609-734-9538

(2)   Remy International, Inc.
2902 Enterprise Drive
Anderson, IN 46013
Phone: 800-372-5131

(3)   Taditel U.S., Inc.
720 West 8th Street
Anderson, IN 46016
Phone: 765-644-0713

(4)   Valeo Sistemas Electricos S.A. DE C.V.,
Carretera Mexico - Piedras Negras No. 3980
Zona Industrial Del Potosi
San Louis Potosi  78090
Mexico
Phone: 52 444-826-7000

(5)   Valeo, Inc.
3000 University Drive
Auburn Hills, MI 46013
Phone: 248-340-3000

(6)   Delphi Corporation
2620 E. 38th Street
Anderson, IN 46013
Phone: 765-646-3485

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

(7)    Unit Parts Company
       4600 SE 59th Street
       Oklahoma City, OK 73126
       Phone: 405-677-3361

(8)    WorldWide Automotive LLC
       12352 Coffeewood Drive
       Mitchells, VA 22729
       Phone: (540) 829-6601

c.    The legal theories and, in general, the factual basis of the responding party's claims or defenses (the responding party need not marshal all evidence that may be used at trial).

**RESPONSE:**    ST is a manufacturer and seller of semiconductor computer chips. In connection with its sales transactions, ST incorporates its terms and conditions of sale, including , but not limited to, paragraph 13. Pursuant to its terms and conditions of sale, ST may, under certain circumstances, have indemnity obligations to its buyers. Defendants are buyers of ST's products. Prior to the filing of this suit, several of the Defendants notified ST that they were seeking contractual indemnity rights with respect to accusations that Defendants and/or their customers had infringed upon the patent rights of CIF Licensing LLC d/b/a GE Licensing ("GE") with respect to electrical components in connection with a voltage regulator system for automobile alternators, including a unique high frequency charge pump. GE has not made a direct claim of infringement against ST nor has ST been named in any patent infringement litigation initiated by GE. Nonetheless, Defendants have sought indemnification and Defendants or their customers threatened to include ST in litigation with the patent holder. ST's position is that it has no indemnity obligations to Defendants because any contingent claim of infringement relating to Defendants' product is not being made directly or solely against ST's chip and the chip at issue was manufactured to specifications of Delphi and not manufactured solely to ST's designs. Thus, ST is entitled to a declaration that it has no contractual obligation to indemnify or defend Defendants.

d.    The amount and any method of calculating economic damages.

**RESPONSE:**    ST is seeking its reasonable attorneys' fees in connection with this declaratory judgment action.

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

e.    The name, address and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with this case.

RESPONSE: (1)    David Swanson
Product Marketing Engineer
STMicroelectronics, Inc.
19575 Victor Parkway, Suite 400
Livonia, MI 48152
Phone:  (734) 462-4030

Engineer who is aware of technical specifications of ST chip which was allegedly included in products accused of infringement by GE.

(2)    William F. Esser, Esq.
Intellectual Property and Licensing Attorney
STMicroelectronics Drive
1310 Electronics Drive
Carrollton, TX 75006
Phone:  972-466-7511

ST counsel; had communications with Valeo and others regarding patent claimed to have been infringed and ST's position regarding indemnification of customers.

(3)    Robert B. Foust
ST Delphi Account Executive
STMicroelectronics, Inc.
2745 Albright Road
Kokomo, IN 46902-3996
Phone: 765-455-3996

ST sales representative; ST Delphi Account Executive; is aware of pricing, technical specifications and design history of ST chip which was allegedly included in products accused of infringement by GE.

(4)    Bill Maxwell
Address Unknown

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Ex-ST employee, had communications regarding purchase orders from Delphi regarding ST chip which was allegedly included in products accused of infringement by GE.

(5)   Namesh P. Shah
Director, Worldwide Licensing
STMicroelectronics, Inc.
1310 Electronics Drive
Carrollton, TX 75006
Phone: 972-466-6856

ST counsel; had communications with Valeo and others regarding patent claimed to have been infringed and ST's position regarding indemnification of customers.

(6)   Massimo Maggioni
STMicroelectronics srl.
Via Tolomeo 1
20010 Cornaredo
Italy

Engineer with knowledge of the technical specifications of the ST chip which was allegedly included in products accused of infringement by GE.

(7)   Maurizio Gallinari
STMicroelectronics srl
Via Tolomeo 1
20010 Cornaredo
Italy

Engineer with knowledge of the technical specifications of the ST chip which was allegedly included in products accused of infringement by GE.

(8)   Stephen W. Anderson
Taditel Automotive Electronics
Product Development Engineer
North American Technical Center
720 W. 8th Street
Anderson, IN 46016
Phone: 765-644-0713

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Page 7

Former Delphi Remy engineer responsible for creating the Delphi specification for the ST chip which was allegedly included in products accused of infringement by GE; had communications with ST regarding patent claimed to have been infringed.

(9)    James Wehrly
       Taditel Automotive Electronics
       Product Development Engineer
       North American Technical Center
       720 W. 8th Street
       Anderson, IN 46016
       Phone: 765-644-0713

Former Delphi Remy engineer with knowledge of the Delphi specification for the ST chip which was allegedly included in products accused of infringement by GE.

(10)   Justin Lybbert
       Taditel Automotive Electronics
       Product Development Engineer
       North American Technical Center
       720 W. 8th Street
       Anderson, IN 46016
       Phone: 765-644-0713

Engineer with knowledge of the Delphi specification for the ST chip which was allegedly included in products accused of infringement by GE; has knowledge of the products accused of infringement by GE.

(11)   Richard Neil
       Remy International, Inc.
       2902 Enterprise Drive
       Anderson, IN 46013
       Phone: 765-778-6895

Remy engineer with knowledge of the Delphi specification for the ST chip which was allegedly included in products accused of infringement by GE; has knowledge of the products accused of infringement by GE.

(12)    Roger Hartman
        Remy International, Inc.
        2902 Enterprise Drive
        Anderson, IN 46013
        Phone: 765-778-6895

        Remy Engineering Manager with knowledge of the Delphi specification
        for the ST chip which was allegedly included in products accused of
        infringement by GE; has knowledge of the products accused of
        infringement by GE.

(13)    Sheila D. D. Cannon
        Director, Legal Services & Assistant Corporate Secretary
        Remy International, Inc.
        2902 Enterprise Drive
        Anderson, IN 46013
        Phone: 765-778-6895

        Had communications with ST regarding patent claimed to have been
        infringed.

(14)    Larry Leaf
        Address Unknown

        Former Remy engineer with knowledge of the Delphi specification for the
        ST chip which was allegedly included in products accused of infringement
        by GE.

(15)    Julia Heitz-Cassidy, Esq.
        Senior Corporate Counsel
        Kimball International
        1600 Royal Street
        Jasper, IN 47549
        Phone: 812-482-1600

        Had communications with ST regarding patent claimed to have been
        infringed; demanded indemnification from ST.

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

(16)   Francoise Colpron
       Legal Director – North & South America
       VALEO
       3000 University Drive
       Auburn Hill, MI 48326
       Phone: 248-340-8452

       Had communications with ST regarding patent claimed to have been
       infringed; demanded indemnification from ST.

(17)   Delphi Corporation
       2620 E. 38th Street
       Anderson, IN 46013
       Phone: 765-646-3485

       Predecessor to Remy; provided specifications to ST regarding design of
       chip which was allegedly included in product accused of infringement by
       GE.

(18)   Arthur J. Edwards
       address and telephone unknown, but could be:
       Hoffman Estates, Illinois

       Inventor of patent claimed to have been infringed.

(19)   Peter Emmanuel, Esq.
       GETL Patent Attorney
       Address: UNKNOWN
       Phone: UNKNOWN

       Attorney; involved in GE's claim that its patent was infringed; had
       communications with Remy regarding patent claimed to have been
       infringed.

(20)   Thomas Essex, Jr.
       Delphi Energy and Chassis Systems
       2900 Scatterfield Road
       Mail Code 18-115
       Anderson, IN 46013
       Phone: 765-646-7186

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Has knowledge of the Delphi technical specifications for the ST chip which was allegedly included in products accused of infringement by GE.

(21)   Mr. Shalom Flamer
President and CEO
Taditel, Ltd.
18 Hasivim St.
P. O. Box 537
Petach-Tikva 49104, Israel
Phone: 972-3-9262522

Had communications regarding patent claimed to have been infringed.

(22)   Jimmy L. Funke, Esq.
Attorney with Delphi Corporation
5725 Delphi Drive
Troy, MI 48098
Phone: 248-813-1214

Had communications with ST regarding patent claimed to have been infringed.

(23)   General Electric Capital Corporation
401 Merritt 7
Norwalk, Connecticut 06851
Phone: 203-373-3795

Assignee of patent claimed to have been infringed.

(24)   Barry W. Graham, Esq.
Finnegan, Henderson Farabow Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC 20001-4413
Phone: 202-408-4017

Had communications regarding patent claimed to have been infringed.

(25)  Mano Jagasia
Delco Remy
Division of General Motors Corporation
2401 Columbus Avenue
P. O. Box 2439
Anderson, Indiana 46018-2439
Phone: UNKNOWN

Had communications with ST regarding ST's selection as supplier of the Delco-Remy designed chip which was allegedly included in products accused of infringement by GE.

(26)  Kimball International, Inc.
1600 Royal Street
Jasper, Indiana 47546
Phone: 812-482-1600

Purchaser of ST chip; made demand for indemnification with respect to patent claimed to have been infringed.

(27)  Mihaly Lamoth
address and telephone unknown, but could be:
Copped, Switzerland

Inventor of patent claimed to have been infringed.

(28)  Richard J. Misiag
Vice President - Licensing
GE Trading and Licensing
General Electric Company
One Independence Way
Princeton, NJ 08540
Phone: 609-734-9538

Had communications regarding patent claimed to have been infringed; made demand upon Remy that patent was infringed.

(29)  Motorola, Inc.
1303 E. Algonquin Road
Schaumburg, Illinois 60196
Phone: 847-576-5000

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Assignor of patent claimed to have been infringed.

(30)   Rodney O'Neal
       President and Chief Operating Officer
       Delphi Corporation
       World Headquarters
       5725 Delphi Drive
       Troy, Michigan 48098-2815
       Phone: UNKNOWN

       Received communications from GE regarding claim of patent
       infringement and possible licensing arrangement.

(31)   Paul Pulliam
       Sr. Buyer Global Purchasing
       Delphi E
       Anderson, IN 46018
       Phone: UNKONWN

       Buyer: aware of purchases from ST; communications concerning Delphi
       designed chip which was allegedly included in products accused of
       infringement by GE.

(32)   Orazio Ragni
       Vice President, Electrical Systems Branch
       VALEO
       2, rue André Boulle
       B.P. 150
       94017 Créteil Cedex - France
       Phone: +33 (0)1.48.98.86.00

       Had communications with ST regarding patent claimed to have been
       infringed.

(33)   Michael Shaham
       Michael Shaham Law Offices
       3 Daniel Frisch Street
       Tel Aviv 64731
       Israel
       Phone: 972 (3) 608-8922

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

Attorney for Taditel; had communications with ST regarding patent claimed to have been infringed.

(34)  Richard L. Stanley
      President
      Remy International Inc.
      World Headquarters & U.S. Technical Center
      2902 Enterprise Drive
      Anderson, IN 46013
      Phone: 800-372-5131

Received communications from GE regarding claim of patent infringement and possible licensing arrangement.

(35)  Valeo Sistemas Electricos S.A. DE C.V.,
      Carretera Mexico - Piedras Negras No. 3980
      Zona Industrial Del Potosi
      San Louis Potosi  78090
      Mexico
      Phone: 52 444-826-7000

Purchaser of ST chip; made demand for indemnification with respect to patent claimed to have been infringed.

(36)  Wetherill Associates, Inc.
      1101 Enterprise Drive
      Royersford, PA 19468
      Phone: 610-495-2200

Purchaser of ST chip.

(37)  Terry L. Zuehlke
      Materials Manager
      Wells Manufacturing Corporation
      26 South Brooke Street
      Fond du Lac, WI 54935-4007
      Phone: 920-922-5900

Had communications with ST regarding patent claimed to have been infringed; made demand upon ST for indemnification.

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

(38)    Donald Detweiler
Greenberg Traurig, LLP
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
Phone: (302) 661-7000

Attorney for Remy; has knowledge of products accused of infringement by GE, patent claims asserted by GE and indemnity claims made by Remy on its suppliers.

(39)    All persons listed by Defendants in their Responses to Disclosures.

f.    For any testifying expert:
(1)    the expert's name, address and telephone number;

(2)    the subject matter on which the expert will testify;

(3)    the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by or employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4)    if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

(A)    all documents, tangible things, reports, models or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B)    the expert's current resume and bibliography.

**RESPONSE:**    ST has not engaged a testifying expert at this time.

g.    Any indemnity and insuring agreements described in Rule 192.3(f).

**RESPONSE:**    This suit seeks a judicial declaration with respect to indemnification obligations, if any. Other than the indemnity at issue, ST is not aware of other agreements as contemplated in Rule 192.3(f).

PLAINTIFF'S RESPONSE TO DEFENDANT
WELLS MANUFACTURING CORP.'S REQUEST FOR DISCLOSURES

h.    Any settlement agreements described in Rule 192.3 (g).

RESPONSE:          None known.


i.    Any witness statements described in Rule 192.3(h).

RESPONSE:          None known.


j.    In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

RESPONSE:          Not applicable.


k.    In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

RESPONSE:          Not applicable.


l.    The name, address, and telephone number of any person who may be designated as a responsible party.

RESPONSE:          None at this time.

# EXHIBIT C

## CAUSE NO. 06-11257

| | | |
|---|---|---|
| STMICROELECTRONICS | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| WELLS MANUFACTURING | § | 134th JUDICIAL DISTRICT |
| CORP., KIMBALL | § | |
| INTERNATIONAL, INC., | § | |
| KIMBALL ELECTRONICS, INC., | § | |
| AND WITHERILL | § | |
| ASSOCIATES, INC. | § | |
| | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## DEFENDANT WELLS MANUFACTURING L.P.'S DEMAND FOR JURY TRIAL

TO THE HONORABLE ANNE ASHBY, DISTRICT COURT JUDGE:

Defendant Wells Manufacturing L.P. hereby asserts its right to a trial by jury, under Tex. Const. art. I, § 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial, in accordance with TEX. R. CIV. P. 216. Defendant hereby tenders the District Court jury fee of $30.00.

Respectfully submitted,

**SESSIONS LAMBERT SELWYN, LLP**

William Lewis Sessions,
Texas Bar No. 18041500
Elaine Polemenakos
Texas Bar No. 24027622
1700 Pacific Avenue, Suite 2250
Dallas, TX 75201
Sessions Direct Line:  214-217-8855
Sessions Direct Fax: 214-217-8856
Polemenakos Direct Line: 214-217-8050
Polemenakos Direct Fax:  214-217-8851

**ATTORNEYS FOR DEFENDANT
WELLS MANUFACTURING L.P.**

## CERTIFICATE OF SERVICE

I certify that on this date a true and correct copy of Defendant Wells Manufacturing, L.P.'s Demand For Jury Trial was served upon counsel of record in accordance with the Texas Rules of Civil Procedure as detailed below:

*Certified Mail # 7160 3901 9849 8642 7840*
Thomas W. Craddock
McGuire, Craddock & Strother, P.C.
500 North Akard, Suite 3550
Dallas, Texas 75201

7/18/07
Date

Elaine Polemenakos